IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MARC BRAGG, Esq., an individual, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | Case No. 06-4925 |
| v. | : | |
| | : | |
| LINDEN RESEARCH, INC., a corporation, | : | |
| and PHILIP ROSEDALE, an individual, | : | |
| | : | |
| Defendants. | : | |

## ORDER

AND NOW, this __ day of _____, 2006, upon consideration of the Motion of Defendants Linden Research, Inc. and Philip Rosedale to Compel Arbitration and any response thereto, it is hereby **ORDERED** and **DECREED** that the Motion to Compel Arbitration is **GRANTED** and all Counts of the Complaint are **DISMISSED** in light of the parties' agreement to submit any claims to arbitration according to the Rules of the International Chamber of Commerce in San Francisco.

_____, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MARC BRAGG, Esq., an individual, | : | CIVIL ACTION |
|  | : |  |
| Plaintiff, | : | Case No. 06-4925 |
|  | : |  |
| v. | : |  |
|  | : |  |
| LINDEN RESEARCH, INC., a corporation, and PHILIP ROSEDALE, an individual, | : |  |
|  | : |  |
| Defendant. | : |  |

## MOTION OF DEFENDANTS LINDEN RESEARCH, INC. AND PHILIP ROSEDALE TO COMPEL ARBITRATION

Defendants Linden Research, Inc. and Philip Rosedale, by and through their undersigned

attorneys, hereby move this Court to compel arbitration in accordance with the parties'

agreement.  The factual and legal grounds for this Motion are set forth in the accompanying

Memorandum of Law, and the exhibits attached thereto, all of which are incorporated herein by

reference as if set forth in full.

/s Andrew J. Soven (/AS 955)
Andrew J. Soven
Andrea B. Weingarten
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
(215)851-8100

Attorneys for Defendants Linden Research, Inc.
and Philip Rosedale

Dated:  November 14, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MARC BRAGG, Esq., an individual, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | Case No. 06-4925 |
| v. | : | |
| | : | |
| LINDEN RESEARCH, INC., a corporation, | : | |
| and PHILIP ROSEDALE, an individual, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF LAW OF DEFENDANTS LINDEN RESEARCH, INC. AND PHILIP ROSEDALE IN SUPPORT OF MOTION TO COMPEL ARBITRATION

### I.    PRELIMINARY STATEMENT

Defendants Linden Research, Inc. ("Linden") and Philip Rosedale ("Rosedale") (collectively "Defendants") submit this Memorandum of Law in support of their Motion to Compel Arbitration of all of Plaintiff's claims against both Defendants.[1]

This case arises out of Plaintiff Marc Bragg's ("Plaintiff") contention that Linden deprived him, without due process of law, of "real estate" existing in an online computer-simulated environment (known as a "virtual reality" environment) created by Linden and known as Second Life. Plaintiff knowingly violated the rules governing the purchase of computer services simulating "real estate" use in Second Life, but complains that Linden wrongfully

---

[1]    Mr. Rosedale has simultaneously filed a Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Rule 12(b)(2). If for any reason the Court does not grant Mr. Rosedale's Motion to Compel Arbitration, all claims asserted against him should be dismissed for lack of personal jurisdiction.

deprived him of what Plaintiff considers his real estate holdings after Linden discovered Plaintiff's violation of Second Life terms of service (the "Terms of Service").

Plaintiff's 46 page Complaint attempts to portray Plaintiff as an innocent, relatively unsophisticated participant in Second Life who was defrauded by Linden when Linden exercised its rights under the Terms of Service and suspended Plaintiff's access to the online computer service. Plaintiff is anything but innocent and unsophisticated. To the contrary, Plaintiff is a savvy, highly educated computer user who knew perfectly well that he was wrongly manipulating the Second Life land auction process. Plaintiff's overarching claim that Second Life's Terms of Service are nothing more than unenforceable "fine print" is particularly galling considering that Plaintiff is an attorney who is licensed to practice in California, where Linden is located, Pennsylvania and New Jersey.[2]  See http://chescolawyers.com/biography.html.  For that matter, Plaintiff's website touts his experience in "cyber law," corporate law, copyright and trademark law, real estate law, trust and estates, civil litigation and other areas of the law. The argument that Linden unconscionably "forces" individuals such as Plaintiff to accept certain Terms of Service when they become Second Life members does not apply to any Second Life members, but when this argument is made by Plaintiff, it is particularly mistaken.

Indeed, as is evidenced by Plaintiff's many press releases and website postings concerning this case, Plaintiff clearly hopes to turn this case into something of a "test case" about "virtual [real] property." Plaintiff initially filed suit against Linden before a District Justice in Chester County, but then withdrew that lawsuit without prejudice last June on the eve of trial. Plaintiff then apparently spent several months crafting the 239 paragraph, 46 page Complaint that is now before this Court.

---

2       Plaintiff is also a member of the bar of this Court.

As shown below, all of Plaintiff's claims result from Linden's decision to exercise its rights under the Terms of Service governing Second Life and agreed to by Plaintiff.[3]  The Terms of Service agreed to by Plaintiff contain a valid arbitration clause that requires that any disputes between the parties be resolved through arbitration in California, where Plaintiff practices law, owns real estate and visits frequently.  Accordingly, under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA"), California law, and consistent with decisions from this jurisdiction and elsewhere, Defendants move to enforce the arbitration provision and to compel Plaintiff to submit his claims against Defendants to arbitration pursuant to the terms of the Terms of Service.

## II.    ARGUMENT

### A.    The Parties Entered Into A Valid And Enforceable Contract

On December 7, 2005, Plaintiff became a member of Second Life, the online computer-simulated environment operated by Linden.[4]  As part of the application process, Plaintiff accepted the Terms of Service of Second Life, which include a California choice of law provision, an arbitration provision and a forum selection clause.   Critically, Plaintiff does not contest that he agreed to the Terms of Service.  Indeed, Plaintiff avers in his Complaint (a true and correct copy of which is attached hereto as Exhibit "A") that he accepted the Terms of Service prior to becoming a Second Life participant.  See Complaint, ¶ 126.

---

[3]    The Complaint asserts ten claims against Defendants, including claims under Pennsylvania's Unfair Trade Practices and Consumer Protection Laws (73 P.S. §201-1, et seq.), California's Unfair and Deceptive Practices Act (Cal. Bus. & Prof. Code §17200), California's Consumer Legal Remedies Act (Ca. Civ. Code § 1750, et seq.), California's Civil Code (§1812.600, et seq.), Fraud and/or Fraud in the Inducement, Conversion, Intentional Interference with a Contractual Relation, Breach of Contract, Unjust Enrichment, and Tortious Breach of the Covenant of Good Faith and Fair Dealing (California Law).

[4]    Information concerning Second Life can be found at http://www.secondlife.com.

The first step in determining whether arbitration should be compelled is to ascertain whether a contract containing an arbitration clause exists. Whether a contract containing an arbitration clause exists is a matter of state law. See Bontempo v. Wolpoff & Abramson, L.L.P., No. Civ.A. 06-745, 2006 WL 3040905, at *3 (W.D. Pa. Oct. 24, 2006) ("when deciding whether the parties agreed to arbitrate a claim (including arbitrability), courts generally apply state law principles that govern the formation of contracts"); Perry v. FleetBoston Financial Corp., No. Civ.A. 04-507, 2004 WL 1508518, at *2 (E.D. Pa. July 6, 2004) (court recognized that contract contained a Rhode Island choice of law provision and applied Rhode Island law to determine if parties entered a valid agreement to arbitrate); Venezie v. MBNA America Bank, No. 2:05CV1458, 2006 WL 2092567, at *5 (W.D. Pa. July 26, 2006) (court applied Delaware law to construe agreement in accordance with agreement's choice of law provision). In this instance, the parties agreed to a choice of law provision requiring California law to be applied to any claims or disputes arising under the Terms of Service.[5]

A contract, such as the one that Plaintiff entered into, is often referred to as a "clickwrap" agreement. A clickwrap agreement permits a computer user to manifest consent to the terms of a contract by clicking on an acceptance button on the website, and if the computer user does not agree to such terms, the website does not accept his or her order or application. See Davidson & Assoc., Inc. v. Internet Gateway, 334 F. Supp.2d 1164, 1176 (E.D. Mo. 2004) ("a 'clickwrap' agreement appears when a user . . . attempts to conduct an Internet transaction involving the agreement and purports to condition further access to the software or transaction on the user's consent to certain conditions there specified; the user consents to these conditions by clicking on

---

[5]    Plaintiff apparently recognizes that California law applies because the majority of his causes of action are based on California law.

a dialog box on the screen, which then proceeds with the remainder of the software installation or Internet transaction").

Courts routinely find "clickwrap" agreements to be enforceable contracts. For example, in Cairo v. CrossMedia Services, Inc., 2005 WL 756610, *5-6 (N.D. Ca. Apr. 1, 2005), the district court found that the terms of use found on the defendant's website constituted a binding agreement between the website operator and the website user. In Cairo, the court found that the plaintiff's on-going use of the defendant's website "under circumstances in which Cairo had actual or imputed knowledge of CMS' terms" was sufficient to find a binding agreement. Here, the evidence in support of finding an agreement is far stronger, considering that Plaintiff concedes that he accepted the Terms of Service when he became a member of Second Life. See Complaint, ¶ 126 (stating that Plaintiff accepted the Terms of Service when he became a member of Second Life).

Similarly, in Hubbart v. Dell Corp, 835 N.E.2d 113, 118 (Ill. App. Ct. 2005) (applying Illinois law), the plaintiffs ordered computers online and later filed consumer protection law claims. Dell moved to compel arbitration claiming that the arbitration clause included in the online "Terms and Conditions" was part of the contract. See id. The statement "All sales are subject to Dell's Term[s] and Conditions of Sale" appeared on three of defendant's web pages that the plaintiffs completed in order to make their purchases. Id. at 121-22. The court compelled arbitration, noting that this statement would "place a reasonable person on notice that there were terms and conditions attached to the purchase and that it would be wise to find out what the terms and conditions were before making the purchase." Id. at 122.

Numerous other cases also hold that an individual who affirmatively assents to the terms of an on-line contract is bound by its terms. See Hotmail Corporation v. Van$ Money Pie Inc.,

1998 WL 388389 (N.D. Cal. Apr. 16, 1998) (applying California law and finding existence of clickwrap agreement); <u>Robert Novak v. Overture Services, Inc.</u>, 309 F. Supp.2d 446, 451-52 (E.D.N.Y. 2004) (plaintiff agreed to be bound by the terms of service set forth in a scrollable window, viewable ten lines at a time and was thus bound by the forum selection clause contained therein); <u>Mortgage Plus, Inc. v. DocMagic, Inc.</u>, No. 03-2582-GTV-DJW, 2004 WL 2331918, *5 (D. Kan. Aug. 23, 2004) (plaintiff entered into a valid clickwrap agreement by clicking on the "yes" icon and consequently the court honored forum selection clause); <u>Davidson</u>, 334 F. Supp.2d at 1177 (finding that the clickwrap license agreement was enforceable under California and Missouri law); <u>DeJohn v. The .TV Corporation Int'l</u>, 245 F. Supp.2d 913, 919 (N.D. Ill. 2003) (court determined that clickwrap agreement was enforceable and not an adhesion contract); <u>Hughes v. McMenamon</u>, 204 F. Supp.2d 178, 181 (D. Mass. 2002) (forum selection clause contained in clickwrap agreement was valid); <u>Bruce G. Forrest v. Verizon Communications Inc.</u>, 805 A.2d 1007, 1010 (D.C. Ct. App. 2002) (plaintiff entered into binding contract by clicking "I Accept" icon); <u>Steven J. Caspi v. Microsoft Network, L.L.C.</u>, 732 A.2d 528, 532-533 (N.J. Super. App. Div. 1999) (enforcing clickwrap agreement where plaintiff clicked on "I agree" button, thereby assenting to terms); <u>Groff v. America Online, Inc.</u>, 1998 WL 307001, *5 (R.I. Super. Ct. May 27, 1998) (plaintiff effectively "signed the agreement by clicking on the "I agree" button); <u>but see Martin v. Snapple Beverage Corp</u>, 2005 WL 1580398, at *5 (Cal. App. 2 Dist. July 27, 2005) (unpublished decision) (stating that "[p]resenting evidence that the plaintiffs clicked on the 'I agree' button is the equivalent of showing a signed statement saying 'I agree to the official rules and regulations'" but not compelling arbitration because there was no evidence plaintiff assented to terms); <u>Ticketmaster Corp. v. Tickets.com</u>, 2000 U.S. Dist. Lexis 4553, at *8 (C.D. Cal. Mar. 27, 2000) (dismissing claim based on terms of

service because user was not required to take any affirmative steps, such as clicking an acceptance button, to indicate assent to terms).

Here, an enforceable contract was formed under California law. Plaintiff admits that he checked the "I Agree" box before accepting the terms and conditions on Linden's website including the binding arbitration provision.[6] See Complaint, ¶ 126. Furthermore, as demonstrated by the Affidavit of Ginsu Yoon ("Yoon Affidavit"), attached hereto as Exhibit B, Plaintiff assented to the Terms of Service at least twice when he became a member of Second Life on or around December 7, 2005. First, Plaintiff clicked on an "I Agree" box contained on Second Life's Registration Page. Id., ¶ 6. Second, when Plaintiff first attempted to login to Second Life, he would have then seen a "First Login" screen which also would require him to click on an "I Agree" box before proceeding into Second Life. Id., ¶8. Simply put, Plaintiff would not have been able to join Second Life had he not accepted the Terms of Service. Id., ¶ 9.

Moreover, and as explained in the Yoon Affidavit, the Terms of Service could have been reviewed by Plaintiff on multiple occasions at any time during the registration and login process. The applicable Registration Page contains two separate weblinks to the Terms of Service, and the Login Screen allowed the user to scroll through the complete Terms of Service prior to accepting the Terms. Yoon Affidavit, ¶¶ 6, 8. Therefore, the Terms of Service were presented to Plaintiff at least twice and Plaintiff agreed to abide by them.

---

6    The Complaint alleges that "Bragg never read the TOS" prior to accepting the Terms of Service. Complaint, ¶ 126. Under both California and Pennsylvania law, however, the failure to read a contract is not a reason to refuse its enforcement. See e.g., Rowland v. PaineWebber Inc., 4 Cal. App. 4th 279, 287 (1992) ("Failure to read a contract before signing it is not by itself a reason to refuse its enforcement"); Ackler v. Raymark Indus., Inc., 551 A.2d 291, 294-95 (Pa. Super. Ct. 1988) (Pennsylvania law binds a party to the express terms of a contract in the absence of fraud, regardless of his failure to read it). Plaintiff offers no reasons why he, an attorney with "cyber law" experience, chose not to read the Terms of Service when he became a member of Second Life.

The Terms of Service contain an arbitration provision which requires that claims in any way related to the Terms of Service be resolved through arbitration conducted according to the rules of the International Chamber of Commerce.  Specifically, paragraph 13 ("General Provisions") includes the following language:

> Any dispute or claim arising out of or in connection with this Agreement or the performance, breach or termination thereof, shall be finally settled by binding arbitration in San Francisco, California under the Rules of Arbitration of the International Chamber of Commerce by three arbitrators appointed in accordance with said rules.

Yoon Affidavit, ¶ 4 and Ex. 1 at page 8.  The "General Provisions" further make clear that California law shall govern all disputes:

> The rights and obligations of the parties under this Agreement shall not be governed by the U.N. Convention on Contracts for the International Sale of Goods; rather such rights and obligations shall be governed by and construed under the laws of the State of California; including its Uniform Commercial Code, without reference to conflict of law principles. . .

Id.  Accordingly, when Plaintiff accepted the Terms of Service, Plaintiff entered into an enforceable contract containing an arbitration provision.

**B.      The Arbitration Clause Is A Valid And Enforceable Provision**

**1.      The FAA Favors Arbitration Of All Of Plaintiff's Claims**

The FAA provides that, if a party to a written agreement with an enforceable arbitration agreement fails to arbitrate its claims pursuant to that agreement, the aggrieved party may petition the U.S. District Court for "an order directing the parties to proceed with arbitration in accordance with the terms of the agreement."[7]  9 U.S.C. § 4; see also 9 U.S.C. § 2.  The effect of

---

[7]      As this Court has recognized, "[m]otions to compel arbitration are evaluated, in the first instance, under the summary judgment standard set forth in Fed. R. Civ. P. 56(c)."

Continued on following page

8

the FAA is "to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); 9 U.S.C. § 2. The FAA covers all arbitration agreements that relate to a transaction involving, either directly or indirectly, interstate commerce, such as the one at issue here. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401 (1967) (finding that the FAA covered an arbitration agreement where the contract involved interstate transfer of services). The United States Supreme Court stated, "[b]y its terms, the [Federal Arbitration] Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (enforcing arbitration clause) (emphasis in original).[8]

Thus, the liberal policy favoring arbitration and judicial enforcement of arbitration agreements in the federal courts is well established. See, e.g., Berkery, 256 F. Supp.2d at 364-66 (discussing FAA and liberal policy favoring arbitration); Moses H. Cone Mem'l Hosp., 460 U.S. at 24.[9] As a rule, arbitration must be compelled unless the party opposing it provides "forceful evidence of a purpose to exclude the claim." United Steel Workers of America v. Warrior &

---

Continued from previous page

 Berkery v. Cross Country Bank, 256 F. Supp.2d 359, 364 n.3 (E.D. Pa. 2003) (Robreno, J.) (citing cases).

[8] "Congress has [ ] mandated the enforcement of arbitration agreements." Southland Corp. v. Keating, 465 U.S. 1, 10 (1984).

[9] See also Green Tree Finan. Corp. v. Randolph, 531 U.S. 79, 91-92 (2000); Mintze v. American General Fin. Serv., Inc., 2006 U.S. App. LEXIS 564, *17 (3d Cir. Jan. 10, 2006); Brayman Constr. Corp. v. Home Ins. Co., 319 F.3d 622, 625 (3d Cir. 2003); Johnson v. West Suburban Bank, 225 F.3d 366, 376 (3d Cir. 2000), cert. denied sub nom., Johnson v. Tele-Cash, Inc., 531 U.S. 1145 (2001); Harris v. Green Tree Finan. Corp., 183 F.3d 173, 178-79 (3d Cir. 1999).

Gulf Navigation Co., 363 U.S. 574, 584-85 (1960). Courts are therefore required to "operate under a 'presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is *not* susceptible of an interpretation that covers the asserted dispute.'" In re: Prudential Ins. Co. of America Sales Practice Litig., 133 F.3d 225, 231 (3d Cir. 1998) (emphasis added), cert. denied, 119 S. Ct. 55 (citing AT&T Tech. v. Comm. Workers of America, 475 U.S. 643, 650 (1986)); see also Great Western Mtg. Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir. 1997), cert. denied, 118 S. Ct. 299 (1997) (stating that "doubts 'concerning the scope of arbitrable issues should be resolved in favor of arbitration.'").

Where an arbitration agreement is broadly worded and does not contain an express provision excluding the particular dispute from arbitration, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." AT&T Tech., 475 U.S. at 650. Indeed, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25; see also Stateside Mach. Co. v. Alperin, 591 F.2d 234, 240 (3d Cir. 1979) (ruling that "doubtful issues regarding the applicability of an arbitration clause are to be decided in favor of arbitration").

### 2.    California Law Also Favors Arbitration

California law, which governs the Terms of Service, also holds that arbitration is a highly favored method of dispute resolution and that an agreement to arbitrate should be liberally interpreted and enforced. See Broughton v. CIGNA Heathplans of Cal., 21 Cal. 4th 1066 (1999) (recognizing "strong public policy in favor of enforcing arbitration agreements"). Consistent with the FAA, California Code of Civil Procedure section 1281.2 mandates arbitration where there exists a written agreement between the parties to arbitrate and the dispute falls within its

terms. Cal. Code Civ. Proc. § 1281.2. In interpreting the scope of an agreement to arbitrate, California law requires courts to construe the language of arbitration provisions liberally with an eye toward arbitration, and to compel arbitration unless the agreement clearly does not apply to the dispute in question." Weeks v. Crow, 113 Cal. App. 3d 350, 353 (1980).

Determining the validity of an arbitration clause, like the interpretation of any contract, is generally a question of law. See Buckhorn v. St. Jude Heritage Medical Group, 121 Cal. App. 4th 1401, 1406 (2004). "The burden is on 'the party opposing arbitration to demonstrate that an arbitration clause *cannot* be interpreted to require arbitration of the dispute.'" Id. (emphasis in orig.; quoting Coast Plaza Doctors Hosp. v. Blue Cross of California, 83 Cal. App. 4th 677, 686-687 (2000)). "Doubts as to whether an arbitration clause applies to a particular dispute should be resolved in favor of sending the parties to arbitration." United Transp. Union v. Southern Cal. Rapid Transit Dist., 7 Cal. App. 4th 804, 808 (1992); see also Vianna v. Doctors' Management Co., 27 Cal. App. 4th 1186, 1189 (1994); see generally, Knight et al., Cal. Practice Guide: Alternative Dispute Resolution, ¶¶ 5:221-5:227, pp. 5-90-91 (The Rutter Group, 2000).

### 3.   All Of Plaintiff's Claims Against Linden And Rosedale Fall Squarely Within The Scope Of The Arbitration Clause

"In determining the substantive scope of an arbitration clause, the court's inquiry is limited to that of 'ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract.'" Berkery, 256 F. Supp.2d at 365 (citing Medtronic Ave, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 55 (3d Cir. 2001)). In making this inquiry, the court's approach is guided by a 'presumption of arbitrability'" Id. (citing cases). "An order to arbitrate 'should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Medtronic, 247 F.3d at 55 (internal citation omitted).

All of the claims set forth in Plaintiff's Complaint fall within the scope of the arbitration clause at issue. The Terms of Service provide:

> Any dispute or claim arising out of or in connection with this Agreement or the performance, breach or termination thereof, shall be finally settled by binding arbitration in San Francisco, California under the Rules of Arbitration of the International Chamber of Commerce by three arbitrators appointed in accordance with said rules.

Yoon Affidavit, Ex. 1, § 13. The arbitration clause in the Terms of Service therefore broadly applies to "[a]ny dispute or claim arising out of or in connection with this Agreement or the performance, breach or termination thereof. . ." Id.

Generally, courts have interpreted broadly agreements providing for the arbitration of disputes "arising out of or relating to" the underlying contract. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. at 624 n.13 ("arising out of or relating to" is a "broad clause" applicable to antitrust claims); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398 (1967) ("arising out of or relating to" is a "broad" arbitration clause); Genesco v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 855 (2d Cir. 1987) (language "sufficiently broad" to encompass fraudulent inducement claim).

To determine whether the arbitration agreement in the Terms of Service encompasses Plaintiff's claims, the Court must "focus on the factual allegations in the complaint rather than the legal causes of action asserted." Genesco, 815 F.2d at 846. "If the allegations underlying the claims 'touch matters' covered by the parties' . . . agreement, then those claims must be arbitrated . . . ." Id. (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. at 624 n.13).

All of Plaintiff's claims constitute a "dispute" or "claim" arising out of or in connection with the Terms of Service. All of Plaintiff's claims are founded upon his belief that he was

denied alleged real property rights with respect to a computer-simulated real estate experience when Linden exercised its rights under the Terms of Service and terminated his membership. See Complaint, ¶¶ 84-90, 112-15. Specifically, Plaintiff claims that he owned "property" on Second Life, which Linden improperly seized, and Plaintiff claims that he is owed money for the lost property.

The resolution of Plaintiff's claims will depend on application of the Terms of Service. Plaintiff alleges that "[w]hile Defendants provide a TOS, it did not state or provide any term or condition such that Defendants may retain and/or convert Bragg's money . . . ." Complaint, ¶ 131. Plaintiff's contention is directly refuted by the Terms of Service, including but not limited to section 4.3, which informed Plaintiff that "ANY OTHER DATA INCLUDING CONTENT (AS DEFINED IN SECTION 6.1 BELOW), ACCOUNT HISTORY OR AVATAR NAMES RESIDING ON LINDEN'S SERVERS, MAY BE DELETED, ALTERED OR MOVED OR TRANSFERRED AT ANY TIME FOR ANY REASON IN LINDEN'S SOLE DISCRETION." Yoon Affidavit, Ex. 1, § 4.3 Additionally, section 5.1 allowed Linden to "take whatever steps it deems necessary to abridge, or prevent behavior of any sort on the Service in its sole discretion" when a user, such as Plaintiff, interferes with Second Life. Id. at § 5.1 And most significantly, section 7.1 provides that "[N]o money will be returned to you in the event that your Account is terminated due to suspicions of fraud, violation of other laws or regulations, or deliberate disruptions to or interference with the Service." Id. at § 7.1

Plaintiff's Complaint further makes clear that Plaintiff believes that "Defendants "seek to interpret their own TOS inconsistently with the representations made by them to the world in the media." Complaint, ¶ 133. Plaintiff also argues that the Terms of Service do not permit Linden to take the allegedly unlawful actions which it took upon discovering Plaintiff's fraud.

Complaint, ¶ 134. Further, pages 25 through 28 of the Complaint set forth Plaintiff's opinions about the enforceability of various terms contained in the Terms of Service. See Complaint, pp. 25-28.

Therefore, it cannot be disputed that Plaintiff's claims therefore "relate to" the Terms of Service to which Plaintiff agreed. As such, all of Plaintiff's claims set forth in the Complaint fall squarely within the arbitration clause as disputes arising out of or in connection with the Terms of Service.

### 4.    Plaintiff's Claims Against Rosedale Must Also Be Arbitrated

Plaintiff's Complaint also names Linden's President Philip Rosedale as an individual defendant. These claims, however meritless, must also be arbitrated.

Third Circuit decisions interpreting the FAA require that Plaintiff's claims against Mr. Rosedale be arbitrated, notwithstanding any contention by Plaintiff that Mr. Rosedale is not a signatory to the Terms of Service. Courts consistently find that "tag-along" claims made against representatives of a corporate defendant under like circumstances must also be arbitrated. See, e.g., Pritzker v. Merrill, Lynch, Pierce, Fenner & Smith, 7 F.3d 1110, 1121 (3d Cir. 1993) (binding non-signatory agents to arbitration clause); Klein v. Boyd, 949 F. Supp. 286, 288 (E.D. Pa. 1996) (non-signatories, usually employees or agents of the signatory, are bound by arbitration clauses); Smith v. Equifirst Corp., 117 F. Supp.2d 557, 565 (S.D. Miss. 2000) (requiring arbitration of plaintiff's RESPA claims against mortgage broker, a non-signatory to the arbitration agreement between plaintiff and defendant lender). This is especially true when the claims against the individual and the claims against the company are substantially interdependent. Pritzker, 7 F.3d at 1122; see also Barrowclough v. Kidder, Peabody & Co., 752 F.2d 923, 933 (3d Cir. 1985) (stating that "a variety of non-signatories of arbitration agreements

have been held to be bound by such agreements under ordinary common law contract and agency principles" where the non-signatories do not object to arbitration), overruled on other grounds, Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110 (3d Cir. 1993); Blount v. Nat'l Lending Corp., Inc., 108 F. Supp.2d 666, 671 (S.D. Miss. 2000) (allowing non-signatory to enforce arbitration agreement pursuant to equitable estoppel principles).

The Complaint is a textbook example of a pleading containing "interdependent" claims. Each of the ten Counts asserted against Linden is also asserted against Mr. Rosedale. Moreover, throughout the Complaint, Plaintiff consistently aggregates Linden and Mr. Rosedale as "Defendants." Indeed, Plaintiff does not once distinguish between the two Defendants from paragraph 139 (the beginning of Count I) to paragraph 239 (the end of Count X) of the Complaint. Moreover, there can be no dispute that all of the actions attributed to Mr. Rosedale were taken in connection with his role as a representative of Linden. There is no reason, substantive or practical, why the claims asserted against Mr. Rosedale must not also be referred to arbitration.[10]

### C.    The Parties Agreed To Arbitrate Under The Rules Of Arbitration Of The International Chamber Of Commerce

The Terms of Service require that Plaintiff's claims be arbitrated under the Rules of Arbitration of the International Chamber of Commerce ("ICC"). See Yoon Affidavit, ¶ 5. Courts regularly have upheld contracts where the parties agreed to submit their claims to the ICC. See Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1303 (3d Cir. 1996) (finding that

---

[10]    As noted *supra*, if the claims against Mr. Rosedale are not submitted to arbitration, the claims also can alternatively be dismissed because this Court lacks personal jurisdiction of Mr. Rosedale. And if the claims are not dismissed for lack of personal jurisdiction, they should be stayed pending completion of the arbitration. See Berkery, 256 F. Supp.2d at 370 n. 11.

successor to agreement is bound by ICC arbitration clause in agreement and affirming order

compelling arbitration); Hill v. Gateway 2000, Inc., 105 F.3d 1147, 1150-51 (7th Cir. 1997)

(court upheld ICC arbitration provision); Poponin v. Virtual Pro. Inc., 2006 WL 2691418, at *12

(N.D. Cal. Sept. 20, 2006) (stating that the Court had no jurisdiction to decide the question of

arbitrability because the parties had previously agreed to arbitrate any disputes arising under the

Agreement pursuant to the ICC); Filias v. Gateway 2000, Inc., 1997 WL 33814599, at *3 (E.D.

Mich. Apr. 8, 1997) (stating there was strong support for position that ICC arbitration provision

should be upheld).

     The Seventh Circuit's decision in Hill is particularly instructive. The agreement of sale

used by the defendant, Gateway, contained a provision requiring a computer purchaser's claims

to be arbitrated before the ICC. The Seventh Circuit upheld the provision and affirmed the order

directing the consumer to re-file his claims in arbitration. See Hill, 105 F.3d at 1150-51. The

reasoning of the Seventh Circuit in Hill is even more compelling here, where the facts involve a

savvy computer user and attorney with expertise in matters related to cyber law and an academic

interest in the legal issues presented in the case. This is not a case involving an unsophisticated

person who visits a website once and purchases an item. To the contrary, the allegations in the

Complaint demonstrate that Plaintiff is far from a novice with respect to the issues at hand.

Accordingly, this Court should order Plaintiff to arbitrate any claims he seeks to assert before the

ICC under its rules.

    **D.**    **The Court Should Order That The Arbitration Be Conducted**
                 **In San Francisco**

     In ordering Plaintiff to submit all of his claims to the ICC for resolution, the Court should

further order that arbitration take place in San Francisco, as required by the forum selection

clause contained in the Terms of Service.

The Supreme Court repeatedly has recognized that forum selection clauses are valid and enforceable. See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) (forum selection clauses are prima facie valid); Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 590-94 (1991) (finding that forum selection clause contained in fine print on cruise ticket was enforceable). See also IDT Corporation v. Clariti Carrier Services Ltd., 772 A.2d 1019, 1022 (Pa. Super. Ct. 2001) (forum selection clause applied to all counts of complaint when those counts "[sought] recovery either under the terms of the agreement or for services rendered as a result of the agreement" and therefore "relate[d] to the alleged contractual relationship between the parties").

Furthermore, forum selection clauses found in clickwrap agreements similar to the one at issue in this case have routinely been enforced. See Cairo, 2005 WL 756610, at *5 (enforcing clickwrap agreement and dismissing action because terms of use mandated that suit be brought in Illinois); DeJohn, 245 F. Supp.2d of 919 dismissing action based on forum selection clause contained in terms of use and indicating that "failure to read contract is not a get out of jail free card"); Mortgage Plus, 2004 WL 2331918, at *7 (finding that user agreed to terms by clicking on icon indicating assent and transferring case from Kansas to California in light of forum selection clause); Robert Novak, 309 F. Supp.2d at 452 (finding that plaintiff agreed to Terms of Service and that plaintiff was bound by forum selection clause contained therein); Decker v. Circus Circus Hotel, 49 F. Supp.2d 743, 748 (D.N.J. 1999) (transferring suit from New Jersey to Nevada because plaintiff assented to forum selection clause contained in on-line reservation system); Groff 1998 WL 307001, at *5 (enforcing forum selection clause in clickwrap agreement that required suit filed in Rhode Island to be transferred to Virginia).

Here, the agreement to arbitrate claims in San Francisco is reasonable. Plaintiff, an attorney licensed in California, New Jersey and Pennsylvania and a self-described expert in

"cyber law", had the opportunity to review the terms of the Terms of Service, which included the forum selection clause, before becoming a member of Second Life. See http://chescolawyers.com/biography.html ("Marc S. Bragg operates a multi-versatile law practice and is licensed in Pennsylvania, New Jersey and California"), a copy of which is attached as Exhibit C. Plaintiff specifically accepted the terms of the Terms of Service, which included the forum selection clause. Therefore, Plaintiff agreed to San Francisco as the appropriate location for arbitration of his claims.

Furthermore, Plaintiff's website states that Plaintiff "visits California on a frequent basis." Id. Plaintiff therefore cannot claim that conducting the arbitration in San Francisco is unnecessarily inconvenient. Where the agreed upon forum is available to the parties and can provide substantial justice, the parties are bound by the contract's forum selection clause. See Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287 (3d Cir. 1996).

The United States Supreme Court has emphasized that sound policy reasons support the enforcement of forum selection clauses. Those considerations have special force in a case such as this one. In Carnival, the Court found that enforcing Carnival's forum selection clause was specifically important because: (1) Carnival otherwise would be subject to litigation in multiple fora; (2) enforcing parties' forum choices conserves judicial resources by obviating the need for pretrial motions regarding the appropriate forum; and (3) plaintiffs benefit from such clauses because service providers' costs are reduced by the limitation on the fora in which they can be sued and these savings can be passed on to consumers. See Carnival Cruise Lines, 499 U.S. at 595.

Linden shares the same interests as Carnival Cruise Lines. Like Carnival, without a forum selection clause, Linden potentially could be subject to litigation in any forum, whether in

the United States or abroad, where one of its customers resides. As a result, Linden has a

compelling interest in restricting where claims and litigation can be filed against it. Considering

that Mr. Rosedale is not even subject to personal jurisdiction in Pennsylvania, his interest in

having the claims against him arbitrated in San Francisco is even more compelling. Therefore,

and according to the law set forth above, the Court's order compelling arbitration of Plaintiff's

claims should also direct that the arbitration be conducted in San Francisco.

## III.    CONCLUSION

For the foregoing reasons, Linden Research, Inc. and Philip Rosedale's Motion to

Compel Arbitration should be granted and all Counts of the Complaint dismissed in light of the

parties' agreement to submit any claims to arbitration in San Francisco.


/s Andrew J. Soven (/AS 955)
Andrew J. Soven
Andrea B. Weingarten
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
(215)851-8100

Attorney for Defendants Linden Research, Inc.
and Philip Rosedale

Dated: November 14, 2006

## CERTIFICATE OF SERVICE

I, Andrew J. Soven, hereby certify that Defendants Linden Research, Inc. and Philip Rosedale's Motion to Compel Arbitration has been filed electronically this 14th day of November, 2006, and is available for viewing and downloading from the federal court's Electronic Case Files system. A copy of the foregoing has also been served today by U.S. mail upon the following counsel:

Jason A. Archinaco, Esquire
White and Williams LLP
The Frick Building
437 Grant Street, Suite 1001
Pittsburgh, PA 15219


"s"/ Andrew J. Soven
Andrew J. Soven