IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA

MARC BRAGG, Esq., an individual,                    CIVIL DIVISION

                                   Plaintiff,       No. 06-cv-4925

                    v.                              **JUDGE EDUARDO ROBRENO**

LINDEN RESEARCH, INC., a corporation,
and PHILIP ROSEDALE, an individual,

                                   Defendants.

**BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL ARBITRATION**

          AND NOW, comes Plaintiff, Marc Bragg, Esq., by and through counsel, Jason A.

Archinaco, Esq., and the law firm of WHITE AND WILLIAMS, LLP, and files the

following Brief in Opposition to Defendants' Motion to Compel Arbitration and avers as

follows:

**FACTS**

          Plaintiff read written statements and heard verbal representations made by

defendants regarding virtual land ownership.  See Declaration of Marc Bragg in Support

of Brief in Opposition to Motion to Compel Arbitration, ¶ 4, attached hereto as Exhibit

"1."  Plaintiff believed the statements made by the defendants that purchasing virtual land

from Defendant Linden meant that he owned the land.  Declaration of Marc Bragg, ¶ 5.

Plaintiff believed Defendant Rosedale's repeated statements that a consumer who

purchased virtual land from defendants owned that land with all ownership rights

typically incident to such ownership.  Declaration of Marc Bragg, ¶ 6.  Defendants'

statements regarding ownership were without reservation or condition except for the

Dockets.Justia.com

requirement to pay a monthly tax to continue ownership. Declaration of Marc Bragg, ¶ 7. Defendants apparently are admitting that their representations were false. Declaration of Marc Bragg, ¶ 8.

Defendants' repeated representations induced plaintiff to enter into a series of separate and distinct land auction contracts with the Defendant Linden. Declaration of Marc Bragg, ¶ 9. To access the auctions, plaintiff would simply enter his user ID and password on the internet website of Defendant Linden. Declaration of Marc Bragg, ¶ 10. Plaintiff was not required to click, review and/or agree to the terms of the Terms of Service ("TOS") cited by the defendants in connection with bidding, purchasing, or paying for a virtual land contract via defendant's auction process. Declaration of Marc Bragg, ¶ 11. The individual land auctions did not (and still do not) reference the TOS. Declaration of Marc Bragg, ¶ 12; See also samples of land auction documents and land pages from Second Life website, collectively attached hereto as Exhibit "2." Neither the land auction pages or the bidding process "incorporated" the TOS, much less the arbitration provision at issue in defendants' instant Motion. Declaration of Marc Bragg, ¶ 13. When plaintiff bid on a piece of land, the TOS was not referenced in any way as part of the purchase agreement nor was it "incorporated" into the auction terms of bidding or payment. Declaration of Marc Bragg, ¶ 14.

Plaintiff would type his bid amount into the auction page and press submit, receive a confirmation page confirming the bid, and then press submit again and the bid would be entered. Declaration of Marc Bragg, ¶ 15. The land auction confirmation page would inform plaintiff that he was entering into a "legally binding contract", but it did not state anywhere that any dispute about any land auction contract was subject to the TOS or

2

any agreement to arbitrate any dispute regarding the purchase of land from Defendant Linden. Declaration of Marc Bragg, ¶ 17. Nor did any of those land auction pages disclose, at any point in time, that plaintiff was not truly becoming the "owner" of the virtual land he was purchasing. Declaration of Marc Bragg, ¶ 18.

None of the multiple separate land auction contracts drafted by Defendant Linden and entered into between plaintiff and Defendant Linden contained any agreement to arbitrate or any reference whatsoever to the TOS or its arbitration provision. Declaration of Marc Bragg, ¶ 19. Had such an agreement been intended, it would have been rather simple for Defendant Linden to simply have included such language. Declaration of Marc Bragg, ¶ 20. It did not.

When plaintiff would win an auction, he would then receive a confirmation e-mail stating that he had won the land, providing the land size, name, and agreed to purchase price. Declaration of Marc Bragg, ¶ 21; See also sample confirmation e-mails attached hereto as Exhibit "3." Later, plaintiff was informed that before he could claim the land, he had to pay for it which was done by going to back to the winning auction and clicking the pay button. Declaration of Marc Bragg, ¶ 22. Clicking the pay button allowed Defendant Linden to either charge the credit card held by plaintiff, or to deduct the payment from funds held by Linden on his behalf in his account with defendant. Declaration of Marc Bragg, ¶ 23. Only after paying in full for the land was plaintiff allowed to claim the land "in-world". Declaration of Marc Bragg, ¶ 24. The confirmation e-mail sent by defendant to plaintiff confirming the "legal contract" to purchase did not state anything with regard to the TOS or the arbitration clause, or that defendants were somehow attempting to, after the fact, apply the TOS to the completed

3

auction contract. Declaration of Marc Bragg, ¶ 25. There was nothing in any of the confirming e-mail that said anything about the TOS and/or any agreement to arbitrate. Declaration of Marc Bragg, ¶ 26; See also Exhibit "3." Indeed, the TOS agreement attached to the Defendant's Motion to Compel Arbitration is devoid of any reference to the land auctions. Declaration of Marc Bragg, ¶ 27.

Further, the TOS agreement attached to Defendant's Motion to Compel Arbitration is unconscionable as a matter of law and therefore unenforceable. Even if defendants were to successfully establish that the arbitration clause applied to the land auction contracts, the clause itself is further evidence of and would be an integral part of fefendants' fraudulent scheme. By design, the arbitration clause is intended to be so overwhelmingly burdensome and economically insurmountable, both procedurally and substantively, so as to deter any potential consumer from attempting to enforce their rights in a dispute with defendant. The TOS and in particular, the arbitration and venue provisions, are not intended or designed by defendant to provide an alternate forum for dispute resolution. Taken together, defendant's intentional failure to disclose the exorbitant filing fees, additional arbitration fees, and costs to be imposed upon any claimant, such as plaintiff, can lead only to the conclusion that defendant's intended for none of their customers to ever be willing to pay over $10,000 just to initiate a claim where the average transaction in Second Life is believed to be less than $2.00 and, indeed, land transactions with defendant are generally $1,000 or far less. See Second Life Economic Statistics attached hereto as Exhibit "4-1," and Second Life LindeX Market Data attached hereto as Exhibit "4-2."[1]

---

[1] The current "exchange rate" between U.S. and Linden (L$) dollars is approximately 266 Linden (L$) per U.S. dollar paid by consumers of Second Life, See Exhibit "4-2" Therefore the sale of a piece of virtual

4

Plaintiff had approximately $8,000[2] taken wrongfully from him through defendants' false statements and scheme. Declaration of Marc Bragg, ¶ 33. Defendant Linden took plaintiff's virtual land owned by him and froze his $2,000 U.S. Currency held by Linden in trust for plaintiff in his account with them; all without notice or discussion of any kind. Declaration of Marc Bragg, ¶ 34. Now, confronted with plaintiff's lawsuit, defendants seek to not only transfer the case to the second most expensive city in the United States, but also to compel arbitration pursuant to the rules of the International Chamber of Commerce ("ICC"). Declaration of Marc Bragg, ¶ 35. The initial filing fee for any arbitration pursuant to the defendant's arbitration clause, just to initiate the process, is approximately $10,000 plus additional fees and the costs of the arbitrators, even if the claim is only $1.00. Declaration of Marc Bragg, ¶ 36, See also Court of Arbitration Cost Calculator attached hereto as Exhibit "5." In this case, in addition to the fact that plaintiff has already been deprived of $5,000 dollars of his own money, the following prohibitive costs would be included in litigating the case in the ICC forum in San Francisco:

> Costs
> $10,000 initial advance on costs without arbitrators expenses;
> $unknown – additional hearing costs;
> $600 (estimate for two days at $300 @ day);
>
> Two day arbitration (arbitrators costs)
> $1,356 – three arbitrators lodging for two days at the two star "Nob Hill Motor Inn" ($226 @ night)
> $36 -- three arbitrators lunch at McDonalds (two days);
> $36 – three arbitrators dinner at McDonalds (two days);
> $40-- three arbitrators travel (taxis to hearing location from the Motor Inn, all arbitrators in the same taxi, arbitrators walking to McDonalds);

---

land, for example, for 266 Linden (L$) dollars is the same as buying the land for $1.00 U.S. currency. The vast majority of Second Life transactions are for less than 500 Linden (L$) dollars, see Exhibit "4-1," Page 2 of 5.

[2] Plaintiff was able to mitigate and reduce his out of pocket expenses to approximately $4,000 to $5,000.

Plaintiff and his counsel's costs
>$904 – two nights for plaintiff and counsel at the "Nob Hill Motor Inn";
>$24 – lunch at McDonalds two days;
>$24 – dinner at McDonalds two days;
>$40 – taxis two and from hearings;
>$400 – coach airfare to San Francisco (plaintiff and counsel)
>$80 – taxis – airport

>Total ultra-conservative and unrealistically optimistic costs associated with hearings in San Francisco, CA

**$13,540**

Declaration of Marc Bragg, ¶ 37. Those costs are in addition to the additional legal fees plaintiff would necessarily incur resultant from having to travel back and forth to San Francisco. Declaration of Marc Bragg, ¶ 38. The reality is that the ultra-conservative and seemingly absurd listing of costs above is not realistic; in reality, it would be much higher. Declaration of Marc Bragg, ¶ 39. Realistically, the incidental costs associated with litigating the case in San Francisco, CA pursuant to the ICC rules would be oppressively high and overwhelmingly, and would far exceed $5,000, the minimum amount already wrongfully deprived and withheld from plaintiff. Declaration of Marc Bragg, ¶ 40. In light of defendant's in-house counsel's experience and background as discussed below, along with the fact that defendant intentionally failed to disclose the cost incident to just initiating a claim under the ICC, it is clear that defendant's intentional design is to make the TOS and its arbitration provision so economically unfeasible to exercise that it must be considered both procedurally and substantively unconscionable as a matter of law. The design of the TOS and its arbitration and venue provisions clearly are intended to cause a complete subversion and substantive denial of consumer to exercise their lawfully protected rights under the several consumer protection statutes in each of the separate states of the United States of America.

Factoring in the up-front filing costs and the incidentals in light of the average transaction value between defendant and its customers demonstrates that defendant's design of the arbitration and venue clauses is defendant's way of wrongfully attempting to insulate itself from liability by forcing consumers, such as plaintiff, to abandon their claims, as opposed to advancing or potentially incurring costs equivalent to the down payment on a $135,000 house. Declaration of Marc Bragg, ¶ 41. Plaintiff would have to abandon his claims for damages if this Court enforces the arbitration provision as he simply cannot spend over $10,000 to initiate a claim where he is already out of pocket approximately $5,000. Declaration of Marc Bragg, ¶ 46.

Moreover, even if this Court were to transfer portions of the case to arbitration in San Francisco, by its own language (conspicuously not cited by the defendants), the arbitration clause of the TOS states: **"Notwithstanding the foregoing, either party may apply to any court of competent jurisdiction for injunctive relief . . . ."** (emphasis added). See TOS attached to defendant's Brief. Thus, all injunctive relief sought by plaintiff is properly before this Court and cannot be transferred to San Francisco, in any event.

## ARGUMENT

## I.    STATE LAW MUST BE UTILIZED TO DETERMINE WHETHER THERE WAS ANY AGREEMENT TO ARBITRATE.

State law supplies the rules of decision regarding contract formation and enforceability. Section 2 of the Federal Arbitration Act ("FAA") provides that arbitration agreements are "valid, irrevocable, and enforceable, save on such grounds as exist at law or in equity for the revocation of any contract." There is no federal substantive law of contracts favoring arbitration clauses that supersedes state law. *Supak & Sons Mfg. Co. v.*

7

*Pervel Industries, Inc.*, 593 F.2d 135, 137 (4th Cir. 1979) ("Section 2 dictates the effect of a contractually agreed-upon arbitration provision, but it does not displace state law on the general principles governing formation of the contract itself.'"). See also *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12 (1967) (the purpose of § 2 is "to make arbitration agreements as enforceable as other contracts, but not more so").

The United States Supreme Court has held that "generally applicable contract defenses, such as fraud, duress or unconscionability may be applied to invalidate arbitration agreements." *Doctor's Assoc., Inc. v. Casavotto*, 517 U.S. 681, 687 (1996). Although the states may not impose special limitations on the use of arbitration clauses, *Doctor's Associates*, 517 U.S. at 686, the validity of an arbitration clause is nevertheless an issue of state contract law.   See, e.g., *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 60 (1995) ("The interpretation of private contracts is ordinarily a question of state law, which this Court does not sit to review . . . .")(citing *Volt Information Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468, 474 (1989)). The Ninth Circuit is equally clear: "In all situations where arbitration provisions are 'placed upon the same footing as other contracts,' [citations omitted], state law applies." *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 941 (9th Cir. 2001) cert. den. 151 L.Ed. 977 (2002). See also *Circuit City Stores v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002), cert. den. 153 L.Ed.2d 160 (2002) (In determining whether an agreement to arbitrate is valid, federal courts must "apply ordinary state-law principles that govern the formation of contracts")(quoting *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995)).

II.     **THE SEPARATE LAND CONTRACTS BETWEEN PLAINTIFF AND DEFENDANT DO NOT CONTAIN AN AGREEMENT TO ARBITRATE.**

The defendants have the burden of proving an agreement for binding arbitration. See, *Par-Knight Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n. 9 (3d Cir. 1980) (party seeking to compel arbitration bears an initial summary-judgment like burden of establishing that it is entitled to arbitration); accord *Owen v. MBPXI Corp.*, 173 F.Supp.2d 905, 922 (N.D. Iowa 2001); *Rosenthal v. Great Western Fin. Sec. Corp.*, 14 Cal.4th 394, 413 (Cal. 1996) (party seeking to enforce arbitration agreement bears the burden of proving its existence by a preponderance of the evidence). Defendants have failed to meet this burden and in fact, cannot do so.

A.     **THERE WAS NO AGREEMENT TO ARBITRATE ANY DISPUTE INVOLVING THE LAND AUCTION CONTRACTS.**

Plaintiff and defendants did not mutually agree in any of the separate independent land auction contracts to arbitrate any disputes regarding the purchase and sale of land. Defendants have not and cannot prove that there was any agreement to arbitrate disputes about the land auction contract which are at the center of this litigation. Further, plaintiff and defendants did not mutually agree to arbitrate any claims with regard to the numerous false representations defendants made about "ownership" of the virtual land.

Defendants spend some time discussing the general "liberal policy" towards arbitration as if the general policy should prevail without analysis of the facts of this case. The FAA requires the Court to enforce an agreement to arbitrate *when such an agreement exists*, but the policy does not allow for an injection of a term to arbitrate where mutual consent between the parties to that term does not exist. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("arbitration is simply a matter of contract

between parties; it is a way to resolve disputes - but only those disputes - that the parties have agreed to submit to arbitration"); *Mitchell v. American Fair Credit Assoc.*, 99 Cal.App.4th 1345, 1355 (2002)("Whether there is an agreement to submit disputes to arbitration ... does not turn on the existence of a public policy favoring [arbitration] ... That policy, whose existence we readily acknowledge, does not even come into play unless it is first determined that [there is an agreement to arbitrate].")(citation omitted).

The test for the validity of a pre-dispute mandatory arbitration agreement begins with the mutual consent of the contracting parties. *See Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 90 (2000) ("In determining whether statutory claims may be arbitrated, we first ask whether the parties agreed to submit their claims to arbitration."); *Three Valleys Municipal Water Dist. v. E.F. Hutton*, 925 F.2d 1136, 1141 (9th Cir. 1991) ("before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect'"); accord *Long v. Fidelity Water Systems, Inc.*, 2000 U.S. Dist. LEXIS 7827, *7 (N.D. Cal. 2000). See also *Armendariz v. Foundation Health Psychare Servs.*, 24 Cal. 4th 83, 115 (Cal. 2000) ("Arbitration is favored in this state as a voluntary means of resolving disputes, and this voluntariness has been its bedrock justification.").

"[A]rbitration is a matter of contract and a party cannot be required to submit any dispute [to arbitrate] which he has not agreed so to submit." *Comb v. Paypal*, 218 F.Supp.2d 1165, 1170-1 (N.D.Cal. 2002) (quoting *Ajida Tech., Inc. v. Roos Instruments, Inc.*, 87 Cal.App.4th 534, 541, 104 Cal.Rptr.2d 686 (2001).[3] The Court must interpret the

---

[3] Defendant Linden's TOS calls for the application of California law with regard to interpretation of the TOS and the arbitration provision. As the California Supreme Court has held: "[W]hen a rational businessperson enters into an agreement establishing a transaction or relationship and provides that disputes arising from the agreement shall be governed by the law of an identified jurisdiction, the logical conclusion

parties' written agreement so as to give effect to the parties' mutual intention. *Comb*, 218 F.Supp.2d at 1171; *Ben-Zvi v. Edmar Co.,* 40 Cal.App.4th 468, 473, 47 Cal.Rptr.2d 12 (1995); *Floystrup v. City of Berkeley Rent Stabilization Bd.,* 219 Cal.App.3d 1309, 1317, 268 Cal.Rptr. 898 (1990).  If possible, the Court will determine the parties' intention solely from the language of the agreement itself. *Comb*, 218 F.Supp.2d at 1171; *Ben-Zvi,* 40 Cal.App.4th at 473, 47 Cal.Rptr.2d 12.  Extrinsic evidence is admissible, however, if the offered evidence is relevant to prove the meaning of ambiguous language and such interpretation is reasonable in light of all the facts, circumstances, and conditions surrounding the execution of the agreement. *Comb*, 218 F.Supp.2d at 1171; *Oakland-Alameda County Coliseum v. Oakland Raiders, Ltd.,* 197 Cal.App.3d 1049, 1057-58, 243 Cal.Rptr. 300 (1988).  "Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence." *Comb*, 218 F.Supp.2d at 1171 (quoting *Rosenthal v. Great W. Fin. Securities Corp.,* 14 Cal.4th 394, 413, 58 Cal.Rptr.2d 875, 926 P.2d 1061 (1996)).

Defendants have not provided this Court with **any** of the land auction contracts[4] the parties entered into.  Plaintiff did attach to his Complaint several of the confirmation e-mails he received regarding each separate land auction contract and also explained why the land auction bidding pages / contracts are unavailable to him.  See Complaint, ¶¶ 216-217.  The omission of any land auction contracts is not a simple oversight by the

---

is that he or she intended that law to apply to all disputes arising out of the transaction or relationship." *Washington Mutual v. Sup. Ct.*, 24 Cal.4th 906, 916 (Cal. 2001) citing *Nedloyd Lines B.V. v. Sup. Ct.*, 3 Cal.4th 459, 469 (Cal. 1992).  Accordingly, this Court should apply California law to determine whether there was, in fact, any agreement to arbitrate and, further, if so, whether the clause is enforceable.

[4] The relevant "contract documents" would be the bidding page, the winning bid confirmation page, email confirmation, and the payment page concluding the purchase and sale transaction.  Conversely, Plaintiff has provided samples of the documents available to him to this Court.

defendants. Indeed, they know that none of the land auction contracts include any reference whatsoever to either the TOS or any agreement to arbitrate any claim regarding the purchase and sale of land. All defendants have attempted to do is claim that plaintiff "agreed" to the TOS when he **accessed** his land following the completion of a land auction contract. Further, defendants cannot demonstrate that this actually occurred as defendants modified the TOS on several occasions. Declaration of Marc Bragg, ¶ 28. Sometimes the modifications to the TOS were required to be "accepted" when logging into the Second Life world, and sometimes not. Declaration of Marc Bragg, ¶ 30. In either event, the TOS <u>was not</u> required to be accepted or reviewed when the bidding process occurred, or when the payment was tendered by plaintiff and accepted by defendant in connection with any of the land auction contracts.[5] Declaration of Marc Bragg, generally.

Nowhere have defendants demonstrated (nor can they) that plaintiff agreed to arbitrate any land auction contracts and/or the purchase of any land. Indeed, the land auction process, which was made of bidding, offer, acceptance, and payment, does not occur "in-game" but instead occurs on a separate website ("auction page") provided by Defendant Linden. Declaration of Marc Bragg, ¶¶ 10, 15, 17. As set forth herein, there is absolutely no notice in any of the numerous land auction pages, including the page upon which a bid is submitted, or when payment is made and accepted by plaintiff, at the instant of contract formation, that Defendant Linden even attempted to incorporate the TOS or any agreement to arbitrate into the land auction contracts. Declaration of Marc Bragg, generally. In addition to the fact that there is absolutely no reference anywhere in

---

[5] Courts have rejected attempts to impose additional terms after the fact. *Step-Saver Data Systems, Inc. v. WYSE Technology*, 939 F.2d 91 (3d Cir. 1991).

any land auction contract to the TOS or any agreement to arbitrate, the TOS itself does not reference the land auctions, land ownership, land ownership rights, use, resale, or exclusivity. Declaration of Marc Bragg, ¶ 31. There is not a single section anywhere in the TOS that states in any way, shape or form anything to the effect that "by clicking agree you admit or agree that this TOS applies to the land auction contracts that you currently, previously, or later enter into, etc." Declaration of Marc Bragg, ¶ 31. The reality is that neither the TOS nor the arbitration provision is incorporated into the land auction contracts and to claim otherwise is disingenuous at best. Declaration of Marc Bragg, generally. This is not even a case where plaintiff was forced to "agree" to the TOS immediately before bidding or paying for the land. Declaration of Marc Bragg, ¶¶ 13, 14, 16, 17, 25, 26. Indeed, the reality is that defendants would never disclose any attempt to impose the burdensome arbitration clause in connection with the land auctions, for fear that to do so, would cause people to pause and/or not enter into the transactions. Declaration of Marc Bragg, ¶ 44.

Defendants' insincerity is strongly evidenced by their knowing failure to provide this Court with a single auction page that would demonstrate that plaintiff agreed to arbitrate any of his land auction claims. They have not because there was not such an agreement. Had defendants intended to include the TOS and/or any agreement to arbitrate in the land auction contracts and to obtain plaintiff's mutual assent to same, they were required to inform plaintiff and contract for same; instead, as with the thousands of other consumers that have purchased land from them, they have not done so. Declaration of Marc Bragg, generally. They chose not to and cannot now impose an agreement to arbitrate. Moreover, nowhere in the Affidavit of Linden's in-house counsel attached to

PITDMS 37878v.1

the Motion to Compel Arbitration does Mr. Yoon indicate that any of the land auction contracts contained an arbitration provision and/or attempted to incorporate any TOS. See, Affidavit of Ginsu Yoon, attached to Defendants' Brief in Support of Motion to Compel Arbitration.

Defendants' failure to produce any reference to the TOS and/or an agreement to arbitrate in connection with the land auction contracts, in light of their burden of proof, is fatal to its motion to compel arbitration. Simply put, there was never any agreement to arbitrate and, as such, defendants have failed to meet their burden in establishing that there was any agreement to do so. Although not plaintiff's burden to "disprove" any agreement to arbitrate in connection with the land auction contracts, plaintiff has attached true and correct representative pages from the land auctions of Defendant Linden. See, Exhibit "2." As the Court can readily see, there is no reference to the TOS and/or any agreement to arbitrate in the terms of the land auction contracts. *Id.*

**B.    IN ANY EVENT, THERE COULD NOT BE ANY AGREEMENT TO ARBITRATE DEFENDANTS' TORTIOUS AND FRAUDULENT CONDUCT.**

Further, plaintiff's complaint alleges specific acts of fraud and tortious conduct on the part of defendants yet defendants have not even attempted to explain in their motion how those false representations about the "ownership" of the land in Second Life has anything whatsoever to do with the TOS or the arbitration provision contained therein. Indeed, counsel for defendants recently admitted in connection with his opposition to the remand motion that this case "sounds in fraud". Defendants have not offered any rational or reasonable justification why they should receive special dispensation contrary to the law and be excused by this Court to arbitration where their misrepresentations and

concealment is the focal point of this case. Nor can defendants explain how the repeatedly false representations by Defendant Rosedale should be subjected to the TOS and/or its arbitration provision. Further, defendants' argument appears to presume that the TOS is the "agreement" which governs the claims in this case. As set forth above and herein, such is not the case given that the TOS does not even discuss the land contracts that are central to this dispute.

III.    **THE TOS ARBITRATION PROVISION IS BOTH PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE AND. THEREFORE, UNENFORCEABLE.**

The TOS arbitration provision is unenforceable for additional reasons that cannot be disputed which make it both procedurally and substantively unconscionable. Noticeably absent from the brief filed on behalf of defendants is any reference whatsoever to California's leading case on the unconscionability of arbitration provisions in a "user agreement". *Comb v. Paypal*, 218 F.Supp.2d 1165 (N.D.Cal. 2002). The omission is glaring given the *Comb* case was decided in the Federal Court in the Northern District of California in 2002, the "home district" of the defendants in this case.

Further, the *Comb* case was obviously available to Defendant Linden and its in-house counsel prior and subsequent to constructing its TOS and the arbitration clause contained therein. Defendants ignore this case and fail to so advise the Court because it guts the very essence of their TOS arbitration clause. The *Comb* case makes clear that defendants' intent, i.e., to use the arbitration provision to preclude lawsuits by imposing large economic burdens on harmed plaintiffs, is impermissible.

Not only is the arbitration provision both procedurally and substantively unconscionable, but, in addition, the heavy handed nature of the arbitration clause in this

case is simply further evidence of the defendants' scheme to make false representations about land ownership in Second Life then, when confronted with their false statements, attempt to invoke the arbitration provision in an effort to preclude claimants from bringing defendants' false statements to the light of day. As will be set forth herein, the arbitration clause is not enforceable as it is both procedurally and substantively unconscionable.

A.    **THE ARBITRATION AGREEMENT IS BOTH PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE AND IS ITSELF EVIDENCE OF DEFENDANTS' SCHEME TO DEPRIVE PLAINTIFF (AND OTHERS) OF BOTH THEIR MONEY AND THEIR DAY IN COURT.**

1.    General principles of unconscionability.

"Because unconscionability is a defense to contracts generally and does not single out arbitration agreements for special scrutiny, it is also a valid reason not to enforce an arbitration agreement under the FAA." *Acorn v. Household Int'l, Inc.*, 211 F.Supp. 1160, 1167-8 (N.D.Cal. 2002)(citing *Circuit City Stores v. Adams*, 279 F.3d 889, 895 (9th Cir. 2002). Unconscionability is a defense applicable to contracts generally and thus may be raised in defense to an arbitration provision. *Comb*, 218 F.Supp.2d at 1172; *Blake v. Ecker,* 93 Cal.App.4th 728, 741, 113 Cal.Rptr.2d 422 (2001). Unconscionability has both procedural and substantive components. *Comb*, 218 F.Supp.2d at 1172; *Id.* at 742, 113 Cal.Rptr.2d 422. The procedural component is satisfied by the existence of unequal bargaining positions and hidden terms common in the context of adhesion contracts. *Comb*, 218 F.Supp.2d at 1172. The substantive component is satisfied by overly harsh or one-sided results that "shock the conscience." *Id.* The two elements operate on a sliding scale such that the more significant one is, the less significant the other need be. *Comb*, 218 F.Supp.2d at 1172. A claim of unconscionability cannot be determined merely by

16

examining the face of the contract; there must be an inquiry into the circumstances under which the contract was executed, its purpose, and effect. *Id.*

    2.    <u>The arbitration clause is procedurally unconscionable.</u>

A contract or clause is procedurally unconscionable if it is a contract of adhesion. *Comb*, 218 F.Supp.2d at 1172; *Flores v. Transamerica HomeFirst, Inc.,* 93 Cal.App.4th 846, 853, 113 Cal.Rptr.2d 376 (2001). A contract of adhesion, in turn, is a "standardized contract, which, when imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Comb*, 218 F.Supp.2d at 1172; *Armendariz v. Foundation Health Psychcare Serv.,* 24 Cal.4th 83, 113, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000) (citations and internal quotation omitted).

In the instant case, the TOS is a contract of adhesion. Indeed, defendants have, in attempting to invoke the arbitration provision, argued that plaintiff had no choice but to accept the agreement. See, Affidavit of Ginsu Yoon, ¶¶ 6-9,[6] attached to Defendant's Brief. No consumer has the ability to negotiate the terms of the TOS by defendants' own admission. *Id*, See also Declaration of Marc Bragg, ¶ 29. Further, according to the TOS, terms are unilaterally imposed and then later unilaterally modified upon the consumer regardless of any investments or ownership rights of a consumer's assets "in-world" and without consideration. See TOS ¶ 1.2, attached to Defendant's Brief. Defendant Linden had the upper hand (and only hand) with regard to the language contained in the TOS demonstrating unequal bargaining positions. Declaration of Marc Bragg, ¶ 29.

---

[6] There is also no alternative source of virtual land for sale anywhere on the market where the consumer is stated to be the legitimate owner of such land. Indeed, that fact is the cornerstone of the false representations being made by defendants to consumers generally and is defendants way of distinguishing itself from the industry at large. Declaration of Marc Bragg, ¶ 45.

As set forth above and herein, to the extent defendants' attempt to claim that the TOS and arbitration clause were both, somehow, incorporated in the land auction contracts without any language to support that argument, the element of "surprise" requires the TOS and its arbitration provision be declared unenforceable.  See, e.g., *Gutierrez v. Autowest, Inc.*, 114 Cal.App.4[th] 77, 89-90 (2003)(particularly inconspicuous arbitration clause printed in 8 point font that consumer was not required to initial rendered clause procedurally unconscionable).  To the extent that defendants argue or suggest that the TOS / arbitration clause was a part of the land auction contracts, the undisputable fact is that the terms as they related to land were intentionally buried and hidden from plaintiff.  See confirmation e-mails attached as Exhibit "3."  As set forth above and herein, at no point was it set forth that the land auction contracts were incorporating the global TOS or the arbitration clause contained therein.  Declaration of Marc Bragg, ¶¶ 10-24.

Just as the TOS and/or arbitration clause are not incorporated into the land auction contract, neither are the prohibitive initiation and incidental costs of the International Chamber of Commerce ("ICC") as a forum for arbitration disclosed or provided anywhere by defendant; instead, the ICC requirement are intentionally concealed and not disclosed to defendants' customers.  Declaration of Marc Bragg ¶ 17.  Although the cost issue itself bears more on substantive unconscionability than on procedural unconscionability, the fact that the costs are hidden from consumers, including plaintiff, is direct evidence of procedural unconscionability in the form of "surprise."  *Gutierrez*, 114 Cal.App.4[th] at 89-90.  Moreover, not only did Defendant Linden conceal the prohibitive ICC costs by refusing to set them forth in any land

contract (or even the TOS), but despite the prevalence of hyper-linking throughout defendant's website to forums, articles, other websites providing information about Defendant Linden, Linden intentionally chose not to provide a single hyper-link to the ICC rules and/or costs, or to post them or include them in any written document or statement made by them. Declaration of Marc Bragg, ¶ 20. The more common forum chosen by other businesses is non-commercial AAA arbitration, readily accessible and far more economical for all parties concerned. Declaration of Marc Bragg, ¶ 43. The apparent difference in choice coupled with defendants' failure to disclose belies their fraudulent ingenuity. This is a case in which not only are the TOS and arbitration clause contracts / terms of adhesion, but it is also one in which the terms were intentionally hidden from plaintiff and other consumers in connection with the land auction contracts. Despite the obvious simplicity in hyper-linking or disclosing such terms <u>at any point in the land auction process</u>, Defendant Linden intentionally chose not to do so. The reality is that defendants did not want anyone to notice the exorbitant ICC arbitration clause costs for fear that consumers may not actually purchase the virtual land. Declaration of Marc Bragg, ¶¶ 32-38, 44.[7]

    3.    <u>The arbitration clause is substantively unconscionable</u>.

In addition to the fact that the arbitration clause is procedurally unconscionable, the arbitration clause is also substantively unconscionable. In deciding that an arbitration clause was substantively unconscionable, the *Comb* court looked to a variety of factors that made the agreement unconscionable, many of which are present and identical in this

---

[7] Indeed, the non-disclosure of the cost prohibitive ICC expenses is consistent with defendants refusal / failure to inform or disclose (should it be their position in this case), that a person buying virtual land from Defendant Linden does not actually own the virtual land (despite the repeated representations to the contrary).

case. Further, the *Comb* court reviewed the arbitration clause within the context of the

terms of the larger "user agreement" and significantly identified how those provisions,

like the provisions defendant's TOS in this case, were one-sided.  *Comb*, 218 F.Supp.2d

at 1175.  Given the remarkable similarities between the user agreement in *Comb* and the

TOS in this case, one could easily conclude that they were drafted by the same person.

For example, the following substantive terms of unconscionability appear in both the

agreement reviewed by the Court in *Comb*, and the TOS of Defendant Linden:

> the TOS proclaims a unilateral and unfettered right to alter the user agreement
> without notice, See, TOS attached to defendants' Motion, ¶ 1.2, bearing "on the
> question of whether the User Agreement is substantively unconscionable." *Comb*,
> 218 F.Supp.2d. at 1172 n. 9;[8]
>
> the TOS proclaims a unilateral and unfettered right to freeze customer accounts
> and money that it alone determined were subject to a dispute without notice; See,
> TOS, ¶ 7.1; *Comb*, 218 F.Supp.2d at 1174;
>
> the TOS imposes upon plaintiff the need to obtain provisional relief in order to
> unfreeze his account,[9] the cost of doing so which is prohibitive in relation to the
> amount in dispute, See generally, TOS, ¶¶ 7.1, 13, *Comb*, 218 F.Supp.2d at 1175;
>
> the ICC fees and costs are prohibitive and exceed the typical amount that would
> be in dispute, Declaration of Marc Bragg, ¶¶ 32-38; *Comb*, 218 F.Supp.2d at
> 1176;
>
> despite cheaper alternative arbitration forums being available to Defendant
> Linden to "mitigate any unfairness", they intentionally chose a forum that is more
> expensive (if not the most expensive), including the option of having three
> arbitrators as opposed to a single arbitrator, See, TOS, ¶ 13; *Comb*, 218 F.Supp.2d
> at 1177 n. 16;
>
> the TOS and arbitration clause claims venue in Defendant Linden's "backyard" in
> the second most expensive city in the United States and over 2,000 miles away

---

[8] Even a cursory review of the TOS will reveal numerous unconscionable provisions including penalty /
forfeiture clause (7.1), disclaimers of warranties (9.1), limitations of liability (10) and even (perhaps most
absurd) an indemnity clause (11), which purports to cause Plaintiff to pay the defendants for him obtaining
a verdict against them. See, Exhibit 1 to Defendants' Motion to Compel Arbitration.

[9] In this case, the Court should also note that the TOS provides unconditionally, that a user may cancel his
account at any time.  Plaintiff did attempt to cancel some of his accounts and to have his personal financial
information removed; however, Defendant refused to do so.  Declaration of Marc Bragg, ¶ 47.

from plaintiff's residence, Declaration of Marc Bragg, ¶ 31, *Comb*, 218 F.Supp.2d at 1177.

Viewing the arbitration clause in the context of the TOS itself (and along with defendants' conduct), the purpose of the arbitration clause is not intended by defendants to provide a true forum for the resolution of disputes. Declaration of Marc Bragg, ¶ 32. As already stated, in this case plaintiff had approximately $8,000 taken wrongfully from him through defendants' false statements and scheme. Declaration of Marc Bragg, ¶ 33.[10] Defendant Linden took plaintiff's virtual land owned by him and froze his $2,000 U.S. Currency unilaterally. Declaration of Marc Bragg, ¶ 34. Now, confronted with plaintiff's lawsuit, defendants seek to not only transfer the case to the second most expensive city in the United States, but also to compel arbitration pursuant to the rules of the International Chamber of Commerce ("ICC"). Declaration of Marc Bragg, ¶ 35. The initial filing fee for such arbitration appears to be $10,000 in addition to other fees and costs of the arbitrators. Declaration of Marc Bragg, ¶ 36.[11]

The reality is, given the above; the arbitration clause is not truly an effort by Defendant Linden to resolve disputes. Quite frankly, it is simply further evidence of defendants' attempts to "get away with" their false statements to plaintiff and other consumers by making the costs for a consumer to protect his / her rights far more expensive than the monetary damages at issue. Declaration of Marc Bragg, ¶¶ 32-38. Further, as set forth previously, the fact that defendants necessarily must have been aware of the *Comb* decision (and the fact that it is not cited in their brief to this court) is

---

[10] This Court should also note that Plaintiff's transactions are larger than the typical transactions in Second Life. The typical transaction, including land transactions, are usually less than $2.00 U.S. (or 500 Linden dollars). Thus, the Court should not only look to Plaintiff's claim itself, but also the larger reality that amounts in controversy would be and are typically very small . See Exhibits 4-1 and 4-2.

[11] Even if defendants were to argue that, ultimately, some or all of the expenses could be recovered from defendants as ordered by the arbitrators, when determining unconscionability, courts focus on the costs associated with having to initiate the arbitration process in the first place. *Gutierrez*, 114 Cal.App.4th at 90.

particularly disturbing and illustrative of their intent to insulate themselves from liability for their false statements. As the *Comb* court reasoned with regard to Paypal's similar user agreement, "Paypal appears to be attempting to insulate itself contractually from any meaningful challenge to its alleged practices." *Comb*, 218 F.Supp.2d at 1176 (emphasis added). Further, as the *Gutierrez* court reasoned, "[t]o state it simply: it is substantively unconscionable to require a consumer to give up the right to utilize the judicial system, while imposing arbitral forum fees that are prohibitively high." *Gutierrez*, 114 Cal.App.4th at 90.[12] As previously pointed out, even a cursory review of the TOS reveals Defendant Linden's intent with regard to insulating itself from liability and any challenges to its practices.

For example, if read broadly, the indemnity provision contained in the TOS would appear to cause plaintiff to have to re-pay the defendants for any judgment he would receive against them for any claims relating to plaintiff's "use of the service." See, TOS, ¶ 11. Such language is absurd, unconscionable and demonstrative of defendants' scheme. Moreover, although defendants' argue that it is unjust for them to litigate in multiple forums, the reality is that not only did defendants intentionally chose to accept money and fees from customers all around the United States, but they also could have simply chosen a forum (or possibly even created a virtual forum) for the resolution of disputes that would not have been unconscionable and draconian. The fact that defendants did not do so is just further evidence of the intent behind their fraudulent scheme.

---

[12] The *Gutierrez* court noted that an arbitration clause can be substantively unconscionable where the plaintiff cannot afford to pay the fees and/or where the fees are excessive costs relative to the recovery sought. *Id.* at 90.

PITDMS 37878v.1

4.    <u>The venue selection clause contained inside the arbitration clause is also substantively unconscionable and further evidence of defendants' attempts to knowingly insulate themselves from liability for tortuous conduct.</u>

Although clearly part of the larger substantive unconscionability issue, the venue selection "clause" contained in the arbitration "clause" warrants its own brief discussion. The clear authority in California has strictly cautioned against the type of provision provided for in the TOS.  See, *Comb*, 218 F.Supp.2d at 1177; *Aral v. Earthlink, Inc.*, 134 Cal.App.4[th] 544 (Cal.App. 2005).  The *Comb* court could not have been any clearer in reasoning that "Paypal cites no California authority holding that it is reasonable for individual consumers throughout the country to travel to one locale to arbitrate claims involving such minimal sums.  Limiting venue to PayPal's backyard appears to be yet one more means by which the arbitration clause serves to shield PayPal from liability instead of providing a neutral forum in which to arbitrate disputes." *Id.* at 1177.

Moreover, as previously pointed out, not only do defendants fail to cite the *Comb* case, they also inexplicably fail to cite the other leading authority in California with regard to unconscionable venue selection clauses. *Aral v. Earthlink, Inc.*, 134 Cal.App.4[th] 544 (Cal.App. 2005).  The *Aral* court held that "a forum selection clause that requires a consumer to travel 2,000 miles to recover a small sum is not reasonable . . . ." *Id.* at 561. As the *Aral* court further reasoned, "[i]f it is clear that 'trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court,' it would be unjust, [and] unreasonable' to enforce the forum selection provision." *Aral*, 134 Cal.App.4[th] at 561 (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18, 92 S.Ct. 1907 (1972).

The *Comb* and *Aral* courts do not stand alone.   Numerous other courts have rejected as unconscionable, arbitration clauses such as the instant one with a similar venue limitation. *See Bolter v. Harris Research, Inc.*, 87 Cal.App.4th 900, 908-909 (Cal.App. 2001) *rev. den.* 2001 Cal. LEXIS 4031 (2001)(striking a provision limiting arbitral venue to Salt Lake City, Utah as "unduly oppressive" in requiring "franchisees wishing to resolve any dispute to close down their shops, pay for airfare and accommodations in Utah, and absorb the increased costs associated in having counsel familiar with Utah law" and striking the provision); See also *Pined v. Premium Tobacco Stores, Inc.*, 85 Cal.App.4th 774, 781 (Cal.App. 2000)(terms requiring arbitration in Oakland, California held unconscionable); *Bailey v. Ameriquest Mortg. Co.*, 2002 U.S. Dist. LEXIS 1343, *16 (D. Minn. 2002) (holding a venue clause requiring arbitration in California unconscionable, stating that a "venue provision is a critical right for plaintiffs desiring to pursue a [Fair Labor Standards Act] claim" which provides that such suits "might be maintained in any court of competent jurisdiction."); *Philyaw v. Platinum Enters.*, 2001 Va. Cir. LEXIS 10 (Va. Cir. Ct. Jan. 9, 2001) ("Common sense dictates that retail purchasers such as the Philyaws could not afford the time and expense to go to Los Angeles to arbitrate a claim arising from a used car sale in Virginia.").

In this case, in addition to the fact that plaintiff has already been deprived of $5,000 dollars of his own money, and would incur an additional $13,540 (ultra-conservative estimate) in costs if this case is transferred to arbitration.   Declaration of Marc Bragg, ¶ 37.

As is readily apparent to this Court, even with absurdly calculating costs causing people to stay in a two star Nob Hill Motor Inn and eating McDonalds for both lunch and

dinner (assuming the arbitrators would agree to eat at McDonalds), the estimated costs (excluding the filing fees and advances), are nearly equivalent to plaintiff's money that defendants still possess.    The reality is that the ultra-conservative and absurd listing of costs above is not realistic.    Declaration of Marc Bragg, ¶ 39.    Realistically, the incidental costs associated with litigating the case in San Francisco, CA pursuant to the ICC rules would exceed the amount in controversy, and would exceed $5,000, the amount already wrongfully deprived from plaintiff.    Declaration of Marc Bragg, ¶ 40.    Indeed, factoring in the up-front filing costs and the incidentals demonstrates that the arbitration and venue clause is simply defendants' attempt of insulating itself from liability as plaintiff will have to abandon his claims, as opposed to advancing or potentially incurring costs equivalent to the down payment on a $135,000 house.    Declaration of Marc Bragg, ¶ 41.

The TOS arbitration and venue selection clause is substantively unconscionable and unenforceable attempt to deprive plaintiff and others of justice.[13]    See also, *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 90 (2000)(the imposition of prohibitive costs in an arbitral forum can render an agreement unenforceable); *Ting v. AT&T*, 182 F.Supp.2d 902, 916-7 (N.D. Cal. 2002)(discussing AAA Commercial Arbitration Rules and holding arbitration clause to be unconscionable under California law); *Popvich v. McDonald's Co.*, 189 F.Supp.2d 772, 778 (N.D.Ill. 2002)(finding that pursuing arbitration under Commercial rules would be "staggering'" and the arbitration provision therefore unenforceable due to prohibitive cost); *Camacho v. Holiday Homes*, 167

---

[13] Defendant suggests to this Court that because Plaintiff travels to California such costs would not be burdensome. Such an argument is simply false. When Plaintiff does travel to California, he travels to see his mother in San Diego and stays with her. Further, contrary to defendants' false statements in their brief to this Court, Plaintiff does not own land in California (other than the virtual land that has been confiscated from him and that resides on the Linden servers). Declaration of Marc Bragg, ¶ 42. Although Plaintiff does not wish to make light of this serious situation, defendants cannot be suggesting that everyone involved in such an ICC arbitration stay at Plaintiff's mother's house and hold the arbitration in her living room in San Diego, California.

F.Supp.2d 892 (W.D.Va. 2001)(finding arbitral forum financially inaccessible because plaintiff's "limited income afford[ed] no margin for expense of the magnitude required to pay an arbitrator"); *Spinetti v. Service Co., Int'l.*, 2001 U.S. Dist. LEXIS 23959 (W.D.Pa. 2001)(finding that plaintiff would have to pay an initially filing fee of $500, an additional fee of $2,750, a case filing fee of $1,000, a per day hearing charge of $150, arbitrator fees of $250, and considered that plaintiff had been laid off from her $65,000 a year job and was earning $300, and finding the arbitration provision unenforceable due to prohibitive costs).

**IV.    PLAINTIFF'S CLAIM FOR EQUITABLE RELIEF IS EXPRESSLY EXCLUDED BY DEFENDANT FROM BEING SUBJECTED TO THE UNCONSCIONABLE ARBITRATION PROVISION.**

In any event, to the extent that this Court would: (1) find that there was an agreement to arbitration and (2) enforce the TOS' unconscionable arbitration provision, the arbitration provision itself does not apply by its own terms to injunctive / equitable relief. Indeed, the provision states (in a section not cited by the defendants in their brief): **"Notwithstanding the foregoing, either party may apply to any court of competent jurisdiction for injunctive relief . . . ."** (emphasis added). Even if the TOS had not included such language, claims for equitable / injunctive relief pursuant to consumer protection laws are in-arbitrable. See, e.g., *Klussman v. Cross Country Bank*, 134 Cal.App.4th 1283, 1290 (Cal.App. 2005); *Cruz v. PacifiCare Health Systems, Inc.*, 30 Cal.4th 303, 315 (Cal. 2003). As such, the injunctive / equitable relief claims would have to be severed and proceed before this Court as this is "any court of competent jurisdiction," there being no language in the exception to the contrary.[14]

---

[14] Defendants' venue argument is gutted given that the language of their own TOS permits Plaintiff to bring his equitable / injunctive relief claims properly in this Court.

PITDMS 37878v.1

## V.     <u>CONCLUSION</u>

For the foregoing reasons, plaintiff respectfully requests that the Court deny Defendants' Motion to Compel Arbitration as a matter of law and retain jurisdiction of the entirety of this case.

Respectfully submitted,

Date:  January 16, 2006

WHITE AND WILLIAMS, LLP


By <u>CB 1429</u>
   Jason A. Archinaco, Esq.
   PA ID 76691
   Christopher Ballod, Esq.
   PA ID 89462
   The Frick Building, Suite 1001
   437 Grant Street
   Pittsburgh, PA 15219
   (412) 566-3520
   *Counsel for Plaintiff*

PITDMS 37878v.1