

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2000 WL 772818 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Lautman v. Loewen Group, Inc.E.D.Pa.,2000.Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
Martin R. LAUTMAN, Plaintiff,
v.
The LOEWEN GROUP, INC., et al., Defendants.
**No. CIV. A. 99-75.**

June 15, 2000.

*MEMORANDUM AND ORDER*
YOHN.
**\*1** The plaintiff, Martin R. Lautman, brought this diversity action against the Loewen Group Inc. (the "Loewen Group"), Raymond L. Loewen, Robert L. Lundgren, Timothy R. Hogenkamp, Michael G. Weedon, and Paul Wagler alleging breach of contract and violation of the Pennsylvania Wage Payment and Collection Law ("WPCL"). Currently pending before the court is the motion to dismiss the plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), (b)(5) and (b)(6), which was filed by Raymond L. Loewen, Robert L. Lundgren, Timothy R. Hogenkamp, Michael G. Weedon, and Paul Wagler (collectively the " individual defendants"). In their motion to dismiss, the individual defendants argue that: (1) the summons and complaint were never properly served upon Loewen, Weedon, or Wagler; (2) the court does not have personal jurisdiction over the individual defendants; and (3) the plaintiff's complaint fails to state a claim against the individual defendants for a violation of the WPCL. I will address each of these arguments in turn.

FACTUAL BACKGROUND

The plaintiff, Lautman, is the sole owner of Marketing Channels, Inc. ("M.C.I."), a marketing consulting company. *See* Compl. ¶ 13. On December 23, 1996, M.C.I. entered into a two-year marketing consulting agreement with the Loewen Group. *See id.* at ¶ 14. Pursuant to this agreement, the Loewen Group hired M.C.I. to conduct market research and to develop business opportunities for the Loewen Group. *See id.* The consulting agreement provided that the Loewen Group would compensate M.C.I. in the amount of $400,000 per year, plus travel and expenses. *See id.* at ¶ 15. The agreement also provided that M.C.I. would receive 100,000 ten-year stock options at an exercise price to be determined by the Loewen Group according to its stock option plan. *See id.* at ¶ 15. Specifically, the consulting agreement provided that:
If on October 31, 1998 M.C.I. has not exercised vested options awarded hereunder, and the average closing price per share of The Loewen Group, Inc. stock for the five consecutive trading days immediately preceding October 31, 1998 is below the Exercise Price of the options, then Loewen agrees to pay M.C.I. an additional amount of cash, so that the value of the unexercised vested options, together with the additional amount of cash, is equal to the value of the unexercised vested options at the Exercise Price.

*Id.* at ¶ 16. On September 14, 1997, Loewen Group International, a subsidiary of the Loewen Group, entered into an oral agreement to employ Lautman as a Marketing Assistant to the Executive Vice President of Operations. *See id.* at ¶ 17. In executing the agreement, Lautman and Loewen Group International agreed that part of Lautman's compensation would be derived from a stock option agreement to be entered into between the plaintiff and the Loewen Group. *See id.* at ¶ 18.

On May 15, 1997, Lautman entered into a stock option agreement with the Loewen Group. *See id.* at 19. The stock option agreement provided that 50,000 shares of capital stock of the Loewen Group, at an exercise price of $30.375 per share, would become exercisable by Lautman in installments over an 18 month period. *See id.* at ¶ 21. Section 19(a) of the stock option agreement provided as

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



EXHIBIT
6

Not Reported in F.Supp.2d                                                                                                  Page 2
Not Reported in F.Supp.2d, 2000 WL 772818 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

follows:

*2 If on October 31, 1998, [Lautman] has not exercised vested options awarded hereunder, and the average closing price per share of the Shares on the New York Stock Exchange for the five consecutive trading days immediately preceding October 31, 1998 is below the exercise price of the options, then the Company agrees to pay [Lautman] an additional amount of cash, so that the value of the unexercised vested options, together with the additional amount of cash, is equal to the value of the unexercised vested options at the exercise price.

*Id.* at ¶ 21. According to Lautman, section 19(a) of the stock option agreement provided the basis for the calculation of the "net catch-up payment" pursuant to which Lautman was "entitled to a cash payment equal to the number of unexercised vested options multiplied by the difference between the exercise price of his unexercised vested options and the average closing price per share of Loewen Group on the New York Stock Exchange for the five consecutive days immediately preceding October 31, 1998." *Id.* at ¶ 22.

The consulting agreement expired on October 31, 1998, and was not renewed by the Loewen Group. *See id.* at ¶ 23. On November 3, 1998, Lautman informed the Loewen Group that he was entitled to a "net catch-up payment of $1,073,750" pursuant to the stock option agreement. *See id.* at ¶ 24. Lautman then sent the Loewen Group an invoice for $1,073,750. *See id.* at ¶ 25. The defendants have not honored Lautman's request for payment and have maintained that he is not entitled to such a cash payment. *See id*.

Lautman filed a two-count complaint against the Loewen Group, Raymond L. Loewen, Robert L. Lundgren, Timothy R. Hogenkamp, Michael G. Weedon, and Paul Wagler. The first count of the complaint, which alleges breach of contract for stock options, is brought only against the Loewen Group. *See* Compl. ¶¶ 29-32. The second count of the complaint alleges that all of the defendants violated Pennsylvania's Wage Payment and Collection Law.

The individual defendants have brought the pending motion to dismiss to challenge the plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b). Specifically, the individual defendants argue that the court should dismiss the plaintiff's complaint because: (1) the court lacks personal jurisdiction over all of the individual defendants; (2) three of the individual defendants were not properly served with the complaint and summons; and (3) count two (for a violation of the WPCL) fails to state a claim upon which relief can be granted.

STANDARD OF REVIEW

Once a defendant has raised a jurisdictional defense, the burden shifts to the plaintiff to prove that the relevant jurisdictional requirements are met. *See Mellon Bank (East) PSFS v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992); *Gehling v. St. George's Sch. of Medicine, Ltd.,* 773 F.2d 539, 542 (3d Cir.1985). The plaintiff must support this burden through "sworn affidavits or other competent evidence." *North Penn Gas Co. v. Corning Natural Gas Corp.,* 897 F.2d 687, 689 (3d Cir.), *cert. denied,* 498 U.S. 847 (1990) (citations omitted); *Royal Gist-Brocades N.V. v. Sierra Prods. Ltd.,* No. 97-1147, 1997 WL 792905, at *1 (E.D.Pa. Dec. 22, 1997). Where the complaint and affidavits are relied upon to satisfy its burden, the plaintiff succeeds by making a prima facie showing that jurisdiction exists. *See Friedman v. Israel Labour Party,* 957 F.Supp. 701, 706 (E.D.Pa.1997). " Factual discrepancies created by affidavits are generally resolved in favor of the non-moving party. " *Id.; see also Carterat Savings Bank v. Shushan,* 954 F.2d 141, 142 n. 1 (3d Cir.), *cert. denied,* 506 U .S. 817 (1992).

*3 As for the defendant's motion to dismiss pursuant to Rule 12(b)(6), the purpose of such a motion is to test the legal sufficiency of the complaint. *See Sturm v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987). In deciding a motion to dismiss for failure to state a claim, the court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild,*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 772818 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

*O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994) (citing *Rocks v. Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989)). At this stage of the litigation, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). In deciding a motion to dismiss, a district court also may consider exhibits attached to the complaint and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied,* 510 U.S. 1042 (1994). Moreover, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.* (citations omitted).

## DISCUSSION

In their motion to dismiss, the individual defendants argue that the court lacks personal jurisdiction, service was improper, and the complaint fails to state a claim upon which relief can be granted. Because I conclude that the court does not have personal jurisdiction over some of the individual defendants, I will address that issue first and then discuss the other arguments made by the individual defendants.

### a. *Lack of Personal Jurisdiction*

Whether personal jurisdiction over an out-of-state defendant is proper requires a two-part inquiry. First, a district court sitting in diversity must determine whether the long-arm statute of the forum state would permit the courts of the forum state to exercise jurisdiction over the defendant. *See* Fed.R.Civ.P. 4(e)(1); *Imo Indus. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir.1998). Second, a district court must ask whether asserting personal jurisdiction would be consistent with the dictates of the due process clause. *See Imo Indus.,* 155 F.3d at 259. In Pennsylvania, the state long-arm statute is coextensive with the limit of due process. *See* 42 Pa.C.S.A. § 5322(B) (Purdon's 1981 & 1999 Supp.) (extending state court jurisdiction over non-residents to the "fullest extent allowed under the Constitution of the United States"); *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.,* 75 F.3d 147, 150 (3d Cir.1995). Consequently, the essential question is whether asserting personal jurisdiction over the defendant would comport with the requirements of due process.

The due process inquiry focuses on the relationship between the defendant's conduct, the forum state, and the litigation. *See Shaffer v. Heitner,* 433 U.S. 186, 204 (1977); *Imo Indus.,* 155 F.3d at 259. To satisfy the dictates of the due process clause, the defendant must have purposefully directed conduct toward the forum state or must have purposefully availed himself of the protection of the laws of the forum state. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985); *Imo Indus.,* 155 F.3d at 259.

*4 Case law development over time has delineated two independent bases of personal jurisdiction. A defendant is subject to the general jurisdiction of the court regardless of where the events occurred giving rise to the action when the defendant's contacts with the forum state are continuous and systematic. *See Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 414 n. 9 & 416 (1984); *Imo Indus.,* 155 F.3d at 259 n. 2. In contrast, a defendant is subject to the specific jurisdiction of the court when the events giving rise to the action are related to the forum state and the defendant has the necessary minimum contacts with the forum state. *See Helicopteros Nacionales de Columbia,* 466 U.S. at 414 n. 8; *Imo Indus.,* 155 F.3d at 259.

In this case, the plaintiff argues that the court has specific jurisdiction over the individual defendants.[FN1] *See* Memorandum of Plaintiff, Martin R. Lautman, in Opposition to the Motion to Dismiss of Defendants Raymond L. Loewen, Robert L. Lundgren, Timothy R. Hogenkamp, Michael G. Weedon and Paul Wagler ("Pl.'s Opp.") at 14 (stating that "[i]n this case, the allegations against the Individual Defendants arise out of their forum-related activities and, therefore, specific jurisdictional principles apply to this analysis").

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 4
Not Reported in F.Supp.2d, 2000 WL 772818 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

The plaintiff claims that the court may exercise specific jurisdiction over the individual defendants on the following three grounds: (1) pursuant to 42 Pa.C.S.A. § 5322(a)(3) [FN2] because the individual defendants' actions harmed the plaintiff in Pennsylvania; (2) pursuant to 42 Pa.C.S.A. § 5322(a)(4) [FN3] because the individual defendants committed an act or omission outside of Pennsylvania that caused harm or tortious injury inside Pennsylvania; and (3) pursuant to 42 Pa.C.S.A. § 5322(a)(10) [FN4] because the individual defendants violated a Pennsylvania statute, the WPCL, within Pennsylvania. *See* Pl.'s Opp. at 14.

FN1. The plaintiff does not contend that the court has general jurisdiction over the individual defendants. *See* Pl.'s Opp. at 14.

FN2. 42 Pa.C.S.A. § 5322(a)(3) provides that a "tribunal of this Commonwealth may exercise personal jurisdiction over a person ... who acts directly or by an agent, as to a cause of action or other matter arising from such person ... [c]ausing harm or tortious injury by an act or omission in this Commonwealth."

FN3. 42 Pa.C.S.A. § 5322(a)(4) provides that a "tribunal of this Commonwealth may exercise personal jurisdiction over a person ... who acts directly or by an agent, as to a cause of action or other matter arising from such person ... [c]ausing harm or tortious injury by an act or omission outside this Commonwealth."

FN4. 42 Pa.C.S.A. § 5322(a)(10) provides that a "tribunal of this Commonwealth may exercise personal jurisdiction over a person ... who acts directly or by an agent, as to a cause of action or other matter arising from such person ... [c]ommitting any violation within the jurisdiction of this Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit."

Specific jurisdiction is proper under constitutional due process standards where two showings are made. First, the plaintiff must demonstrate that the defendant has the requisite minimum contacts with the forum state. *See Burger King Corp.,* 471 U.S. at 474; *Imo Indus.,* 155 F.3d at 259. These contacts must be such that the defendant's conduct in the forum state demonstrates the purposeful direction or availment which underlies the personal jurisdiction inquiry. *See Burger King Corp.,* 471 U.S. at 472; *Imo Indus.* 155 F.3d at 259. Where the conduct of a defendant is such that he reasonably should have foreseen being haled into court in the forum state, the necessary minimum contacts have been shown. *See World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). If the necessary minimum contacts do exist, then courts inquire whether the exercise of personal jurisdiction would comport with traditional notions of "fair play and substantial justice." *See International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945); *Burger King Corp.,* 471 U.S. at 485-86; *Imo Indus.,* 155 F.3d at 259.

*5 Whether a defendant has sufficient minimum contacts with a forum state is a fact-based inquiry which will vary from case to case. *See Burger King Corp.,* 471 U.S. at 485. Courts need not determine the best or most logical place for personal jurisdiction. *See Strick Corp. v. A.J.F. Whse. Distribs., Inc.,* 532 F.Supp. 951, 960 (E.D.Pa.1982). Rather, courts are to ensure that consistent with the requirements of due process, a defendant is subjected to personal jurisdiction only where the defendant " 'purposefully directed' his activities at the residents of the forum ." *See Burger King Corp.,* 471 U.S. at 472; *Imo Indus.,* 155 F.3d at 259; *Vetrotex Certainteed Corp.,* 75 F.3d at 150.

The individual defendants argue that the plaintiff has failed to allege that "any of the individual defendants had any specific contacts with Pennsylvania in their corporate or individual capacities." *See* Memorandum of Law in Support of Motion to Dismiss of Defendants Raymond L. Loewen, Robert L. Lundgren, Timothy R. Hogenkamp, Michael G. Weedon and Paul Wagler (

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 5
Not Reported in F.Supp.2d, 2000 WL 772818 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

"Def.'s Memo.") at 12. Furthermore, the individual defendants contend that their corporate activities are not a sufficient basis for the court to exercise personal jurisdiction over them in their individual capacity. *See id.* The individual defendants argue that, pursuant to the "corporate shield" doctrine, the "contacts of the defendant as an agent of a corporation are not attributable to him to establish personal jurisdiction." *See id.* (citing *J.C. Snavely & Sons, Inc. v. Springland Assoc., Inc.,* 600 A.2d 972 (Pa.Super.Ct.1991); *Babish v. Karsnak,* 528 A.2d 649 (Pa.Super.Ct .1987)).

Thus, it is necessary to examine the extent of protection afforded by the "corporate shield" doctrine under Pennsylvania law. The corporate shield doctrine protects officers and directors by limiting the extent to which their actions performed in the corporate capacity may be used to exercise jurisdiction over them individually. *See Maleski v. DP Realty Trust,* 653 A.2d 54, 62-63 (Pa.Commw.Ct.1995); *Sneberger v. BTI Americas, Inc.,* No. 98-932, 1998 WL 826992, at *3 (E.D.Pa. Nov. 30, 1998); *PSC Professional Servs. Group, Inc. v. American Digital Sys., Inc.,* 555 F.Supp. 788, 793 (E.D.Pa.1983). The rationale for this doctrine is the concern over forcing officers and directors to choose either to "disassociate themselves from the corporation or defend the propriety of their conduct in a distant forum." *PSC Professional Servs. Group,* 555 F.Supp. at 793.

Courts in this district, however, have held that the protections of the corporate shield doctrine are not absolute. *See Fyk v. Roth,* No. 94-3826, 1995 WL 57487, at *2 (E.D.Pa. Feb. 10, 1995) (Rendell, J.). [FN5] Accordingly, courts have refused to permit a corporate officer to invoke the shield when the officer was involved in tortious conduct for which he or she could be held personally liable. *See Elbeco Inc. v. Estrella de Plato, Corp.,* 989 F.Supp. 669, 676 (E.D.Pa.1997); *Rittenhouse & Lee v. Dollars & Sense, Inc .,* No. 8305996, 1987 WL 9665, at *4 n. 6 (E.D. Pa. April 15, 1987) (Scirica, J.) (holding that one of the factors a court should consider in the jurisdictional inquiry is the "extent and nature of [the] corporate officer's personal participation in the tortious conduct"). Courts have also invoked a second exception to the doctrine when a corporate officer has been charged with violating a statutory scheme that provides for personal, as well as corporate, liability. *See Huth v. Hillsboro Ins. Mgmt.* 72 F.Supp.2d 506, 511 (E.D.Pa.1999) (holding that the corporate contacts of a corporate officer could be considered for jurisdictional purposes because the statute the plaintiff was suing under allowed the corporate officer to be held personally liable for statutory violations) (citing *National Precast Crypt Co. v. Dy-Core of Pa.,* 785 F.Supp. 1186, 1191 (W.D.Pa.1992)); *see also Rototherm Corp. v. Penn Linen & Uniform Serv., Inc.,* No. 96-6544, 1997 WL 419627, at *8 n. 10 (E.D.Pa. July 3, 1997) (noting that the only exceptions to the corporate shield doctrine are "(1) where the agent commits a tort in the forum state in his corporate capacity [;] or (2) where the agent is charged with violating a statutory scheme that provides for personal as well as corporate liability"). In cases involving these exceptions, the courts look to the following three factors to determine whether it is proper to consider the defendant's corporate contacts in the jurisdictional inquiry: (1) the defendant's "role in the corporate structure"; (2) "the nature and quality of the [defendant's] forum contacts"; and (3) "the extent and nature of the defendant's personal participation in the [allegedly wrongful] conduct." *See Rittenhouse & Lee,* 1987 WL 9665, at *4 n. 6 (setting forth the three factors to consider in determining whether corporate contacts are relevant to the jurisdictional inquiry); *see also Elbeco Inc. v. Estrella de Plato, Corp.,* 989 F.Supp. 669, 676 (E.D.Pa.1997) (applying the three factors from *Rittenhouse & Lee* in determining whether to consider the defendant's corporate contacts with the forum); *Royal Gist-Brocades N.V. v. Sierra Prods. Ltd.,* No. 97-1147, 1997 WL 792905, at *6 (E.D.Pa. Dec. 22, 1997) (same); *Beistle Co. v. Party U.S.A.,* 914 F.Supp. 92, 96 (M.D.Pa.1996) (same); *Fyk,* 1995 WL 57487, at *2 (same).

FN5. For a discussion of the evolution of the corporate shield doctrine in this District, see *Neyer, Tiseo & Hindo, Ltd. v. Russell,* No. 92-2983, 1993 WL 52552, at *4 (E.D.Pa. Feb. 25, 1993).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 6
Not Reported in F.Supp.2d, 2000 WL 772818 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

*6 In this case, the plaintiff alleges that the individual defendants violated a statutory scheme (the WPCL) for which they could be held personally liable.[FN6] Thus, this case falls within the second exception to the corporate shield doctrine.[FN7] I will therefore examine the factors set forth in *Rittenhouse & Lee* with regard to each individual defendant. In doing so, I must consider: (1) the individual defendant's role in the corporate structure; (2) the nature and quality of the defendant's contacts with Pennsylvania; and (3) the extent and nature of the defendant's personal participation in the wrongful conduct.

> FN6. The plaintiff asserts only one claim against the individual defendants, for an alleged violation of the Pennsylvania WPCL. *See* Pl.'s Compl. ¶¶ 33-39 (alleging only one count, for a violation of the WPCL, against the individual defendants). Moreover, the individual defendants may be held personally liable for violations of the WPCL. *See* 43 P.S. §§ 260.2a-260.3.
>
> FN7. In their motion to dismiss, the individual defendants argue that violations of the WPCL "do not amount to tortious conduct and do not justify the assertion of personal jurisdiction over non-resident corporate officers where the officer had no personal contacts with the forum." *See* Def.'s Memo. at 13-14 (citing *Bowers v. NETI Tech., Inc.,* 690 F.Supp. 349 (E.D.Pa.1988) and *Central Pennsylvania Teamsters Pension Fund v. Burten,* 634 F.Supp. 128, 132 (E.D.Pa.1986)). The individual defendants are correct that some courts in this district have concluded that a violation of the WPCL does not amount to tortious conduct and thus, does not trigger the tortious conduct exception to the corporate shield doctrine. *See, e.g., Schommer v. Eldridge,* No. 92-3272, 1992 WL 357557, at *2 (E.D.Pa. Nov. 30, 1992) (holding that personal jurisdiction over an individual defendant who allegedly violated WPCL was not proper because a WPCL violation does not amount to tortious conduct, but failing to consider whether such a violation may be a statutory violation for which an officer may be held personally liable). I need not decide whether a violation of the WPCL amounts to tortious conduct, however, because the plaintiff has alleged that the individual defendants violated a statutory scheme (the WPCL) for which the officers could be held personally liable. *See Huth,* 72 F.Supp.2d at 511 (recognizing an exception to the corporate shield doctrine when the corporate officer may be held personally liable under a statutory scheme). Therefore, because this case fits within the second exception to the corporate shield doctrine, I need not decide whether it also fits within the first exception (the tortious conduct exception).

Pursuant to the first prong of the *Rittenhouse & Lee* test, I must examine the officer's role in the corporate structure. In this case, all of the individual defendants were high-ranking corporate officials with a significant level of authority in the corporation.[FN8] Therefore, the first prong of the *Rittenhouse & Lee* test is satisfied as to all of the individual defendants. Thus, it is necessary to analyze the second and third prongs of the *Rittenhouse & Lee* test-that is, the nature and quality of the officer's contacts with Pennsylvania and the personal participation of each individual officer with the allegedly wrongful conduct. I will examine the allegations set forth by the plaintiff as to the forum contacts of each individual defendant.

> FN8. The plaintiff alleges that: (1) Loewen founded the Loewen Group, acted as the corporation's President and Chairman of the Board, and was the corporation's largest shareholder from 1995 through most of 1998; (2) Hogenkamp was a member of the Executive Committee of the Loewen Group; (3) Wagler was the Chief Financial Officer of the Loewen Group; (4) Lundgren was the President of the Loewen Group; and (5) Weedon was the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                               Page 7
Not Reported in F.Supp.2d, 2000 WL 772818 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Executive Vice President and Chief Administrative Officer of the Loewen Group. *See* Pl.'s Opp. at 19-26.

(1) *Raymond Loewen*

The plaintiff alleges that Loewen, who is a Canadian citizen and resident: (1) attended a board meeting held in the Loewen Group's Philadelphia office in 1996; (2) was present at a company Christmas party held in Philadelphia; (3) assisted in the opening of the Philadelphia office of the Loewen Group; (4) conversed via telephone on a monthly basis with Lawrence Miller, who was the employee in charge of the Philadelphia office; (5) negotiated the acquisition of a Pennsylvania-based company; (6) authorized the execution of a contract between the Loewen Group and Provident America (a Pennsylvania-based company); (7) participated in the decision to close the Philadelphia office in 1998 and to terminate the employment of the Philadelphia employees; (8) contacted Lautman, via telephone and in person, concerning the marketing activities of the Loewen Group; (9) took part in the decision to establish a stock option plan for employees of the Loewen Group; and (10) hired attorneys in Philadelphia for various matters including the Provident America contract.[FN9] *See* Pl.'s Opp. at 19-21 & 21 n. 6.

   FN9. The plaintiff also alleges in his brief that Loewen was "personally ... involved in the decision to terminate Lautman's employment and ... personally concluded that Lautman was not entitled to compensation under the Stock Option Agreement...." *See* Pl.'s Opp. at 21. The plaintiff, however, fails to cite any factual support for this conclusory statement and it is not included in his complaint or a supporting affidavit. Therefore, because it is not supported by any factual basis, I will not consider this statement as evidence that Loewen personally participated in any wrongful conduct.

Even assuming all of the plaintiff's allegations to be true, however, none of the contacts alleged relates to the commission of wrongful conduct. They only relate to the second factor, his contacts within Pennsylvania. Thus, the plaintiff has submitted no evidence at all concerning Loewen's participation in the wrongful conduct, the third and most important factor, and only limited evidence of sporadic contact with Pennsylvania, most of it from Canada.

*7 Therefore, the plaintiff has failed to meet his burden of demonstrating competent evidence that would warrant the court's piercing of the corporate shield. *See Fyk,* 1995 WL 57847, at *3 (refusing to disregard the corporate shield when the plaintiff had not shown that the individual corporate defendants had committed any wrongful acts). Accordingly, I will not disregard the corporate shield as to Loewen. As a result, I conclude that Loewen did not have sufficient minimum contacts to support personal jurisdiction. Accordingly, I will dismiss with prejudice the claim against him pursuant to Federal Rule of Civil Procedure 12(b)(2).

(2) *Timothy Hogenkamp*

The plaintiff alleges that Hogenkamp, a Canadian resident and citizen: (1) assisted in the formation of the Philadelphia office; and (2) was present in Philadelphia at various times to help with the office formation. *See* Pl.'s Opp. at 25-26.

Again, the plaintiff has only submitted evidence of sporadic contacts with Pennsylvania and has failed to allege that Hogenkamp personally participated in any wrongful conduct. Consequently, I will also permit Hogenkamp to invoke the protections of the corporate shield. The exercise of personal jurisdiction over Hogenkamp in this court is therefore improper and I will dismiss the complaint against him with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2).

(3) *Paul Wagler*

The plaintiff alleges that Wagler, who resides in Canada and is a Canadian citizen: (1) attended meetings in Philadelphia in 1996 and 1998; (2) was partially responsible for activities of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 8
Not Reported in F.Supp.2d, 2000 WL 772818 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Philadelphia office of the Loewen Group; and (3) communicated on a regular basis with members of the Philadelphia office. *See* Pl.'s Opp. at 25.

As with Loewen and Hogenkamp, the plaintiff has not alleged that Wagler was involved personally in the commission of any wrongful acts. Accordingly, I will not disturb the corporate shield as it applies to Wagler. Because the plaintiff has not satisfied his burden of proving that Wagler had sufficient contacts with Pennsylvania, the court may not exercise personal jurisdiction over Wagler. Therefore, I will dismiss the complaint against Wagler with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2).

(4) *Robert Lundgren*

The plaintiff alleges that Lundgren, a Canadian citizen and resident: (1) communicated with members of the Philadelphia office of the Loewen Group; (2) attended a board meeting of the Loewen Group in Philadelphia in 1996; (3) was present in Philadelphia to discuss a possible sale of assets to Lawrence Miller and to discuss potential investments for the company; (4) had regular telephone conversations with Miller in Philadelphia; (5) referred Lautman's demand for compensation under section 19(a) of the stock option agreement to counsel; and (6) determined that Lautman's claim under section 19(a) was not appropriate. *See* Pl.'s Opp. at 23-24; Pl.'s Ex. V (Dep. of Robert Lundgren) at 20 ("I determined with respect to the advice from [counsel] and my own reading of the clause that Mr. Lautman's claim was not appropriate.").

*8 All of these allegations, considered together, support the plaintiff's contention that Lundgren played an integral role in the decision to deny Lautman compensation under the stock option plan. Accordingly, because of Lundgren's significant role in the corporate structure of the Loewen Group, because it appears that he was directly and personally involved in the commission of the allegedly wrongful conduct (i.e., the denial of compensation under the stock option plan), and because he had some contacts with Pennsylvania, I conclude that Lundgren is not entitled to the benefit of the corporate shield. Furthermore, considering Lundgren's contacts with Pennsylvania, I conclude that his contacts with the forum state are sufficient to satisfy the minimum contacts analysis.

Because I have concluded that the plaintiff has established that Lundgren has sufficient minimum contacts with Pennsylvania, I must also consider the second prong of the jurisdictional analysis, which is a determination of whether the exercise of personal jurisdiction comports with the traditional notions of fair play and substantial justice. In making this determination, I must determine whether jurisdiction would be reasonable in light of factors articulated by the Supreme Court. *See Burger King Corp.,* 471 U.S. at 477; *World-Wide Volkswagon Corp.,* 444 U.S. at 292. "These factors include: 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.' " *Mellon Bank (East), PSFS v. Farino,* 960 F.2d 1217, 1222 (3d Cir.1992) (quoting *World-Wide Volkswagon Corp.,* 444 U.S. at 292). "Generally, once the plaintiff makes out a prima facie case in favor of personal jurisdiction, the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Elbeco Inc.,* 989 F.Supp. at 677. The individual defendants do not argue that the exercise of personal jurisdiction in Pennsylvania would be unfair or unjust. Thus, Lundgren has not met his burden of demonstrating that this forum offends traditional notions of fair play and substantial justice. Accordingly, I conclude that the court has jurisdiction to consider the plaintiff's claims against Lundgren and I will therefore deny Lundgren's motion to dismiss for lack of jurisdiction.

(5) *Michael Weedon*

The plaintiff alleges that Weedon, who is a citizen and resident of Canada: (1) was responsible for the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 9
Not Reported in F.Supp.2d, 2000 WL 772818 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

activities of the Philadelphia office of the Loewen Group; (2) participated in the decision to close the Philadelphia office; (3) visited Philadelphia on several occasions, including in 1998 to assist with the closing of the Philadelphia office; (4) visited Pittsburgh in 1998 to address the issue of sales performance; (5) communicated on a regular basis with various employees of the Philadelphia office of the Loewen Group; (6) participated in the decision to terminate Lautman's employment; (7) investigated whether the Loewen Group would owe compensation to Lautman pursuant to section 19(a) upon the termination of his employment; (8) discussed the meaning of section 19(a) of the stock option agreement with counsel; (9) reviewed the agreements between Lautman and the Loewen Group prior to deciding to terminate Lautman's employment; and (10) wrote to Lautman on October 1, 1998 and terminated his employment. *See* Pl.'s Opp. at 21-23.

*9 From these contacts, it appears that Weedon was substantially involved in the decision to deny Lautman compensation under the stock option agreement. Therefore, because Lautman had a significant corporate position, because he was personally involved in the decision to deny payments to Lautman, and because he had some contacts with Pennsylvania, I will deny him the benefit of the corporate shield. Thus, I conclude that he had sufficient contacts with the forum state to satisfy due process. Furthermore, for the same reasons that I concluded that the exercise of personal jurisdiction over Lundgren did not offend traditional notions of fair play and substantial justice, I also conclude that the exercise of personal jurisdiction over Weedon is not unfair or unjust. Thus, I conclude that the court has jurisdiction to consider the plaintiff's claims against Weedon and I will deny his motion to dismiss for lack of jurisdiction.

b. *Improper Service of Process*

In their motion to dismiss, the individual defendants also argue that the claims against Loewen, Wagler, and Weedon should be dismissed because those defendants were never properly served with a summons and complaint in this case. Because I have already determined that the court does not have personal jurisdiction over Loewen and Wagler, I need only consider whether the plaintiff properly served Weedon with a summons and complaint.

Weedon contends that the service of process upon him was faulty for two reasons. First, Weedon argues that the affidavit of service, which was made by Daryl Riva, a private process server employed by Pacific Process Servers, is faulty because it " states only that a copy of the Summons-not the Complaint-was left with a person admitting to be [Weedon]." *See* Def.'s Mot. at 7. Because Federal Rule of Civil Procedure 4(c) [FN10] requires that the summons and complaint be served together, Weedon contends that service upon him was improper. *See* Def.'s Mot. at 6 & 6 n. 3. Second, Weedon denies that he was ever personally served with the summons and complaint. *See id.* at 7 & Ex. D (Affidavit of Michael Weedon).

> FN10. Federal Rule of Civil Procedure 4(c) mandates that a "summons shall be served together with a copy of the complaint." *See* Fed.R.Civ.P. 4(c).

According to Rule 4, service may be "effected by any person who is not a party and who is at least 18 years of age." *See* Fed.R .Civ.P. 4(c)(2). Rule 4 further provides that if service is made "by a person other than a United States marshal or deputy United States marshal," the person shall provide proof of service to the court in the form of an affidavit. *See* Fed.R.Civ.P. 4(l). The rule makes clear, however, that "[f]ailure to make proof of service does not affect the validity of the service," and the "court may allow proof of service to be amended." *See id.*

In this case, Daryl Riva, the private process server hired by the plaintiff to effect service on Weedon, filed two affidavits of service with the court. On May 7, 1999, Riva filed an affidavit of service in which he stated that he served Weedon personally with a summons on March 14, 1999. *See* Pl.'s Opp. Ex. H ("Declaration of Server" and Affidavit of Service for Michael Weedon). On May 20, 1999, Riva filed an amended affidavit of service in which

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 10

Not Reported in F.Supp.2d, 2000 WL 772818 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

he stated that, on March 14, 1999, he served Weedon with a summons and complaint in this civil action. *See* Pl.'s Opp. Ex. K (Amended "Declaration of Server" and Affidavit of Service for Michael Weedon). Weedon now objects to the first affidavit of service because it does not state that Riva served the complaint along with the summons. *See* Def.'s Mot. at 7. Because Rule 4(l) is liberal about allowing proof of service to be amended, *see* Fed.R .Civ.P. 4(l), and because Weedon does not claim to have been prejudiced by the form of the original proof of service, *see United States v. Islip,* 18 F.Supp.2d 1047, 1059 (Ct. In'tl Trade 1998), I will consider Riva's amended affidavit of service to be valid. Because the amended proof of service states that Weedon was served with both a summons and a complaint, I will not dismiss the complaint on this ground.

*10 Weedon also argues that service of the complaint and summons upon him was improper because he denies that he was ever served with process on March 14, 1999. In his own affidavit, Weedon claims that he "was never personally served with a copy of the Summons and Complaint in this case." *See* Def.'s Mot. Ex. D (Affidavit of Michael Weedon). Weedon also states in his affidavit that he was not served at his home residence on March 14, 1999, because he was not at his home residence on that date. *See id.* In his deposition, Weedon states that he was at Whistler on that date with his wife and two sons. *See* Pl.'s Opp. Ex. O (Deposition of Michael Weedon) at 64-65. In his motion to dismiss, however, Weedon does not provide any corroborating evidence to support his contention that he was not at his home on March 14, 1999.

Courts in this district have concluded that a return of service by a private process server creates a rebuttable presumption that proper service was effectuated. *See Lin v. Pennsylvania Machine Works,* No. 97-5407, 1998 WL 111788, at *2 (E.D.Pa. March 3, 1998); *Constitution Bank v. Painewebber Inc.,* No. 91-5175, 1992 WL 50103, at *2 (E.D.Pa. Feb. 28, 1992); *FROF, Inc. v. Harris,* 695 F.Supp. 827, 829 (E.D.Pa.1988). "[A] bare allegation by a defendant that he was improperly served cannot be allowed to bely the private processor's return." *FROF,* 695 F.Supp. at 829. In this case, Weedon offers only an unsubstantiated denial of service. As noted above, although he stated in his deposition that he was at Whistler on March 14, 1999, he does not corroborate that statement with any supporting evidence. Weedon's unsupported assertion, therefore, is insufficient to defeat the rebuttable presumption that the private process server effectuated proper service upon Weedon. Thus, I conclude that Weedon was properly served with process and I will not dismiss the claims against Weedon on this ground.

c. *Failure to State A Claim Upon Which Relief Can Be Granted*

Finally, the individual defendants argue that the plaintiff's complaint fails to state a claim upon which relief can be granted under the WPCL. *See* Def.'s Mot. at 15-16. The individual defendants argue that the WPCL provides a right of action to an employee only against his or her employer. They contend that Lautman was employed by the Loewen Group International Inc., and was not employed by the Loewen Group. Therefore, the individual defendants argue that Lautman may not state a claim under the WPCL against them because they were officers and directors of the Loewen Group, not of the Loewen Group International Inc.

As explained above, I must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant," in deciding a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994) (citing *Rocks v. Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989)). Furthermore, in response to a Rule 12(b)(6) motion, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984) .

*11 In this case, the plaintiff's complaint alleges that the Loewen Group hired the plaintiff's company, M.C.I., to conduct marketing research for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 772818 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Page 11

the Loewen Group. *See* Compl. ¶ 14. The complaint also alleges that the plaintiff entered into a stock option agreement with the Loewen Group on May 15, 1997, the alleged violation of which forms the basis of the plaintiff's claim. *See id.* at ¶ 19. Furthermore, the plaintiff alleges that the Loewen Group terminated the plaintiff's employment. *See id.* at ¶ 23. Considering all of the allegations in the light most favorable to the plaintiff, I conclude that the plaintiff has alleged sufficient facts to establish that the Loewen Group was the plaintiff's employer. Clearly this is a substantial issue, but it will have to be resolved on a more fully developed record. At this time, therefore, I will not dismiss the plaintiff's complaint for failure to state a claim upon which relief can be granted under the WPCL.

CONCLUSION

Based on the foregoing reasons, I conclude that the court may not properly exercise personal jurisdiction over Raymond Loewen, Timothy Hogenkamp, or Paul Wagler, but may exercise personal jurisdiction over Robert Lundgren and Michael Weedon. Accordingly, I will grant in part and deny in part the individual defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and will dismiss the plaintiff's complaint with prejudice as to Loewen, Hogenkamp, and Wagler.

As to the claims brought against Weedon and Lundgren, I find that service was properly effectuated on Weedon and the plaintiff has stated a claim upon which relief can be granted against both Lundgren under the WPCL. Therefore, I will deny the individual defendants' motion to dismiss for improper service and failure to state a claim upon which relief can be granted.

An appropriate order follows.

ORDER

AND NOW, this ___ day of June, 2000, upon consideration of the motion to dismiss of defendants Raymond Loewen, Robert Lundgren, Timothy Hogenkamp, Michael Weedon, and Paul Wagler, the plaintiff's response, and the individual defendants' reply thereto, IT IS HEREBY ORDERED that the plaintiff's motion to dismiss is GRANTED IN PART AND DENIED IN PART as follows:

(1) the motion to dismiss of Raymond Loewen, Timothy R. Hogenkamp, and Paul Wagler for lack of personal jurisdiction is GRANTED, and the claims against Raymond Loewen, Timothy R. Hogenkamp, and Paul Wagler are DISMISSED WITH PREJUDICE;

(2) Michael Weedon's motion to dismiss for lack of personal jurisdiction, improper service, and failure to state a claim upon which relief can be granted is DENIED WITH PREJUDICE; and

(3) Robert Lundgren's motion to dismiss for lack of personal jurisdiction and failure to state a claim upon which relief can be granted is DENIED WITH PREJUDICE.

E.D.Pa.,2000.
Lautman v. Loewen Group, Inc.
Not Reported in F.Supp.2d, 2000 WL 772818 (E.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.