IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARC BRAGG, Esq., an individual, | CIVIL ACTION |
| Plaintiff, | Case No. 06-4925 |
| v. | |
| LINDEN RESEARCH, INC., a corporation, and PHILIP ROSEDALE, an individual, | |
| Defendant. | |

**REPLY MEMORANDUM OF LAW OF
DEFENDANTS LINDEN RESEARCH, INC. AND PHILIP ROSEDALE
IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION**

**I.   INTRODUCTION**

For purposes of the instant motion, the "virtual world" – and the academic legal issues which Bragg seeks to raise and the attendant publicity he seeks – has no place. In the real world, Bragg – an experienced attorney licensed in California (the law which applies here and the *situs* for the arbitration required here) and Pennsylvania, agreed to Linden's Terms of Service each and every time he participated in Second Life. In the real world, Bragg's misconduct on the site (which he does not dispute) by rigging "auctions" and cheating the other participants, caused his participation to end. While Bragg disputes the outcome of his termination from Second Life; in the real world, Bragg agreed that such a dispute would be arbitrated. In the real world, Linden's Terms of Service, including arbitration of disputes, are terms reasonable to accomplish the smooth operation of the service which Linden provides and to accommodate the thousands of worldwide participants who access the site (hence the ICC rules). In the real world, allowing Bragg to upset or circumvent those terms would seriously disrupt the orderly operation of

Linden's business. In short, Bragg agreed to arbitrate his concocted claims and he should be held to that agreement. Linden and everyone else is bound to those terms – and so is Bragg.

Bragg essentially argues that arbitration is somehow unfair and it would be unjust to require him to honor his agreement. Bragg's argument tries to stand the law on its head since courts routinely <u>enforce</u> and <u>encourage</u> arbitration agreements of more modest claims – both because of the finality of awards and the reduced cost and time involved in a more informal process. All that Bragg asserts about his claims <u>supports</u> the need for arbitration here. This is a case where the arbitration agreement provides a more efficient and less expensive forum, considering that the actual costs involved in such an arbitration would be far less than continued litigation in this Court. The Court should not hesitate to enforce the arbitration clause as written.

Bragg's initial argument that his claims are not subject to arbitration because they are based on multiple "auction agreements" is a non-starter. As explained in plain language in the first sentence of the Terms of Service ("TOS"), Bragg's use of the Second Life website he accessed to rig several auctions and participate in others was "solely conditioned" on Bragg's "agreement to all of the terms and conditions contained in the Terms of Service" which includes the arbitration provision. Bragg's "auction agreement" argument is without any substance.

Bragg's effort to paint the TOS arbitration clause as unconscionable and unfairly expensive is also easily refuted. Bragg tries to present the agreed to forum for arbitration, the International Chamber of Commerce, and location, San Francisco, as a farcical alternative to continued litigation in this Court by pointing out irrelevant (and unsubstantiated) "facts" such as that San Francisco is the nation's "second most expensive city" and the cost of meals at the local McDonald's. In fact, the initial administrative fee required by the ICC for this case would be $1,300 per party and the total cost of arbitration easily could be as little as $3,800 per party. The

arbitration decision can shift costs as well, so who will bear the ultimate cost may depend on the merit of Bragg's claim. These costs are set forth clearly in the ICC Rules governing arbitration, which Bragg does not address at all in his papers. Bragg has failed to meet his burden of demonstrating that enforcing the arbitration provision as written effectively "puts him out of court."

## II.  ARGUMENT

### A.  The TOS, Not the So-Called "Auction Agreements," Govern Bragg's Claims

Bragg does not dispute that he agreed to the TOS attached to Defendants' Motion when he became a Second Life participant. Instead, he spends numerous pages arguing that the multiple so-called "auction contracts" which he entered into when he won some virtual land auctions and fixed others are separate contracts that do not include an arbitration provision. As a result, according to Bragg, "there never was an agreement to arbitrate" the claims which he now asserts.[1]

Bragg has it all wrong. Paragraph 1.1 (titled "The Agreement") of the TOS (attached as Exhibit A hereto) states:

> **1.1 The Agreement.** Linden Research, Inc. ("Linden") offers to allow you to use its multi-user online service "Second Life," use the software provided to you by Linden (collectively, the "Linden Software") and participate in the environments that support the service, **including without limitation the websites located at http://www.lindenlab.com and http://www.secondlife.com** (collectively, and together with the Linden Software, the

---

[1]  Bragg does not attempt to explain why he did not read the TOS and he does not attempt to refute the Affidavit of Ginsu Yoon previously provided to the Court by Defendants, which fully describes Bragg's assent, on multiple occasions, to the TOS. See Defendants Opening Br., Ex. B. Furthermore, Bragg does not provide evidence refuting Mr. Yoon's statement that "the Terms of Service attached hereto as Exhibit 1 were in effect during the entire time that Mr. Bragg was a member of Second Life." Defendants Br., Ex. B, ¶ 10. Bragg does not contend that any point in time the TOS did not contain an arbitration provision.

3

> "Service"), **solely conditioned on your agreement to all of the terms and conditions contained in this Terms of Service document (this "Agreement" or "Terms of Service")** and your compliance with the posted Community Standards on the Second Life website, which you can find at this link: http://www.secondlife.com/corporate/cs.php. **Your use of the Service constitutes your agreement to all such terms and conditions and your agreement to comply with the Community Standards.** To confirm your agreement, you should accept this Agreement. If you do not so agree, you should decline this agreement, in which case you are prohibited from accessing or using the Service. Accessing or using the Service will be considered acceptance of this Agreement.

Ex. A at 1 (emphasis added). In paragraph 13, the TOS sets forth a broad arbitration clause which requires that:

> Any dispute or claim arising out of or in connection with this Agreement or the performance, breach or termination thereof, shall be finally settled by binding arbitration in San Francisco, California under the Rules of Arbitration of the International Chamber of Commerce by three arbitrators appointed in accordance with said rules.

Ex. A at 8.

Try as he may, Bragg cannot seriously claim that his claims fall outside the scope of this provision. It is undisputed that the TOS govern one hundred percent of Bragg's activities in Second Life, including his participation in virtual land auctions. Use of any aspect of the Second Life website requires acceptance of and adherence to the TOS. The TOS state that any dispute "arising out of or related to" the "Agreement," as broadly defined above, is subject to the arbitration clause. See Ex. A at 1, 8. Each and every one of the auction-related documents attached to Bragg's Brief in Exhibit 2 are from http://www.secondlife.com (as clearly indicated at the bottom of each document) and, therefore, are part of the "Service," as defined above.[2]

---

[2] Bragg also does not mention that the documents explaining how the Second Life auction process operates contain a hyperlink to the TOS. See Bragg Br., Ex. 2 (pages 1-16)

There was never a point in time when Bragg was participating in Second Life that his participation was not subject to the TOS.

Furthermore, Bragg's argument ignores the many paragraphs of the Complaint which acknowledge that this case is primarily about whether Linden can rely on, among other provisions, paragraph 7.1 of the TOS, which provides Linden with the right to terminate the membership of a Second Life participant where the participant engaged in "fraud, violations of other laws or regulations, or deliberate disruptions to or interference with the Service." Ex. A at 6-7. After describing how he manipulated several Second Life auctions and was excluded from further participation in Second Life for doing so (see Complaint, ¶¶ 109-112), Bragg alleges that the "fine print" contained in the TOS and its "Termination" clause is unfair. See Complaint, ¶¶ 128-29. Bragg further alleges that Linden is liable to Bragg because the terms of the TOS "did not state or provide any terms or condition such that Defendants may retain and/or convert Bragg's money …." Complaint, ¶ 131. He also alleges that the TOS did not allow Linden to close Bragg's account, even if he violated the TOS. See Complaint, ¶ 134. He also alleges that at least 15 of the terms contained in the TOS were misleading. Complaint, ¶ 134.

Indeed, at oral argument on Plaintiff's Motion for Remand, Plaintiff's counsel reminded the Court that Bragg sought to challenge the TOS by stating that "[t]he terms of service agreement contains no language in it that says, by the way – there's no header that says, virtual land, you don't really own it." Jan. 4, 2007 Oral Argument Tr. (relevant portions attached as Ex. B) at 13, lines 14-16. In an interview given by Bragg's counsel on December 6, 2006 (copy attached as Exhibit C), counsel stated "[w]hat will be interesting to see if the position Linden and Mr. Rosedale take with regard to the ToS and, whether, they are going to claim that the ToS is inconsistent with what they are telling the public about land ownership in Second Life." Ex. C at

7-8. Finally, there is no dispute that Linden took the actions it did with respect to Bragg's account pursuant to the rights provided by the TOS. Clearly, and as pled by Bragg at great length, all of the "the allegations underlying the claims 'touch matters'" covered by the TOS. Genesco v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 846 (2d Cir. 1987) (internal citation omitted).

Bragg also cannot defeat the effect of the arbitration provision simply by arguing that some of his claims "sound in tort" rather than contract. As this Court explained in Paxson, LLP v. Asensio, 2003 WL 21076984, at *4 (E.D. Pa. May 5, 2003) (Robreno, J.). Only "if the claim is fraud in the inducement of the arbitration clause itself may the court remove from the arbitrator a substantive challenge to the contract." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402 (1967) (emphasis added); Paxson, 2003 WL 21076984, at * 4. See Leslie-Hughes v. American Express Financial Advisors, Inc., 2004 WL 1465669 (E.D. Pa. June 29, 2004) (Robreno, J.) (granting motion to compel arbitration before the NASD where plaintiff asserted claims for fraudulent inducement and related torts).

Here, there is no allegation, or evidentiary proof, that Bragg was fraudulently induced to agree to the arbitration provision. To the contrary, Bragg admits that he never bothered to read the TOS when he became a participant in Second Life. See Complaint, ¶ 126. As a result, Bragg's argument that the mere presence of his fraud-related claims prevents arbitration is without merit. As shown above, interpretation of the TOS is central to every aspect of this case. As a result, Bragg's claims are subject to the TOS arbitration provision.[3]

---

[3] Bragg does not challenge Defendants' position that Bragg's claims against Mr. Rosedale must also be arbitrated.

6

B.      **The Arbitration Clause is Not Unconscionable**

The parties agree that Bragg's unconscionability argument presents an issue of state law and that California law applies to the Court's review of the arbitration clause by virtue of the choice of law provision found in the TOS. See Ex. A at 8.

Paragraph 13 (titled "General Provisions") of the TOS states as follows:

> Any dispute or claim arising out of or in connection with this Agreement or the performance, breach or termination thereof, shall be finally settled by binding arbitration in San Francisco, California under the Rules of Arbitration of the International Chamber of Commerce by three arbitrators appointed in accordance with said rules.

Ex. A at 8. As noted in Defendants' opening Brief, courts regularly have enforced arbitration provisions which required consumers to submit claims, including ones much smaller than Bragg's claim, to the ICC for arbitration. See Hill v. Gateway 2000, Inc., 105 F.3d 1147, 1150-51 (7th Cir. 1997) (court upheld enforcement of ICC arbitration provision in consumer class action); Poponin v. Virtual Pro. Inc., 2006 WL 2691418, at *12 (N.D. Cal. Sept. 20, 2006); Filias v. Gateway 2000, Inc., 1997 WL 33814599, at *3 (E.D. Mich. Apr. 8, 1997) (suggesting that ICC arbitration clause would be followed for reasons stated in Hill). Bragg does not attempt to distinguish these cases.

Bragg ignores these cases and instead relies heavily on Comb v. Paypal, 218 F. Supp.2d 1165 (N.D. Cal. 2002). As explained in Comb, unconscionability under California law has two components, procedural and substantive. "[T]he elements of procedural unconscionability and substantive unconscionability 'operate on a sliding scale such that the more significant one is, the less significant the other need be.'" Wilmot v. McNabb, 269 F. Supp.2d 1203, 1210 (N.D. Cal. 2003) (quoting Comb, 218 F. Supp.2d at 1172).

7

1.  **Procedural Unconscionability**

A contract or clause is procedurally unconscionable if it is a contract of adhesion. See Flores v. Transamerica HomeFirst, Inc., 93 Cal. App.4th 846, 853 (2001). Defendants contest Bragg's position that the TOS is procedurally unconscionable for several reasons, including Bragg's level of sophistication with respect to contracts such as the TOS and virtual environments such as Second Life. As noted previously, Bragg is a lawyer who openly touts his experience in "cyberlaw." Bragg further sees himself as someone with sufficient expertise to make various statements concerning what he refers to in his Declaration as the "massively multiplayer online roleplaying game" industry. Bragg Br., Ex. A, ¶¶ 48-58. In his Declaration, Bragg, trying to play the role of both plaintiff and expert witness, offers numerous opinions concerning industry standards and the "rights" of participants in virtual worlds. Id., ¶¶ 59-64. Despite all of this purported expertise, Bragg, the experienced cyber-lawyer, "never read the TOS" before agreeing to abide by the TOS. Complaint, ¶ 126. The best that can be said of such testimony is that Bragg intentionally ignored the Terms of Service (which, if true, means he wasn't misled by them either). As to this plaintiff the TOS are not "procedurally" unfair.

Indeed, such a result is supported by the case upon which Bragg relies so heavily. In Comb the court found that the arbitration provision was procedurally unconscionable in part because the "the amount of the average transaction is $55.00, [and] the vast majority of PayPal customers are private individuals who are not 'sophisticated.'" 4  Comb, 218 F. Supp.2d at 1173.

---

4   Comb is distinguishable on numerous other grounds as well. First, Comb was a class action, and one of the principal reasons for the court finding that the arbitration clause was unenforceable was the clause's prohibition against class actions. Comb, 218 F. Supp.2d at 1175-76. Second, unlike this case, the named plaintiffs in Comb were seeking to recover truly de minimis amounts: one class representative sought to recover $310; a second sought to recover $27; a third representative suffered no economic harm. Here, Bragg's Complaint seeks to recover at least $75,000. Third, the arbitration clause at
Continued on following page

Here, Plaintiff seeks to recover a far greater amount and, as shown by his Declarations, Complaint and biography, is an attorney and apparently a cagey participant in computer-based virtual environments.

Furthermore, absolutely no material terms of the TOS were "hidden" from Bragg. The TOS are easy to locate and accessible by hyperlink, as demonstrated by the Yoon Affidavit submitted with Defendants' opening Brief and many of the documents attached to Bragg's Brief. For example, both the "Auctions" and the "Auctions FAQ" webpages in Second Life contain hyperlinks to the TOS. See Bragg Br., Ex. 2 at 9, 15. And of course Bragg accepted the TOS when he became a participant in Second Life. Moreover, Bragg clearly is someone who would "know where to look" if he was truly interested in reviewing the TOS. After all, Bragg was able a devise a scheme to manipulate several Second Life auctions. Bragg cannot seriously contend that the TOS were hidden from him at any point in time.

Accordingly, there is no procedural unconscionability here.

### 2.  **Substantive Unconscionability**

Even if an arbitration agreement is procedurally unconscionable, it must nonetheless be enforced if the substantive terms are reasonable. See Craig v. Brown & Root, Inc., 84 Cal.App.4th 416, 422-23 (2000). Bragg contends that the arbitration provision is substantively

---

Continued from previous page

> issue in Comb required arbitration according to the Commercial Rules of the American Arbitration Association, not the ICC and it was beyond doubt that "the costs each [named plaintiff] ... is likely to incur in commercial arbitration likely would exceed those involved in bringing a collective action." Id. at 1176.  Finally, the court was especially troubled by the venue provision because the case was a class action brought on behalf of individuals whose respective claims were probably worth less than $100 per claim. Id. at 1176-77.

unconscionable primarily because it would be unfairly expensive to require him to arbitrate his claims before the ICC.

### a. The Actual Cost of ICC Arbitration.

As this Court well knows, the U.S. Supreme Court has found that a "party seek[ing] to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive ... bears the burden of showing the likelihood of incurring such costs." Bellevue Drug Co. v. Advance PCS, 333 F. Supp.2d 318, 331 (E.D. Pa. 2004) (Robreno, J.) (quoting Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 92 (2000)). Bragg fails to meet his burden. Indeed, Bragg offers almost nothing by way of evidence in support of his contention that the cost of an ICC arbitration conducted pursuant to the ICC's Rules and Guidelines For Arbitrating Small Claims would be so excessive as to essentially deprive him of a right to have his claims decided.

Bragg chose not to provide the ICC's Rules of Arbitration to the Court. As explained in the Rules, an ICC arbitration is begun by submitting a Request for Arbitration stating the names of the parties, a description of the claims and other particulars. See ICC Rules of Arbitration, a true and correct copy of which is attached as Exhibit D, at 9-10. Along with the Request, the party initiating the arbitration "shall make the advance payment on administrative expenses required by Appendix III ("Arbitration Costs and Fees") in force on the date the Request is submitted." Id. at 10. "As soon as practicable" after the Request for arbitration is made, the ICC "shall fix the advance on costs in an amount likely to cover the fees and expenses of the arbitrators and the ICC administrative costs for the claims and counterclaims ...." Id. at 28. "The advance on costs fixed by the Court shall be payable in equal shares by the Claimant and the Respondent," and one party can pay the other party's share if it wishes. Id. at 28-29.

Appendix III to the ICC Rules sets forth the cost scales for administrative expenses and arbitrator fees. Ex. D at 45. Assuming for the sake of argument that $75,000 is at issue, the ICC's administrative expenses would be $2,625 (3.5% of $75,000), which would be shared equally by the two parties. Ex. D at 28 (advance on costs "shall be payable in equal shares"), 45. According to the ICC Rules, the arbitrator's fees would be set by the ICC somewhere between 2.0% ($1,500) and 11.00% ($8,250) of the amount in controversy, depending on the complexity of the facts and issues involved. Id. For the sake of argument, if the ICC were to set the arbitrator's fees at the mid-point of this range, total arbitrator fees would be $4,875.[5] Therefore, the total for arbitrator fees and administrative expenses would be $7,500, or just $3,750 per party. And, if Linden deemed it appropriate, the Rules even allow it to pay Bragg's entire share of the administrative costs.[6] See Ex. D at 29.

Additionally, the ICC has published "Guidelines for Arbitrating Small Claims under the ICC Rules of Arbitration." A true and correct copy of these Guidelines is attached as Exhibit E. These non-binding Guidelines demonstrate the ICC's intention to provide the parties with a forum that will allow for the efficient arbitration of any claim which the parties consider "small." Ex. E at 2. If the parties do not agree to implement any of the suggestions to reduce costs made

---

[5] In fact, because the case likely would involve two or three witnesses and take only a day to hear, the ICC would likely set the arbitrator fees below the mid-point of the 2 to 11 percent range. If, for example, the ICC sets the arbitrator's fee at 3%, the cost of arbitration before one arbitrator would be $4,875, or around $2,400 per party.

[6] Linden notes that neither the ICC's Rules nor the TOS arbitration clause has a "loser pays" provision which would require Bragg to pay Linden's fees and costs if his claims fail. But cost shifting is allowed if deemed appropriate. Ex. D at 30 ("The final award shall fix the costs of the arbitration and decide which of the parties shall bear them or in what proportion they shall be borne by the parties"). By contrast, if Linden were to prevail at trial in litigation, the Court would by rule impose costs against Bragg. Fed. R. Civ. P. 54(d)(1) (costs other than counsel fees awarded as matter of course to prevailing party).

by the ICC, "an arbitrator may settle on one or more of the methods suggested in these guidelines." Id. Therefore, both the parties and the chosen arbitrator have the ability to streamline the ICC's procedures and the arbitration still further by taking some or all of the suggested steps to keep costs down.

Accordingly, the ICC's Rules demonstrate that Bragg's "absurd and ultra-conservative" estimate that it would cost him no less than $13,540 to arbitrate is way off the mark, even if the parties do not agree to take advantage of the various cost-savings measures encouraged by the ICC.7 In fact, as shown above, the matter could be decided by a single arbitrator for as little as $3,750 per party.

### b. Venue

As explained recently by a California appellate court, "both the California Supreme Court and the United States Supreme Court place a heavy burden on the plaintiff who seeks to prove that a forum selection clause is unreasonable, particularly where the alleged unreasonableness is based on the additional expense and inconvenience of litigating far from home." Aral v. Earthlink, Inc., 123 Cal. App.4th 544, 241 (2005). As a result, Bragg must be able to demonstrate that "trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." 8 Id. (internal citations

---

7   Bragg includes in his cost estimate transportation, lodging and meal expenses for himself and his counsel, who works in the Pittsburgh office of White & Williams. See Complaint, page 1. However, Bragg's counsel already must fly from Pittsburgh to Philadelphia for each court appearance and incur expenses related to travel. Counsel would also have to fly to California if he ever wanted to depose a representative of Linden. These significant expenses presumably were contemplated by Bragg when he asked his Pittsburgh-based counsel to file suit in the Chester County Court of Common Pleas against defendants which reside in California.

8   Although the Aral court found the forum selection clause to be unconscionable, the defendant was seeking to transfer of a claim worth "$40 to $50" from California where
Continued on following page

omitted). Requiring Bragg to expend approximately $5,000, all of which he may potentially recover if he prevails, is not the sort of expense which puts someone with a $75,000-$100,000 case out of court, especially when his case is being styled and conducted as a crusade.

Bragg does not try to distinguish any of the cases cited by Defendants involving on-line agreements with similar forum selection clauses. See Cairo v. CrossMedia Services, Inc., 2005 WL 756610, *5-6 (N.D. Ca. Apr. 1, 2005) (dismissing action because terms of use mandated that suit be brought in Illinois); DeJohn v. The .TV Corporation Int'l, 245 F. Supp.2d 913, 919 (N.D. Ill. 2003); Mortgage Plus, Inc. v. DocMagic, Inc., 2004 WL 2331918, *7 (D. Kan. Aug. 23, 2004) (transferring case from Kansas to California in light of forum selection clause); Robert Novak v. Overture Services, Inc., 309 F. Supp.2d 446, 451-52 (E.D.N.Y. 2004) (upholding forum selection clause in Terms of Service); Decker v. Circus Circus Hotel, 49 F. Supp.2d 743, 748 (D.N.J. 1999) (transferring suit from New Jersey to Nevada because plaintiff assented to forum selection clause contained in on-line reservation system); Groff v. America Online, Inc., 1998 WL 307001, *5 (R.I. Super. Ct. May 27, 1998) (enforcing forum selection clause in clickwrap agreement that required suit filed in Rhode Island to be transferred to Virginia). As indicated by the parentheticals provided above, many of these cases involved much smaller potential recoveries than what Bragg seeks to recover here, and these courts had no problem enforcing the venue provisions at issue.

Moreover, an issue about the TOS venue requirement does not defeat arbitration since the Court can excise it from the TOS and enforce the remaining provisions. "Under California law,

---

Continued from previous page
    the plaintiff resided to Georgia, where the defendant-corporation was based. Aral, 134 Cal.App.4th at 561.

courts have discretion to sever an unconscionable provision or refuse to enforce a contract in its entirety." Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 895 (9th Cir. 2002), cert. denied, 535 U.S. 1112 (2002) (citing Cal. Civ. Code § 1670.5(a)). Although, as shown below, Bragg has completely failed to show that he cannot afford the cost of a one-day arbitration in San Francisco, the Court is empowered, indeed encouraged by law favoring arbitration of disputes, to "blue pencil" the venue provision and compel arbitration in Pennsylvania, if necessary.[9]

### c. Bragg's Declaration Does Not Satisfy His Burden

Furthermore, Bragg's brief focuses only on the cost side of the equation and says nothing about his own ability to cover the relatively small costs actually associated with ICC arbitration. Bragg's lengthy Declaration (Exhibit 1 to his Brief) puts almost no substance behind his contention that he could not afford arbitration. In fact, it appears in many respects identical to the vague affidavit that this Court rejected in Bellevue Drug. Id., 333 F. Supp.2d at 331.

As explained by the Court in Bellevue Drug:

> The affidavits provided by plaintiffs contain nothing more than statements that the pharmacy "could likely not afford to pursue its antitrust claim" or that the pharmacy "would likely be deterred from pursuing its antitrust claim." Notably missing is any showing of financial wherewithal, such as income statements or statements of net worth of the plaintiffs and their principals. ... **Plaintiff's conclusory and self-serving affidavits are insufficient to satisfy plaintiffs' burden that proceeding to arbitration would be "prohibitively expensive."**

Id. (internal citations omitted; emphasis added).

---

[9]   The Court may excise any provision which does not "permeate the contract" and it is well-established under California law that a "venue provision stands alone and does not permeate the contract." Wilmot, 269 F. Supp.2d at 1212 (enforcing arbitration provision except for requirement that venue be in Colorado).

Bragg's Declaration is just as "conclusory and self-serving." Bragg has his own law practice and maintains a license to practice law in California and Pennsylvania. A review of the Court's docket suggests that he appears relatively frequently in this Court. Although he claims in his Declaration that he only visits California occasionally to visit his mother, he somehow manages to remain on active status in California, and does so for a reason. There is no sufficient showing that a one-day arbitration before the ICC in San Francisco would be "prohibitively expensive."[10] Bellevue Drug, 333 F. Supp.2d at 331.

If Bragg can afford potentially protracted litigation in federal court in Philadelphia, (including the jury trial which he demands in his Complaint) he can definitely afford a single day arbitration in San Francisco.[11] Indeed, considering the time and expense involved in depositions, continued motion practice, selecting a jury, trying the case and filing any post-trial motions, it is obvious that litigation, styled in the manner chosen by Bragg, will be far more expensive than a one-day arbitration in San Francisco. Bragg portrays his dispute as having far-reaching importance. It is intellectually dishonest of Bragg to pretend that the substantial costs associated with protracted litigation would be less than the modest costs and finality associated with a one-day arbitration.

Accordingly, Bragg has failed to meet his burden of showing that ICC arbitration in San Francisco is unconscionable. To the contrary, the costs of arbitration are extremely reasonable in

---

[10] Moreover, just like the plaintiff in Bellevue Drug, Bragg is trying to amass a litigation "war chest" to fund this litigation. On the "Welcome Page" to the website for Bragg's law firm and on various internet message boards, Bragg is soliciting contributions to help fund this litigation. Copies of Bragg's Welcome Page (http://www.chescolawyers.com) containing Bragg's solicitation and an identical message board solicitation are attached as Exhibit F.

[11] Bragg claims he cannot afford this litigation, but it is obvious that he would like to drag Linden and Mr. Rosedale through expensive, public discovery. Ex. C at 6.

contrast to Federal Court litigation. Moreover, the arbitration provision here accomplishes the worthy purpose of allowing Linden to resolve disputes in an orderly and commercial forum with rules designed to achieve fairness to each of its worldwide participants.

### C.     Bragg's Injunctive Relief Demand Can Be Arbitrated

The assertion of alleged equitable claims does not defeat arbitration here. The arbitration clause provides that "[a]ny dispute or claim arising out of or connection with this Agreement or the performance, breach of termination thereof" shall be arbitrated. Ex. A at 8. On its face, by requiring the arbitration of "any" dispute or claim, the provision does not limit the arbitrator's authority to monetary relief. There is no reason to believe that the ICC cannot award Bragg any injunctive relief he seeks, i.e., the ability to participate in Second Life. The ICC's Rules do not limit its remedies to monetary relief. Furthermore, Article 23 ("Conservatory and Interim Measures") of the ICC Rules permits the ICC to award injunctive relief that preserves the status quo, if necessary. Specifically, Article 23, section 1 provides that "Unless the parties have agreed otherwise, as soon as the file has been transmitted to it, the Arbitral Tribunal may, at the request of a party, order any interim or conservatory measure it deems appropriate." Ex. D at 24. There can be no dispute that all of the injunctive relief sought by Bragg, either on a preliminary or permanent basis, can be awarded by the ICC. Id.

Moreover, although the TOS says that "either party may apply to any court of competent jurisdiction for injunctive relief," it is clear that what is intended by such language is to allow a party to seek provisional relief in aid of the arbitration. There is no such need here since Linden took the necessary action to terminate Bragg's participation (after discovering his misconduct)

16

over one year ago. Thus, the status quo is already maintained and Linden threatens no additional action. All that is left are claims compensable by money damages.[12]

While <u>all</u> of Bragg's claims are plainly arbitrable, in any case, the FAA requires that the Court stay litigation of non-arbitrable claims, which are clearly not at the heart of his case, until the arbitration is completed. <u>See</u> 9 U.S.C. § 3; <u>Shearson/Am. Exp., Inc. v. McMahon</u>, 482 U.S. 220, 226, (1987); <u>Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 885 F.2d 1149, 1156 (3d Cir. 1989) (noting that the <u>Shearson</u> Court "stressed that if an issue is arbitrable under the agreement, the Arbitration Act leaves a court without discretion"); <u>Elli v. Genmab, Inc.</u>, 2006 WL 2927622, * 8 (D.N.J. Oct. 12, 2006) (court stayed non-arbitrable matter pending the completion of arbitration). Given how long Plaintiff waited to file his motion for preliminary relief and its content, it is obvious that there is nothing "preliminary" about the relief sought.

If a litigant could avoid arbitration entirely simply by asking for declaratory or injunctive relief (or filing a potentially sanctionable motion for preliminary injunction), arbitration clauses would be rendered meaningless. Such a result would be completely inconsistent with the FAA and authority cited above.

### III.  CONCLUSION

For all of the reasons set forth herein and in Defendants' opening Brief, the Defendants' Motion to Compel Arbitration should be granted and all Counts of the Complaint dismissed in light of the parties' agreement to submit any claims to arbitration to the ICC in San Francisco.

---

[12]  Bragg claims that his virtual property is unique but in the same breath recognizes that it was sold by Linden to non-parties. <u>See</u> Complaint, ¶ 121 (alleging that Defendants wrongfully confiscated Bragg's property "and sold it to the highest bidder).

                                              Respectfully submitted,

                                              <u>/s Andrew J. Soven (/AS 955)</u>
                                              Scott D. Baker
                                              Andrew J. Soven
                                              Andrea B. Weingarten
                                              REED SMITH LLP
                                              2500 One Liberty Place
                                              1650 Market Street
                                              Philadelphia, PA 19103-7301
                                              (215)851-8100

                                              Attorney for Defendants
                                              Linden Research, Inc. and Philip Rosedale

Dated: January 26, 2007

## CERTIFICATE OF SERVICE

I, Andrew J. Soven, hereby certify that Defendants Linden Research, Inc. and Philip Rosedale's Reply Brief in Further Support of Motion to Compel Arbitration has been filed electronically this 26th day of January, 2007, and is available for viewing and downloading from the federal court's Electronic Case Files system. A copy of the foregoing has also been served today by ECF upon the following counsel:

>Jason A. Archinaco, Esquire
>White and Williams LLP
>The Frick Building
>437 Grant Street, Suite 1001
>Pittsburgh, PA 15219

"s"/ Andrew J. Soven