IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA

| | |
|---|---|
| MARC BRAGG, Esq., an individual, | CIVIL DIVISION |
| Plaintiff, | No. 06-cv-4925 |
| v. | **JUDGE EDUARDO ROBRENO** |
| LINDEN RESEARCH, INC., a corporation, and PHILIP ROSEDALE, an individual, | |
| Defendants. | |

**SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL ARBITRATION WITH PROPOSED AMENDED
COMPLAINT**

AND NOW, comes Plaintiff, Marc Bragg, Esq. ("Plaintiff"), by and through counsel, Jason A. Archinaco, Esq., and the law firm of WHITE AND WILLIAMS, LLP, and files the following Supplemental Brief in Opposition to Defendants' Motion to Compel Arbitration ("Supplemental Brief")[1] and avers as follows:

I. **BRIEF INTRODUCTION TO PERTINENT FACTS AND ARGUMENTS**

Plaintiff had approximately $8,000[2] wrongfully and unilaterally taken from him due to Defendants' false statements regarding virtual land ownership. See, Declaration of Marc Bragg, ¶ 33[3]. Defendant Linden took Plaintiff's virtual land owned by him and froze his $2,000 U.S. Currency held by Linden in trust for plaintiff in his account with them; all without notice or discussion of any kind. Declaration of Marc Bragg, ¶ 34.

---

[1] Plaintiff incorporates its Opposition to Defendants' Motion to Compel Arbitration into this brief and uses this Supplemental Brief to further explain the unconscionability of the arbitration and venue provisions.
[2] Plaintiff was able to mitigate and reduce his out of pocket expenses to approximately $4,000 to $5,000.
[3] If likened to a membership in a private club (the club being Second Life) then the decision to, and subsequent expulsion of Bragg from Second Life did not follow what is required with procedural fairness. *See e.g., Youngblood v. Wilcox*, 207 Cal.App.3d 1368 (1989) (issuing preliminary injunction when club violated procedural fairness by not providing adequate notice and a reasonable opportunity to respond to the club's decision to expel the member).

1

PITDMS 38816v.4

**II.    ISSUES RAISED BY THE COURT AT ORAL ARGUMENT REGARDING THE MOTION TO COMPEL ARBITRATION.**

During the course of oral argument, this Court raised several pertinent issues with regard to both procedural and substantive unconscionability. As such, Plaintiff believes this Court should be provided with the relevant authority pertaining to these issues. Importantly, a clear and distinct pattern can be demonstrated through Defendant Linden's acts, similar to those of Paypal in the *Comb* case. *Comb v. Paypal, Inc.*, 218 F.Supp.2d 1165 (2002) (holding arbitration clause procedurally and substantively unconscionable). At nearly every conceivable step in the process, Defendant Linden designed and implemented an "arbitration clause" as procedurally and substantively unconscionable as possible. The record discloses this pattern: when in doubt – Defendant Linden chose the more unconscionable path, as opposed to crafting an agreement, which would inform the reader of its material provisions.

**A.    THE ARBITRATION AGREEMENT IS PROCEDURALLY UNCONSCIONABLE.**

As previously set forth, the arbitration agreement is procedurally unconscionable. This Court noted during oral argument that this case does not present a "sympathetic" case because the product / service is not a "necessity". However, California courts do not focus on "necessity" with regard to unconscionability. *See e.g., Trend Homes, Inc. v. Superior Court*, 131 Cal.App.4th 950, 958, 32 Cal.Rptr.3d 411 (2005); *Morris v. Redwood Empire Bancorp*, 128 Cal.Appl.4th 1305, 1318, 27 Cal.Rptr.3d 797 (2005); *Harper v. Ultimo*, 113 Cal.App.4th 1402, 1409 (2003)(stating that a "wonderfully arms-length contract" with parties represented by counsel may still be unconscionable after analyzing its terms). Procedural unconscionability analysis focuses, instead, on:

2

> [O]ppression or surprise. Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice, while surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them.

*Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006)(internal quotations and citations omitted).

> Under California law, the critical factor in procedural unconscionability analysis is the manner in which the contract or the disputed clause was presented or negotiated. Procedural unconscionability focuses on the manner in which the disputed clause is presented to the party in the weaker bargaining position. When the weaker party is presented the clause and told to 'take it or leave it' without the opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability, are present.

*Id.* at 1282.

Indeed, the focus does not appear to be on necessity at all, otherwise the Court would have to engage in an analysis of the relevant product, its product cycle and whether such a product was truly a "necessity" of life. For example, when originally invented, it can hardly be stated that anyone would consider a telephone, an automobile, a computer, a cellular phone or the internet a necessity. However, with the passage of time and as the product's life cycle changed, one could argue that each are now a necessity. Again, however, what is a necessity for one may not be a necessity for all. Arguments could still be made that a cell phone – the internet -- or even a computer are simply a convenience of life, as opposed to a true "necessity" like heating or housing. In this case, while Second Life may not be considered a "necessity" today (similar to a cellular phone network in its infancy), as the network of computers running the software expands and, indeed, if Defendant Linden was successful in causing Second Life to truly become a "platform" or a substitute for the internet, what is to say that it is not, in actuality a

3

"necessity". As such, the emphasis by the California courts on the contract formation appears to avoid such a speculative endeavor by the Courts.

Further, the California Court of Appeal has even rejected the notion that the availability in the marketplace of substitute employment, goods, or services *alone* can defeat a claim of procedural unconscionability. *See id.* at 1283(emphasis in original)(citing *Martinez v. Master Prot. Corp.*, 118 Cal.App.4th 107, 114 (2004) (finding employment contract adhesive where arbitration agreement was presented as a specific "condition of employment"); *see also, Villa Milano Homeowners Ass'n v. IL Davorge*, 84 Cal.App.4th 819, 827, 102 Cal.Rptr.2d 1 (2000)("[I]n a given case, a contract might be adhesive even if the weaker party could reject the terms and go elsewhere."); *Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519, 1533-34, 60 Cal.Rptr.2d 138 (1997)(noting that even though sophisticated corporate executive "was not a person desperately seeking employment," the employment contract was procedurally unconscionable because it was presented on a "take it or leave it basis"); *Armendariz v. Foundation Health Psychare Services, Inc.*, 24 Cal.4th 83, 116 (2000).

Additionally, contracts for reverse mortgages, TV service, and residential long distance service have all been held unconscionable regardless of the underlying services availability elsewhere. *See e.g., Flores v. TransAmerica HomeFirst, Inc.*, 93 Cal.App.4th 846, 853 (2001) (provisions in reverse mortgage agreement held unconscionable), *Cohen v. DirectTV,* 142 Cal.App.4th 1442, 1452 (2006)(provisions in satellite TV agreement held unconscionable), *Ting v. AT&T,* 182 F.Supp.2d 902, 914, 929 (N.D.Ca. 2002), aff'd in part, reversed in part, 319 F.3d 1126 (9th Cir. 2003)(provisions in residential long distance service agreement held unconscionable without regard to the fact that at least 19

4

other companies in California provided long distance services); See also, *Thibodeau v. Comcast Corp.*, 912 A.2d 874 (Pa.Super. 2006)(arbitration clause in cable contract unconscionable). Consequently, California courts recognize that what makes a contract unconscionable is not necessarily the availability of substitutes in the marketplace, but the circumstances surrounding the formation of the contract. *Armendariz,* 24 Cal.4th at 114 (stating that in 1979, the California Legislature enacted Civil Code section 1670.5 which states that "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable <u>at the time it was made</u> the court may refuse to enforce the contract.") (emphasis added).

In any event, even if necessity and/or alternatives were focused on by this Court, Plaintiff's declaration stating that the virtual land is unique and not available from other sources remains uncontested, and Defendants have presented no evidence to the contrary to this Court. Declaration of Marc Bragg, ¶ 45. No evidence was presented by Defendants that there are any other sources to legitimately purchase virtual assets.

Needless to say, procedural unconscionability is presented in this case as set forth in the relevant California case authority. By way of illustration, the following procedural unconscionability can and should be noted by this Court:

| Defendant Linden's Actions | What Linden could have done | Court Authority |
|---|---|---|
| Arbitration clause is not disclosed on front page or top of Linden website | Linden could have disclosed arbitration clause at the top of TOS. | *Specht v. Netscape*, 306 F.3d 17, 32 (2002) (a reference to the existence of license terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice of those terms); *see also, Higgins v.* |

| Defendant Linden's Actions | What Linden could have done | Court Authority |
|---|---|---|
| | | *Superior Court*, 140 Cal.App.4th 1238, 1243 (unconscionable arbitration agreement because nothing in the Agreement brings the reader's attention to the arbitration provision); See also, Cal.Bus. & Prof.Code § 17538.[4] |
| Arbitration clause is not disclosed on auction bid page | Linden could have disclosed arbitration clause. | *Gutierrez v. Autowest, Inc.*, 114 Cal.App.4th 77, 84 (2003)(unconscionable arbitration provision on back of auto lease when nothing brought signers attention to the clause); Cal.Bus. & Prof.Code § 17538 |
| Arbitration clause is not disclosed in auction confirmation page | Linden could have disclosed arbitration clause. | *Gutierrez v. Autowest, Inc.*, 114 Cal.App.4th 77; Cal.Bus. & Prof.Code § 17538. |
| Arbitration clause is not disclosed on payment screen when paying for virtual land | Linden could have disclosed arbitration clause. | *Gutierrez v. Autowest, Inc.*, 114 Cal.App.4th 77; Cal.Bus. & Prof.Code § 17538. |
| Arbitration clause is not "linked" at bottom of Linden website like other information, including, for | Linden could have put a link at the bottom of the website disclosing the arbitration clause and | compare, *Hubbert v. Dell Corp.*, 359 Ill.App.3d 976, 980 (2005) (arbitration clause includes, "available |

---

[4] In *Specht v. Netscape Communications*, 306 F.3d 17, 34 n. 17 (9th Cir. 2002), the Court noted that "Although the parties here do not refer to it, California's consumer fraud statute, Cal.Bus. & Prof.Code § 17538, is one of the few state statutes to regulate online transactions in goods or services. The statute provides that in disclosing information regarding return and refund policies and other vital consumer information, online vendors must legibly display the information either: (i) [on] the first screen displayed when the vendor's electronic site is accessed, (ii) on the screen on which goods or services are first offered, (iii) on the screen on which a buyer may place the order for goods or services, (iv) on the screen on which the buyer may enter payment information, such as a credit card account number . . . ." Although Plaintiff does not assert that this statute is applicable to him (since he is not a California consumer), the statute does provide this Court with a guide to where the arbitration clause could have been displayed, consistent with such statute.

| Defendant Linden's Actions | What Linden could have done | Court Authority |
|---|---|---|
| example, "privacy" terms | "linking" to it. | via the internet at http://www.arb-forum.com") |
| Arbitration clause is not displayed in its own header section in the Terms of Service Agreement, but rather is on page 8 of 9 of the Terms of Service | Linden could have provided a header for arbitration clause, could have moved agreement to front of the Terms of Service. | *compare, Martin v. Snapple Beverage Corp.*, 2005 WL 1580398, * 3 (2005)(first page of agreement has quick link to all 12 topics of agreement, including arbitration clause) |
| No bold face or large font with regard to the arbitration clause instead small type-font and no distinction | Linden could have provided bold or larger font to draw attention to the arbitration clause. | *compare Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal.4th 495, 500 (2005)(arbitration clause begins with heading in larger font and bold **"BINDING ARBITRATION"**) |
| No "click box" acceptance next to the arbitration clause | Linden could have provided a "click box" like they did for the Terms of Service requiring, at any stage of the process, Plaintiff or others to "check" or "x" to approve of knowledge of the agreement. | *Higgins*, 140 Cal.App.4th 1238 (arbitration clause unconscionable where six paragraphs in agreement contain a box for initials, but arbitration clause did not); *compare Caspi v. Microsoft Network, LLC*, 732 A.2d 528, 529-530 (1999) (conscionable clause when prospective members had the option to click "I Agree" or "I Don't Agree" at any point while scrolling through the agreement.) |
| No "scroll" agreement causing Plaintiff or others to actually read the entire Terms of Service and arbitration clause | Linden could simply have provided the Terms of Service (and a more easily identifiable arbitration clause) in a "scroll" agreement that a consumer | *Id.* (scroll agreement held conscionable). |

| Defendant Linden's Actions | What Linden could have done | Court Authority |
|---|---|---|
| | would be forced to read. | |
| "Arbitration clause" could not even be viewed unless a consumer scrolled its browser down for the 9 pages of materials to read it | Linden could have made the arbitration clause one of the first terms or taken action as set forth above and herein and/or provided a quick link to it as it provides elsewhere on the Linden website. | *compare, Martin,* 2005 WL 1580398 at 3 (2005)(first page of agreement has quick link to all 12 topics of agreement, including arbitration clause) |
| No link to or disclosure of the ICC rules (46 pages) anywhere on the Linden website | Linden could have linked to the ICC rules or provided a download of them from its website like it does for Second Life – http://www.secondlife.com. | *Harper,* 113 Cal.App.4th at 1405 (BBB arbitration rules not attached to contract); *compare, Hubbert,* 359 Ill.App.3d at 980(2005) (arbitration clause includes, "available via the internet at http://www.arb-forum.com") |
| No link to or disclosure of the costs of any ICC arbitration | Linden could have linked to the ICC cost calculator so that a consumer could at least attempt to identify the costs associated with such an arbitration. | *compare, id.* (arbitration clause includes, "available via the internet at http://www.arb-forum.com") |

B.   **THE ARBITRATION IS SUBSTANTIVELY UNCONSCIONABLE**

As previously set forth, the arbitration agreement is substantively unconscionable. At oral argument, Defendants raised the prospect of attempting to have this Court "blue line" the arbitration agreement to remove the substantively unconscionable provisions. However, pursuant to California law, "blue lining" an arbitration agreement permeated with unconscionability is not permitted. As the California courts hold, if an arbitration provision:

PITDMS 38816v.4

…is so permeated by substantive unconscionability that it cannot be cured by severance or any other action short of rewriting the contract, [and] multiple defects indicate a systematic effort to impose arbitration on [claimant], not simply as an alternative to litigation, but as an inferior forum that works to [stronger party's] advantage… there is simply no single provision [a court] can strike or restrict in order to remove the unconscionable taint from the agreement… California Civil Code section 1670.5 does not grant [courts] the discretion to reform or modify the arbitration provision through augmentation and neither does the FAA. *Nagrampa,* 469 F.3d at 1293.

The arbitration clause before this Court is simply not one where a single term could be "stricken" to make it conscionable. Like the procedural unconscionability analysis above, every time Defendant Linden had a choice, it chose to impose the more unconscionable term upon consumers. This is not a case where the Court could simply strike one part of the "arbitration agreement", rather it would have to re-write the entire agreement, something forbidden by California law. This Court is being asked by Defendants who drafted the arbitration and forum selection clauses, in essence, to re-write the totality of the arbitration agreement after-the-fact to make what was created as unconscionable, conscionable. Indeed, the following examines the substantive unconscionability that would have to be re-written:

| Defendant Linden's Actions | What Linden could have done / what the Court would have to re-write | Court Authority |
|---|---|---|
| Linden chose cost sharing between it and consumers. | Linden could have agreed, up front, to pay all costs of the arbitration but did not do so. | *Ting,* 182 F.Supp.2d at 934 ("the arbitration agreement or arbitration process cannot generally require the [plaintiff] to bear any type of expense that [she] would not be required to bear if [she] were free to bring the action in court."(*citing Armendariz,* 24 Cal.App.4th at 109-111); *see also, Gutierrez,* 114 Cal.App.4th |

| Defendant Linden's Actions | What Linden could have done / what the Court would have to re-write | Court Authority |
|---|---|---|
| | | at 82 ("consumers may challenge a predispute arbitration clause as unconscionable if the fees required to initiate the process are unaffordable and the agreement fails to provide the consumer an effective opportunity to seek a fee waiver."); *Ting*, 319 F.3d at 1151 ("Here, the scheme is unconscionable because it imposes on some consumers costs greater than those a complainant would bear if he or she would file the same complaint in court.") |
| Linden chose to select three arbitrators. | Linden could have chosen to select a single arbitrator, rather than three to hear the dispute which would have greatly reduced the costs. | *Boghos*, 36 Cal.4th 495, 509 (remanding for consideration of conscionability arbitration clause that provided for potentially three arbitrators) |
| Linden chose the ICC's regular, commercial rules – an international body specializing in international commercial disputes. | Linden could have selected the rules of the American Arbitration Association ("AAA") or selected alternative rules available through the ICC to reduce the costs. | *see e.g., Comb*, 218 F.Supp.2d at 1176 (incorporation of AAA 'commercial' procedures as opposed to 'consumer' procedures for arbitration held as unconscionable attempt to insulate company from any meaningful challenge); *Harper* Cal.App.4th at 1405 (2003) (reference to restrictive Uniform Rules for Better Business Bureau Arbitration held unconscionable). |

PITDMS 38816v.4

| Defendant Linden's Actions | What Linden could have done / what the Court would have to re-write | Court Authority |
|---|---|---|
| Linden could have chosen those small claim rules that would have reduced the time and expense to a consumer | Linden chose none of the rules and, presumably, this Court would have to go through such rules to determine which it should apply. | *Comb,* 218 F.Supp.2d at 1176 (reference to 'commercial' procedures rather than smaller, less-expensive 'consumer' procedures held unconscionable) |
| Linden imposed confidentiality as set forth in the ICC Rules | Linden could have chosen to make the arbitration non-confidential. | *Ting,* 182 F.Supp.2d at 933 (holding confidentiality clause in consumer contract unconscionable); Ting, 319 F.3d at 1152 ("district court did not err in finding the secrecy provision unconscionable.") |
| Linden chose to have the venue in San Francisco, CA, its back yard | Linden could have chosen the forum most convenient to the consumer. | *Aral v. Earthlink, Inc.,* 134 Cal.App.4th 544, 561 (2005) ("a forum selection clause that requires a consumer to travel 2,000 miles to recover a small sum is not reasonable...") |

### III.   THE ARBITRATION AGREEMENT IS AN UNCONSCIONABLE ATTEMPT TO ELIMINATE LAWSUITS AND SHOULD NOT BE ENFORCED.

As set forth herein and in its initial brief to this Court, the arbitration "agreement" is an unconscionable attempt by Defendants to eliminate lawsuits and should not be enforced. Plaintiff will not reiterate its prior arguments but to state that the *Comb v. Paypal* case is instructive with regard to looking at the intent of the agreement. 218 F.Supp.2d 1165. As set forth in the charts above and herein, at every opportunity, Defendant Linden chose the route of unconscionability. Despite clear authority in federal

PITDMS 38816v.4

courts and in California providing direction to create enforceable and conscionable forum selection and arbitration clauses, Defendant Linden chose instead to draft one-sided and oppressive clauses. The design, as evidenced in this case, discloses that Defendant Linden is, like Paypal, trying to insulate itself from lawsuits. Further, Defendant Linden did so by burying the clauses in fine print when it could very easily (had it so intended), highlighted and brought them to the attention of consumers. Linden refused to do so and, as such, the arbitration and forum selection clauses are unconcsionable and should not be enforced, nor augmented by this Court.

### IV.   PLAINTIFF WILL BE OUT OF COURT IF THIS COURT GRANTS TO THE MOTION TO COMPEL ARBITRATION.

Plaintiff has provided under seal, pursuant to this Court's February 9, 2007 order, a statement of his financial affairs. As set forth therein, Plaintiff will be out of court if the arbitration and forum selection clauses are deemed enforceable and not unconscionable. Plaintiff incorporates those sealed documents as if more fully set forth at length herein. Needless to say, Plaintiff should not be out of court because of the unconscionable arbitration clause nor should he have to chose to limit his claims to injunctive relief in an effort to obtain some type of relief and avoid the implication of the unconscionable arbitration clause.

As promised to this Court, however, Plaintiff has attached hereto a Proposed Amended Complaint seeking only injunctive relief. See, Proposed Amended Complaint and pertinent exhibits, attached collectively hereto as Exhibit "1". It should be noted by this Court that Plaintiff simply cannot afford to be out of court and denied relief. If left with no alternative, he must file simply for injunctive relief.

PITDMS 38816v.4

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion to Compel Arbitration in San Francisco, CA as a matter of law and retain jurisdiction of the entirety of this case.

                                                Respectfully submitted,

Date: February 23, 2007                WHITE AND WILLIAMS, LLP

                                                By <u>JAA7341</u>
                                                      Jason A. Archinaco, Esq.
                                                      Pa ID 76691
                                                      Christopher Ballod, Esq.
                                                      PA ID 89462
                                                      The Frick Building, Suite 1001
                                                      437 Grant Street
                                                      Pittsburgh, PA 15219
                                                      (412) 566-3520
                                                      *Counsel for Plaintiff*

PITDMS 38816v.4