## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA
## PHILADELPHIA

MARC BRAGG, Esq., an individual,    CIVIL DIVISION

           Plaintiff,    No. 06-cv-4925

      v.    **JUDGE EDUARDO ROBRENO**

LINDEN RESEARCH, INC., a corporation,
and PHILIP ROSEDALE, an individual,

           Defendants.

---

### BRIEF IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS PURSUANT TO RULE 12 (b) (6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND/OR 12 (b) (7) FOR FAILURE TO JOIN AN INDISPENSABLE PARTY AND MOTION FOR MORE DEFINITE STATEMENT PURSUANT TO RULE 12 (e)

AND NOW, comes Plaintiff, Marc Bragg, Esq. ("Plaintiff"), by and through counsel, Jason A. Archinaco, Esq., and the law firm of WHITE AND WILLIAMS, LLP, and files the following Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, Rule 12(b)(7) for failure to join an indispensable party and for a more definite statement pursuant to Rule 12(e).

## I.   **PROCEDURAL HISTORY**

1.    On or about May 2, 2006, Plaintiff initially filed his claims in magistrate court.

2.    Defendants stated to this Court that they were prepared to defend the magistrate lawsuit, but that Plaintiff dismissed the claim without prejudice the day before the hearing. (Tr. 93, Hearing on Motion to Dismiss, 2-5-2007).

3.    No counterclaims were ever filed against Plaintiff in connection with the magistrate action by Defendants' former counsel.

Dockets.Justia.com

4.  Plaintiff filed a new Complaint on or about October 4, 2006, in Pennsylvania State Court.

5.  On or about November 7, 2006, the Defendants removed the case to this Court.

6.  Shortly thereafter, on or about November 14, 2006, Defendants filed a Motion to Compel Arbitration (seeking to transfer the case to arbitration in San Francisco, California) and Defendant Rosedale filed a Motion to Dismiss for Lack of Personal Jurisdiction.

7.  On or about May 30, 2007, this Court denied Defendants' Motion to Compel Arbitration and Defendant Rosedale's Motion to Dismiss for Lack of Personal Jurisdiction and rendered a forty-six (46) page opinion and ruling. (Docket 51).

8.  On or about June 8, 2007, Defendants' former counsel informed Plaintiff's counsel that an extension was needed to Answer the Complaint because Defendants would likely be filing an appeal.  See, Docket #55, Reply in Opposition to Defendants' Motion for Extension of Time to Respond to Complaint, p. 2, ¶ 6.  No mention was made of any new counsel entering their appearance or of any alleged counterclaims. *Id.* at ¶ 9-10.

9.  On June 11, 2007, Plaintiff's counsel was informed that new counsel had been hired. *Id.* at ¶ 13.  For the first time, Plaintiff's counsel was informed that the extension was necessary not only to answer the complaint, but now to file counterclaims. *Id.*

10.  On or about June 11, 2007, Plaintiff filed his opposition to Defendants' Motions for Extension of Time.  Plaintiff also brought to the attention of the Court statements made by Defendant Rosedale with regard to "price to pay" of filing a

PITDMS 43916v.1

lawsuit regarding virtual property.   *Id.* at ¶ 15 (Defendant Rosedale: "At what point in a dispute are you willing to bring your identity into it, and **what's the price to you of that?   I'd say for a lot of people, it would be quite high.**")(emphasis added).

11.     On June 28, 2007, Defendants filed an Answer that, in legalese, stunningly confesses to the massive fraud being perpetrated on consumers with regard to the virtual land ownership lie.   See, Answer, ¶ 48 ("…Defendants aver that the references to 'selling land free and clear' and selling 'title' are metaphors or analogies to the concepts of ownership of real property, as what is 'owned' with respect to 'virtual land' in Second Life is in fact a license to computing resources…").

12.     However, in addition to Answering the Complaint, Defendants, having failed to obtain a dismissal of this case with their unconscionable arbitration clause, held true to Defendant Rosedale's promise of a "price to pay" and attempted to make out six separate counterclaims against Plaintiff, the true purpose of which is to harass and threaten Plaintiff and to send a message to consumers about "what will happen" if you sue Defendants.

13.     The day after filing their frivolous and baseless counterclaims, on June 29, 2007, Defendant Linden posted citations to portions of their Answer and Counterclaim on their website.   See, blog.secondlife.com printout dated June 29, 2007, and titled "Linden Lab Files Response to Complaint," attached hereto as Exhibit "1." In the citations, Robin Linden on behalf of Defendants refer to Plaintiff repeatedly

3

as having "confederates," that he committed "computer fraud," engaged in a "scheme" and a "fraudulent scheme to obtain money." *Id.*

14.    Nowhere, however, did Defendants post to their website that they now admit that their clear public representation of "own," "ownership," and "sold the title" to land were, in actuality, "metaphors" (metaphor is evidently a "metaphor" for lie), nor did they post a link to the entire Answer and Counter Claim, instead intentionally choosing to cite to language limited to portraying Plaintiff as a criminal. *Id.*

15.    As previously set forth herein and in the pleadings filed with this Court, the latest filing is part of a larger continuing strategy by Defendants, having failed in making this litigation as costly as possible by transferring this case to arbitration in San Francisco, to harm Plaintiff as much as possible through alternative means by: (1) filing frivolous counterclaims under statutes designed to prevent harm to computers from viruses and worms, (2) a statute designed to prevent harm to consumers from fraudulent business practices and, (3) publishing claims to Defendant Linden's website that Plaintiff engaged in "computer fraud" and a "scheme to obtain money" before this Court even had an opportunity to see the pleadings or rule. See, Exhibit "1."

16.    As set forth herein, the counterclaims lack merit and should be dismissed with prejudice. Defendants' attempts to implement Defendant Rosedale's "pay the price" pre-designed plan, like their design to conceal the oppressive arbitration provision in their TOS, should be rejected.

4

## II.   SUMMARY OF THE FACTS ALLEGED BY DEFENDANT LINDEN RELEVANT TO THE MOTION TO DISMISS.

### A.   LAND AUCTIONS GENERALLY.

Defendant Linden hosts virtual land auctions on the World Wide Web ("internet") on its website. Answer, ¶ 91-2, Counterclaim, ¶ 18. Contrary to its public representations and those on its website, Defendant Linden now claims that it does not actually "sell virtual land." Answer, ¶ 48. Indeed, when Defendant Rosedale stated that "We started selling land free and clear, and we sold the title, and we made it extremely clear that we were not the owner of the virtual property," he did not really mean what he said, he did not intend those simple clear statements to reflect the truth of what consumers were being told they were buying. In essence, he lied. *See Id*. Defendant Rosedale most recent statement that he was instead using "metaphors" is disingenuous by definition. Defendants were, in actuality, intending not to permit any consumer to own anything despite their bold worldwide statements to the contrary. Defendants were openly inducing consumers around the world to buy virtual land upon the false premise that the consumers would "own virtual land." Secretly, however, Defendants intended to only provide consumers with "a license in computing resources." Answer, ¶ 48. Defendants' malicious intent to defraud all consumers is undeniably proven by the complete lack of any reference in the TOS (Exhibit "A" to Defendants' Answer) to "land," "auctions," "owning land" or any definitions provided to the unambiguous words "own" and "ownership" which were publicly displayed. Defendants' TOS doesn't even infer or suggest that the words "own," "ownership," or "own virtual land" should have any meaning other than their plain meaning as utilized by Defendants to induce thousands (if not hundreds of thousands) of defrauded consumers out of their money.

Nowhere did Defendants ever refer to the words "own," "ownership," or "virtual land" as a license until submitting Paragraph 48 to the Court.

Defendant Linden's virtual land auctions would have a minimum price set for each parcel of virtual land as set by Defendant Linden. Counterclaim,¶ 18. Defendant Linden alleges that it set all prices for a "sim"[1] of virtual land "uniformly" at $1000, Counterclaim, ¶ 19, although later it admits (in legalese) that it set land prices on some virtual land auction pages for a minimum price of $1. *Id.* at ¶ 35.

Virtual land auctions would run for forty eight (48) hours, a predetermined time set by Defendant Linden. Answer, ¶ 99. The forty eight hour clock for a virtual land auction would not begin until a consumer placed a bid on a piece of virtual land at Linden's publicly available website. Counterclaim, ¶ 18. Defendant Linden declared the highest bidder at the end of an auction as the winner of the virtual land auction. Answer, ¶ 99. The winning bidder was then charged by Defendant Linden for the virtual land purchase. Answer, ¶ 100.

## B.    THE ALLEGED LAND AUCTION 'SCHEME' / COMPUTER FRAUD.

In April, 2006, at least one other consumer (referred to as "M.S." by Defendant Linden) had obtained multiple pieces of virtual land for a low price, i.e., $1 prior to Plaintiff ever bidding on low priced land. Counterclaim, ¶¶ 28-32. That consumer (M.S.) had also bid on a number of other parcels of land and was in the process of winning the auctions for $1. *Id.* at ¶ 32. Other consumers were bidding on such land. *Id.* at ¶ 38-40. Defendant does not (and cannot) allege that Plaintiff participated or was even

---

[1] Defendant Linden defines the word "sim" as a mainland parcel offered by Linden for auction, also known as a "region." Counterclaim ¶19.

aware of the prior auctions "M.S." bid on until Defendant Linden declared M.S. the winner of such auctions.

Plaintiff saw multiple auctions that had concluded for low priced land. *Id*. at ¶¶ 30-1. Plaintiff inquired of M.S. how M.S. had obtained multiple "sims" for $1 in auctions that had already concluded. Counterclaim, ¶¶ 28-31. Defendant Linden does not allege that it did anything whatsoever to prevent such auctions from concluding nor from posting any announcement that such auctions should not have occurred.

Plaintiff was ultimately informed by M.S. where on the internet Plaintiff could locate the auction pages for "sim" auctions as low as $1. *Id*. at ¶ 34. Defendants have refused to plead in any detail or with clarity how the auction pages that Defendant Linden placed on the internet were located, and indeed, have refused to attach any entire chat log.[2] Defendants failed to plead that the land auctions had any type of password protection security device, or any notice whatsoever that access to the auction pages was not authorized, any mechanism of any sort to preclude the public or Defendant Linden's registered users from freely accessing such pages. Defendant Linden has admitted (in legalese), that such internet pages could be accessed by anyone in the world by simply typing a URL address in any internet browser, which they plead is what Plaintiff did. *Id*. at 65. ("Bragg accessed these unpublished pages by synthesizing URLs and transmitting them over the internet . . . .").[3]

---

[2] As will be set forth at length herein, Defendant Linden has intentionally not attached any entire chat log in an attempt to avoid court review and simply to survive a Rule 12(b)(6) Motion. However, even though such attempts are improper, Defendant Linden's counterclaims still fail for numerous reasons.

[3] This practice is known as "backwards browsing." California Highway Patrol, Governor's Office Computer System Investigation Administrative Report, February 1, 2007, p. 5 (of fax). "Backwards browsing" is a common practice in the media. *Id*. Although Defendant Linden attempts to dress up its claims by using the word "synthesize," synthesize simply means "to bring together into a whole by synthesis" with synthesis defined, "the putting together of parts or elements so as to form a whole." Webster's College Dictionary, 4th ed.

Defendant Linden intentionally does not explicitly define or explain what it means by the word "synthesize," and does not plead its auction process in sufficient detail, because if it did, it would have to explain to the Court that Plaintiff obtained the auction I.D. number for the land he purchased from Defendant Linden as it publicly published those auction I.D. numbers on the virtual land itself. The auction I.D. numbers assigned to a parcel of virtual land by Defendant Linden could be obtained by Plaintiff and all others directly from the parcels of light blue / purple virtual land[4] if anyone viewed the virtual land in Second Life (as Plaintiff truly did). Equally, however, Defendant does not and cannot plead that Plaintiff did anything whatsoever to "create" any land auction I.D. numbers.

Nowhere does Defendant Linden plead (nor can it), that the internet page designed, placed and published by Defendant Linden on the internet had any password security feature that would prohibit access from anyone in the world using the internet. Nor has Defendant Linden alleged (nor can it), that Plaintiff did anything at all to circumvent any non-existent password or other protected security feature of Defendant Linden.

## C.    THE TAESSOT SIM.

Defendant Linden pleads that another consumer (referred to as D.S. by Defendant Linden), on April 29, 2006, placed a bid on a piece of virtual land known as Taesot by bidding $0 for the virtual land. Counterclaim, ¶ 45.[5] The following day, on April 30, Plaintiff bid on the Taesot land, setting a maximum bid price of $5 for the parcel. *Id.* at

---

[4] Defendant Linden pleads that land "for auction" and "to be up for auction" was all color coded the same "in-world." Answer, ¶ 92, 95.

[5] Although Defendant Linden admits that it placed a US$1 minimum on the virtual land auctions, Counterclaim, ¶ 35, Defendant Linden does not allege why it set the minimum price at US$1.

43. Defendant Linden does not plead nor explain why it set the minimum price on Taesot as it did, at $0. Nowhere does Defendant Linden allege (nor can it), that Plaintiff created the auction I.D. for the Taesot sim, the internet page for the Taesot virtual land auction nor set the minimum price on the Taesot internet auction. Defendant Linden has not (and cannot) allege that Plaintiff circumvented any non-existent password security feature of Defendant Linden in bidding on the Taesot sim.

Defendant Linden specifically pleads factual allegations about the Taesot internet virtual land auction, but intentionally and impermissibly has not attached the documents underlying such allegations, including the numerous e-mail sent **to** Plaintiff by Defendant Linden during the course of the Taesot virtual land auction. For example, at 2:31 p.m. on April 30, 2006, Defendant Linden e-mailed Plaintiff all the details of the Taesot virtual land auction as follows:

```
From:        "Second Life" <support@secondlife.com>
To:          <msb@lawy-ers.com>
Sent:        Sunday, April 30, 2006, 2:31 p.m.
Subject:     Second Life Auction: Bid Confirmation
```

You are currently the high bidder for the following Second Life auction.

```
Item Name:    Taesot 001 (128, 128) 60592 m 2
Item Number: 0026198533
Your current bid:     US$5
Your maximum bid:   US$25.00
End date:      May-01-2006 13:05:15 PDT
```

View the item your bidding on:
http://secondlife.com/auctions/detail.php?id=0026198533

See, e-mail, attached hereto as Exhibit "2."[6]

---

[6] One minute later, Defendant Linden sent Plaintiff another e-mail in the same form, except noting that Plaintiff's current bid was $25 and Plaintiff's maximum bid was $30. See, e-mail, attached hereto as Exhibit "3."

9

The following day, Defendant Linden e-mailed Plaintiff again, this time to inform him that **"You've been outbid!"** (emphasis added) by another consumer.     Defendant Linden identifies the consumer who outbid Plaintiff as S.S.  Counterclaim, ¶ 43.

> From:          "Second Life" <support@secondlife.com>
> To:            <msb@lawy-ers.com>
> Sent:          Monday, May 1, 2006, 4:00 p.m.
> Subject:       Second Life Auction: You've been outbid!
>
> You have been outbid on the following Second Life auction:
>
> Auction #: 0026198533
> Auction: Taesot 001 (128, 128) 60592 m 2
> High Bid: US$30.00
>
> http://secondlife.com/auctions/detail.php?id=0026198533

See, e-mail, attached hereto as Exhibit "4."

Four minutes later, Defendant Linden again e-mailed Plaintiff to inform him that he was again the high bidder and that his current bid was US$300.01 with his maximum bid being US$450.  See, e-mail, attached hereto as Exhibit "5."  Plaintiff won the auction with the high bid of US$300.01.  Counterclaim, ¶ 43.  Although Defendant Linden refers to the confirmation that Plaintiff won the auction, it again intentionally refused to attach the e-mail to the Counterclaim. Counterclaim, ¶ 48.  Shortly after the auction, Defendant Linden (from a different Linden e-mail address than that previously used), sent an e-mail to Plaintiff congratulating him on winning the auction.  See, e-mail attached hereto as Exhibit "6."  The e-mail provided:

> From:          <land@secondlife.com>
> To:            <msb@lawy-ers.com>
> Sent:          Monday, May 1, 2006, 4:05 p.m.
> Subject:       Second Life Auction: Item Won! Taesot 001 (128, 128) 60592 m2

**Congratulations Marc Woebegone!**

PITDMS 43916v.1

You have agreed to purchase the following item from Second Life:

Item Name:    Taesot 001 (128, 128) 60592 m 2
Item Number: 0026198533
Winning Bid:  $US300

Please go to the below link and pay for your auction:

http://secondlife.com/auctions/detail.php?id=0026198533

You will need to go in-world and claim the land within two days.    If you encounter a problem, email land@secondlife.com.

Please note: be sure to have enough land tier available before claiming your land, or you will be prompted to tier-up.

Linden Land and the Second Life Team
http://www.secondlife.com

See, e-mail, attached hereto as Exhibit "6" (emphasis added).    Although the face of the e-mail demonstrates that affirmative steps had to be taken to bill Plaintiff, Defendant Linden pleads (inconsistent with the truth), that Plaintiff was "automatically" charged for the virtual land.    Counterclaim, ¶ 48.    Defendant Linden admits that it charged Plaintiff US$300.01 for the Taesot sim.    *Id*.    Although the e-mail stated that Plaintiff was required to go "in-world" to claim the land, Defendant Linden does not specifically plead that Plaintiff did so, because it cannot as Plaintiff apparently never took possession of the Taesot sim.    See, e.g., Counterclaim, ¶ 48.    Defendant Linden does not plead that the Taesot sim was ever delivered to Plaintiff.

Although it does not plead with any specificity when, Defendant Linden pleads that its personnel "noticed" "at about the time" land auction sales of less than $1000 were occurring.    Counterclaim, ¶ 50.[7]    Defendant Linden does not plead why it did not halt the

---

[7] For example, although Defendant Linden pleads its "discovery," it intentionally does not plead that Plaintiff sent Defendant Linden an e-mail on April 29, 2006 at 8:40 a.m. with the subject "Sims for $1.00." See, e-mail, attached hereto as Exhibit "7." Plaintiff stated the following to Defendant Linden well in

auctions even though Defendant Linden was aware of them, nor why it went ahead and billed Plaintiff for the purchase. While Defendant Linden pleads that Plaintiff's account was put on hold and the Taesot sim taken back, Counterclaim, ¶ 49-50, Defendant Linden intentionally avoided attaching the e-mail underlying any such allegations. Just over two (2) hours following the close of the Taesot sim auction and after Plaintiff had been billed by Defendant Linden, Jack Linden of Defendant Linden wrote to Plaintiff at 6:16 p.m.:

> Jack Linden:
>
> Hi there Marc. Your recent auction appears to have been the result of an exploit. The land will therefore be taken back and your money refunded.

See, e-mail, attached hereto as Exhibit "9." Nowhere did Defendant Linden inform Plaintiff that it would be confiscating all his virtual assets, land and money nor was any claim made that Plaintiff had engaged in any "computer fraud." Indeed, to the contrary, Defendant Linden merely informed Plaintiff that the "offense" was of such a small nature that the land would be taken back and his money refunded. Nowhere was any contemporaneous claim made that Plaintiff had caused any "damages" to Defendant Linden. While Defendant Linden plead that it took the Taesot sim from Plaintiff, Counterclaim, ¶ 52, Defendant Linden failed to plead that it returned Plaintiff his US$300.01 (because it knows that it refused to do so).

Despite being in possession of their own e-mail and relying on the "facts" underlying such e-mail, Defendant Linden intentionally chose not to attach the e-mail to their Counterclaim which disclose, for example, that the Taesot sim transaction was

---

advance of the close of the Taesot sim: "Can you please tell me why the following sims were sold at auction the same person for only $1.00; and, how I would go abut buying sims at auction for $1.00. Also, why those sims did not show up at auction." *Id.* Shortly thereafter, Defendant Linden sent an "AutoReply" e-mail acknowledging receipt of Plaintiff's e-mail. See, e-mail, attached hereto as Exhibit "8."

"undone" in approximately 2 hours (although Defendant Linden refused to refund Plaintiff's money as it stated it would).

**III.    SUMMARY OF THE ARGUMENT**

Dangerous like a cornered rat is a metaphor.  The metaphor means, in essence, that a cornered wounded animal is more dangerous than one that does not feel threatened and maintains its health and ability to run away.  Once hurt and cornered, the wounded animal loses much of its sense of logic and reasoning, and is left only with an inherent impulse to attack in order to defend.

Dangerous like a cornered rat is a metaphor that applies to Defendants Linden and Rosedale.  Defendants Linden and Rosedale were wounded by this Court's proper ruling setting aside the unconscionable arbitration provision contained in Linden's Terms of Service Agreement (hereinafter "TOS").  Defendant Rosedale was wounded when this Court properly understood that his press campaigns were an intrinsic part of Linden's sales pitch to obtain customers under the false pretense that when they purchased land from Defendant Linden in Second Life, they obtained ownership rights in the virtual property.  Left with little in the way of substantive arguments to overcome their wrongful taking of Plaintiff Bragg's property and the massive fraud being perpetrated on consumers, Defendants Linden and Rosedale have mounted a two-pronged attack.

First, they have thrown out the English language and claim that they cannot and will not be tethered to their public statements formulated to obtain customers through fraud.  Everything that has been improperly and fraudulently stated to the public has now been claimed to be a "metaphor."  What was once "We started selling land free and clear, and we sold the title, and we made it extremely clear that we were not the owner of the

virtual property," has been cast as a "metaphor" for "license to computing resources." Answer, ¶ 48. How can this Court hold Defendants to their words when they didn't say the words they meant?

Dangerous like a cornered rat is a metaphor.

Saying "own virtual land" and "transfer title" when you really mean a "license to computing resources" is a lie, not a "metaphor."

Second, Defendant Linden has made **six** counterclaims in order to lash out at Plaintiff Bragg for bringing valid claims against it and Defendant Rosedale and bringing to a head Defendants' false and misleading statements to consumers. Three of the counterclaims have no basis in law nor fact, and were clearly brought for the improper purpose of perpetuating Defendant Linden and Rosedale's fraud on the consuming public. Marc Bragg is a criminal, they say, not just to this Court, but also on their website and to anyone who will listen. Perhaps in homage to ancient history, if you cannot kill the message, simply try to kill the messenger.

None of the criminal statutes plead were enacted to apply to these factual circumstances. However, it is of little import to Defendant Linden that these charges will ultimately not "stick." The charges have been placed in a formal pleading that Defendant Linden selectively posted to its website the day after filing them.[8]

In conjunction, if Plaintiff Bragg is scared off of his legitimate claims, all the better. Further, if this Court is bogged down in wading through motions, case law, and

---

[8] The selective posting of the Answer on Linden's website waives any claims to judicial immunity Linden and Rosedale may have had. *See Bochetto v. Gibson*, 580 Pa. 245, 860 A.2d 67 (2004) (holding party that posted *full* complaint was not entitled to immunity due to [vexatious purpose of posting]). By choosing phrases and portions of the answer, they have in fact re-written the answer on the website so that it is not the same content. In other words, the posting is not the answer and thus is not entitled to judicial immunity.

14

irrelevant arguments, then Defendants will continue their quest to perpetrate a grand fraud on the consuming public with temporary impunity.

Plaintiff's counsel will presently debunk Defendant Linden's baseless claims. There is no question, however, that the mere bringing of such claims must result in sanctions applied to Defendant Linden in an amount necessary to offset the costs Plaintiff incurred in order to illustrate to this Court the valid purposes of these criminal statutes. Accordingly, all of Defendants' improper claims found in Counts 1, 2, and 5 of the Counterclaims should be dismissed with prejudice.


## IV.    **MOTION TO DISMISS STANDARD**

In deciding a motion to dismiss, a court must accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *Carino v. Stefan,* 376 F.3d 156, 159 (3d Cir. 2004) (dismissing claims against union members/employees when union was defendant in collective bargaining agreement claim). The court may grant such a motion only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957)).

Although the court must take all well-pleaded allegations in the complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932 (1986). "General, conclusory allegations need not be credited, however, when they are belied by more specific allegations of the complaint." *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085 (2d Cir. 1995) (*citing Jenkins v. S&A Chaissan & Sons, Inc.,* 449 F.Supp. 216, 227 (S.D.N.Y.

1978); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1363, at 464-65 (2d ed. 1990).

In addition to the facts set forth in the counterclaim, the court may also consider documents attached thereto and incorporated by reference therein, *Automated Salvage Transp., Inc. v. Wheelabrator Envtl., Sys., Inc.,* 155 F.3d 59, 67 (2d Cir. 1998), matters of public record such as case law and statutes, *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir. 1998), and matters of judicial notice. *See Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir. 1993); *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir. 1991). *Pension Ben. Guar. Corp. v. White Consol. Inds. Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993).

Courts may consider matters of public record, exhibits attached to the complaint, and undisputedly authentic documents attached to a motion to dismiss. *Id.* (cited in *The Delaware Nation v. Commonwealth of Pennsylvania,* 446 F.3d 410 (3rd Cir. 2006); *see also In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997) (a court may consider a "document integral or explicitly relied upon in the complaint.") As such, Plaintiff has attached copies of the criminal statutes and publicly available legislative histories/interpretations to further illustrate the wholly inappropriate inclusion of these claims in the answer/counterclaim. Further, as discussed above, Plaintiff has also attached copies of those electronic documents in his possession generated by Defendant Linden and relied upon in the Counterclaims.[9]

---

[9] Defendant is in possession of the chat logs that it cites but refused to attach to the Counterclaim.

A.    **THE COURT HAS DISCRETION TO ADDRESS AND CONSIDER DOCUMENTS THAT DEFENDANT LINDEN RELIES UPON AS PART OF ITS CLAIMS BUT INTENTIONALLY FAILED TO ATTACH TO THE COUNTERCLAIM.**

Generally speaking, a trial court has discretion to address evidence outside the complaint when ruling on a motion to dismiss. *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992) (citing 5A Wright & Miller, Fed. Prac. & Proc. § 1366, at 491 (1990)). Further, as one court has explained, simply attaching exhibits to a complaint does not necessarily make that complaint amendable only to summary judgment or foreclose a court from considering those exhibits in it Rule 12 (b)(6) ruling:

> As a general rule, the court may only consider the pleading which is attacked by an FRCP 12(b)(6) motion in determining its sufficiency. The court is not permitted to look at matters outside the record; if such matters are considered, the FRCP 12(b)(6) motion to dismiss is, by express terms of FRCP 12(b), converted into a motion for summary judgment. However, the court may consider documents which are *attached* to or submitted with the complaint, as well as legal arguments presented in memorandums or briefs and arguments of counsel. Further, documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading may be considered. Documents that the defendant attaches to the motion to dismiss *are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim;* as such, they may be considered by the court.

*Pryor v. National Collegiate Athletic Assn.*, 288 F.3d 548, 560 (3d Cir. 2002)(emphasis in the original). The rationale for these exceptions is that "the primary problem raised by looking to documents outside the complaint-lack of notice to the plaintiff-is dissipated '[w]here plaintiff has actual notice… and has relied upon these documents in framing the complaint.'" *See Burlington*, 114 F.3d at 1426 (quoting *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993). As the Third Circuit held in *Pension Ben. Guar. Corp. v. White Consol. Inds. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993*)*, "[w]e now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a

17

motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."

The rationale articulated above is particularly important in the current case as Defendant Linden, although relying on documents to formulate its alleged claims, intentionally did not attach such documents to the Counterclaim. Indeed, it appears that Defendant Linden did not do so in an effort to avoid an adverse Rule 12(b)(6) ruling. Accordingly, this Court should properly consider the undeniably authentic exhibits attached to Plaintiff's Rule 12(b)(6) Motion and Brief given that Defendant Linden's claims are necessarily "founded" upon such documents.

Further, to the extent that this Court does not grant Plaintiff's Rule 12(b)(6) Motion outright, it should grant Plaintiff's Rule 12(e) Motion for a More Definitive Statement and require that Defendant Linden attach to its Counterclaim the documents upon which it relies, including e-mail and **complete,** unedited versions of the alleged chat logs.

V.    **DEFENDANT LINDEN HAS FAILED TO STATE A CLAIM UNDER CALIFORNIA PENAL CODE § 502 AS 'BACKWARDS BROWSING', AS A MATTER OF LAW, DOES NOT VIOLATE THE STATUTE PARTICULARLY WHERE DEFENDANT HAS FAILED TO ALLEGE THAT PLAINTIFF CIRCUMVENTED ANY PASSWORD PROTECTION OR OTHER SECURITY FEATURES.**

Defendant Linden has failed to state a claim under California Penal Code § 502. Defendant Linden has claimed in its counterclaim that Plaintiff violated sections 502(c)(1), (4) and (6). Those sections provide:

(c)     Except as provided in subdivision (h), any person who commits any of the following acts is guilty of a public offense:

(1)     Knowingly accesses and **without permission** alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.

(4)     Knowingly accesses and **without permission** adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network.

(6)     Knowingly and **without permission** provides or assists in providing a means of accessing a computer, computer system, or computer network in violation of this section.

(emphasis added).    Subsection (e)(1) provides for a civil remedy under the act for "damages or loss . . . for compensatory damages . . . Compensatory damages shall include any expenditure reasonably and necessarily incurred by the owner . . . to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." As will be set forth herein, as a matter of law, accessing a webpage placed on the internet cannot constitute a violation of California Penal Code § 502 particularly where no password protection or any other security devices were circumvented.

A.     **DEFENDANT LINDEN HAS NOT AND CANNOT PLEAD THAT ANY ACCESS TO WEBPAGES THEY PLACED ON THE WORLD WIDE WEB, AVAILABLE TO THE WORLD AND ACCESSED BY NUMEROUS CONSUMERS WAS 'WITHOUT PERMISSION' AS IS REQUIRED BY THE ACT.**

Defendant placed web pages on the internet without any password protection or security features. Each of the subsections enumerated by Defendant Linden contains the

19

requirement that the alleged "hacking" occur "without permission."    See, Cal. Penal Code 502(c)(1), (4) and (6).  The case authority with regard to the Act is scant.  However, the most recent administrative pronouncement by both the California Highway Patrol (who has jurisdiction in California to investigate such alleged violations) and the Attorney General's office of California provides compelling support for the dismissal of Defendant Linden's claims pursuant to California Penal Code § 502 as those agencies interpret the statute to require that: (1) there only be one person who would be able to access the site in the manner alleged, and (2) the alleged violator's access circumvented some security such as password protected files.  Although not binding on this Court, the California Highway Patrol's report and the opinion of the California Attorney General's Office are both instructive.

In or about September, 2006, a political opponent of California Governor Arnold Schwarzenegger used "backwards browsing" to locate an mp3 file that contained audio with inflammatory remarks made by the Governor.    California Highway Patrol, Governor's Office Computer System Investigation Administrative Report, (February 1, 2007), p. 5 (of fax), attached hereto as Exhibit "10."  The file was then leaked to the Los Angeles Times newspaper.  *Id*.  The Governor's site itself had a page that required a user name and password and stated, in relevant part, that: "THIS SYSTEM IS RESTRICTED TO AUTHORIZED USERS FOR AUTHORIZED USE ONLY.  UNAUTHORIZED ACCESS IS STRICTLY PROHIBITED AND MAY BE PUNISHABLE UNDER THE COMPUTER FRAUD AND ABUSE ACT OF 1986 OR OTHER APPLICABLE LAWS."  *Id*. at p. 32 (caps in the original).[10]  Although the warning existed on the site generally, a person did not necessarily see the warning because the page with the mp3

---

[10] Defendant Linden has not (and cannot) allege that any such "warning" existed in this case.

could be accessed / reached without logging in through the security page. *Id.* at p. 5.

Thus, the file itself was not placed behind such a password protected security feature. *Id.*

The California Highway Patrol concluded as follows:

. . . . access to specific unsecured files on the Governor's website was accomplished by individuals modifying a Uniform Resource Locator (URL). A URL, which is commonly called a web address, is a string of characters conforming to a standardized format and refers to a resource on the Internet by its location. Modifying the URL enabled the individuals to access and download computer files throughout the Governor's webpage. While the system was not originally designed to be accessed in this manner, the modification of the URL in this instance **did not constitute a criminal offense.**

*Id.* at p. 3 (emphasis added). Further, the conclusion of the California Highway Patrol

was reached after consultation with the California Attorney General's office. *Id.* at p. 5.

The Attorney General's (AG) Office was contacted for an opinion on whether a criminal act had occurred. The Deputy AG reiterated that the individuals who accessed the website used the practice of backward browsing. This is a process that is a common practice in the media. Further, there appeared to be no security feature in place which would have prevented an individual from accessing the website through backward browsing.

He indicated that if one additional individual could gain access in a manner similar to the way the subjects gained access, the act would not be considered a crime.

*Id.* at pp. 5-6. The Attorney General's Office's view of the statute turned also on the lack

of security devices that would prohibit "backwards browsing." As the Attorney

General's Office reasoned:

There also appeared to be no security features which would prevent an individual from accessing the website using this method [backwards browsing]. . . . He stated that based on the lack of security features there was no statute to charge.

*Id.* at p. 9; Compare, *People v. Lawton*, 1996, 56 Cal.Rptr.2d. 521, 48 Cal.App.4[th] Supp.

11 (bypassing security to access files found to be violation of statute).

The conduct investigated by the California Highway Patrol is nearly identical to that being alleged by Defendant Linden. Defendant Linden alleges that many different consumers modified (i.e. "typed") a URL to access virtual land auctions by "backwards browsing." Indeed, Defendant Linden admits in its pleading that at least one consumer engaged in the practice prior to Plaintiff and had successfully won several auctions for low priced land. As pled by Defendant Linden, Plaintiff learned of the low priced land auctions simply by viewing information on Defendant Linden's website. Defendant Linden further admits that Plaintiff learned of how to bid on the low priced land from another consumer. Defendant Linden admits (and cannot plead to the contrary), that it, not Plaintiff or anyone else, placed the virtual land auction web pages on the internet. See e.g. Answer ¶¶ 91-93).

Defendant Linden placed the starting price on the virtual land auction and has not and cannot claim that Plaintiff did.[11] Further, Defendant Linden has not (and cannot) plead that it placed any password security feature that would have prohibited "backwards browsing." Further, the Counterclaim is devoid of any claim that Plaintiff created the land auction I.D., as Defendants are completely aware that Defendant Linden created the land auction I.D.

---

[11] Even under the best case scenario for Defendant Linden, an analogous situation would be one where a store mismarked the price on a good and the consumer knowingly purchased the mismarked item. Courts hold that no crime is committed by buying a mismarked item. *United States v. Neff*, 34 M.J. 1195, 1202 (A.F.C.M.R. 1992)("If a retailer negligently mismarks the price on an item and the buyer obtains a "bargain"" as the result of the purchase, this does not establish a duty to return and does not make [the buyer's] failure to return a criminal act."); *United States v. Vorda*, 34 M.J. 725, 727 (N.M.C.M.R. 1991)(no crime of larceny committed where purchaser knowingly buys mismarked item especially where "the inattentiveness or carelessness" of the store employees "placed an incorrect price tag on the box.")

PITDMS 43916v.1

1.    <u>Defendant Linden's charge to Plaintiff for the Taesot sim is conclusive proof that the transaction at issue was "authorized."</u>

Moreover, it is simply stunning that Defendant Linden would actually attempt to advance any argument that there was no "permission" for the Taesot sim transaction particularly given that Defendant Linden charged Plaintiff over US$300 for virtual land it never provided him.  Defendant Linden simply cannot be permitted to now argue that any transaction lacked "permission" or was "unauthorized" particularly given the charges it made to Plaintiff.  Apparently, Defendant Linden, in an effort to advance a frivolous claim against Plaintiff, would like to admit that it committed fraud by charging Plaintiff money for an "unauthorized" transaction.[12]

2.    <u>Defendant Linden's conclusory statements and legal conclusions couched as fact need not be accepted by this Court and do not preclude granting Plaintiff's Motion.</u>

Although Defendant Linden attempts to cast the access to web pages placed by it on the world wide web without any password security features, as some "conspiracy" of "confederates," such are merely legal conclusions and inflammatory rhetoric that have no bearing on this Court's ability to grant the Motion to Dismiss.  See, Counterclaim, ¶¶ 28-45.  Legal conclusions or legal conclusions disguised as facts do not preclude the grant of a Rule 12(b)(6) Motion.  *Papasan*, 478 U.S. at 286.  Defendant Linden has failed to state a claim upon which relief may be granted.  Although Defendant Linden repeatedly makes conclusory statements referencing a "scheme" and "confederates," the facts in the

---

[12] Further, the repeated communications from Defendant Linden to Plaintiff during the course of Defendant Linden's virtual land auction contradicts Defendant Linden's claim that the Taesot auction was "unauthorized."

Answer and Counterclaim, once the inflammatory rhetoric is removed, refute that any claim has been stated pursuant to California Penal Code § 502.

> 3.    <u>Defendant Linden's improper purpose in bringing the "criminal" claim so that it could post defamatory portions of the Answer and Counterclaim on its web site should result in an award of costs to Plaintiff.</u>

The failure to state a claim pursuant to California Penal Code § 502 was not inadvertent. The game plan is obvious. Defendant Linden will not change any of their fraudulent practices even when the Court finds them unconscionable. For example, Defendant Linden continues to force consumers to "accept" the unconscionable arbitration clause that remains in their latest TOS. Defendant Linden plead a criminal violation against Plaintiff for the purposes of casting a chilling effect on any and all consumers that consider bringing valid claims against them.

Defendant Linden's intent is evidenced by the fact that the day after filing their Answer and Counterclaim they posted excerpts on their web page, citing to the language "computer fraud," "fraudulent scheme to obtain money" and "scheme" repeatedly. See, Exhibit "1." The "computer fraud" Counterclaim was simply a tool used by Defendant Linden to "bootstrap" defamatory comments onto its website with an attempt to cloak itself in absolute immunity. The selective posting of the Answer on Linden's website waives any claims to judicial immunity Linden may have had. *See Bochetto v. Gibson,* 580 Pa. 245, 860 A.2d 67 (2004) (holding party that posted *full* complaint was not entitled to immunity due to [vexatious purpose of posting]). Since Defendant Linden has failed to state such a claim, it should be dismissed. The improper motive for bringing the claim should result in the award of fees and costs to Plaintiff.

24

**B.    AS A MATTER OF LAW, DEFENDANT LINDEN HAS NOT AND CANNOT ALLEGE RECOVERABLE DAMAGES FROM PLAINTIFF.**

As a matter of law, Defendant Linden cannot recover any alleged damages from Plaintiff. Defendant Linden has admitted in its Counterclaim that several inexpensive land auctions completed / permitted by Defendant Linden in advance of Plaintiff ever even bidding on the Taesot sim auction. The fact that Defendant Linden has admitted (as it must) that several low priced land auctions occurred prior to Plaintiff even bidding on land bars Defendant Linden's claims. Under California law, there is a duty to mitigate damages and a plaintiff cannot recover losses it could have avoided through reasonable efforts. *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal.App.4th 1559, 1568 (1996).

In *Thrify-Tel*, Plaintiff sued the parents of teenagers who used hacks to access a private computerized switching network. *Id.* at 1563. Using confidential access codes, the teenagers accessed plaintiff's computer network and then used computer technology to crack other codes needed to make free long-distance calls. *Id.* at 1559-64. In relevant part, there were two flurries of illegal computer hacking conduct. They were separated by approximately four months. *Id.* at 1568. Between the first episode and the second episode, the plaintiff did nothing to prevent the second intrusion. *Id.* at 1568-9. Accordingly, the court held that plaintiff was precluded under the doctrine of failure to mitigate from pursuing any damages for the second intrusion and, as such, reversed a judgment entered for "damages" stemming from the second episode. *Id.* at 1569.

In this case, even if this Court assumed *arguendo* that Plaintiff's alleged conduct amounted to "hacking" (which it does not), Defendant Linden has specifically pled that other low priced land auctions were completed in advance of Plaintiff bidding on any such land. Counterclaim, ¶¶ 28-45. Defendant Linden has failed to allege why it did

nothing to prevent the alleged "harm" occurring to it prior to Plaintiff bidding on virtual land (land he was never provided by Defendant Linden). Further, this compelling argument exists even if this Court decides that it cannot properly consider Plaintiff's own e-mail to Defendant Linden on April 29, 2006, in advance of him bidding on any low priced land wherein he inquires about such sales.

Defendant Linden has not (and cannot) plead or explain why Plaintiff was capable of seeing the low priced land auctions on their website and why it either did not or could not see the identical information. Defendant Linden has not plead (nor can it) any explanation as to why it did nothing from at least April 29, 2006 until May 1, 2006 to preclude any additional low priced land auctions, following the (at a minimum) several that occurred before Plaintiff bid. As such, Defendant Linden has pled facts that establish, as a matter of law, that it failed to mitigate any damages to itself and its claims are barred.

**VI.    DEFENDANT LINDEN HAS FAILED TO STATE A CLAIM PURSUANT TO 18 U.S.C. § 1030 AND, AS SUCH, PLAINTIFF'S 12(b)(6) MOTION MUST BE GRANTED.**

Defendant Linden pleads that Plaintiff's alleged conduct is a violation of the Computer Fraud and Abuse Act, codified at 18 U.S.C. § 1030. Counterclaim, ¶ 72. In particular, Defendant Linden pleads that Plaintiff violated subsections (a)(2)(c), (a)(4), (a)(5)(A)(i) and (a)(5)(A)(iii) of the act. Section 1030(g) provides in relevant part:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B). Damages for a violation involving only conduct described in subsection (a)(5)(B)(i) are limited to economic damages. . . . No action may be brought under this subsection for the

26

negligent design or manufacture of computer hardware, computer software, or firmware.

18 U.S.C. § 1030(g). Defendant Linden has claimed that Plaintiff violated the following sections of the Act:

<u>18 U.S.C. . § 1030 (a)(2)(c)</u>

(a)(2)   intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains –

    (C)   information from any protected computer if the conduct involved interstate or foreign communication;

<u>18 U.S.C. . § 1030 (a)(4)</u>

(4)   knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period;

<u>18 U.S.C. . § 1030 (a)(5)(A)(i) and (iii)</u>

(5)(A)(i)   knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;

(5)(A)(iii)   intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage;

(B)   by conduct described in clause (i) . . . or (iii) of subparagraph (A), caused (or, in the case of an attempted offense, would, if completed, have caused) –

(i)    loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;

As will be more fully set forth at length herein, locating a webpage placed on the internet by Defendant Linden and available to the world is simply not actionable as a matter of law, particularly where Defendant Linden authorized a charge to Plaintiff of over US$300 for virtual land that was never provided to him.

A.    **AS PREVIOUSLY SET FORTH HEREIN, ACCESS TO A WEB PAGE PLACED ON THE INTERNET BY DEFENDANT LINDEN CANNOT, AS A MATTER OF LAW, CONSTITUTE 'UNAUTHORIZED' ACCESS.**

As previously detailed at length in the section pertaining to California Penal Code § 502 (that statute uses the term "without permission" as opposed to "unauthorized"), the Computer Fraud and Abuse Act (hereinafter "CFAA"), codified at 18 U.S.C. § 1030, uses a similar term "unauthorized" with regard to alleged violations. The argument is simply the same. Defendant Linden placed the web pages on the internet. Defendant Linden placed the minimum bids on the land auctions. Defendant Linden did not stop or remove any such auctions, despite the fact that several low priced land auctions occurred before Plaintiff bid on any low priced virtual land. Defendant Linden has intentionally failed to plead where the auction I.D. numbers came from, as it knows that Defendant Linden provided those auction I.D. numbers to anyone who looked at the virtual land. Defendant Linden did not place any password protection security device that would have prohibited "backwards browsing." And, perhaps most importantly, in the single auction for virtual land that Defendant Linden claims Plaintiff "obtained" a parcel of land, Taesot,

28

Defendant Linden admits that it charged Plaintiff over US$300 for that parcel of land, i.e., it "authorized" a charge to Plaintiff, yet never provided the virtual land to Plaintiff.

Even if this Court was to ignore the numerous e-mail sent from Defendant Linden during the course of the Taesot auction and at its conclusion, Defendant Linden has not pled facts that properly set forth a cause of action under 18 U.S.C. § 1030. Placing web pages on the internet for the world to see and interact with, as a matter of law, cannot amount to "unauthorized access" when an internet user accesses or views those pages. Moreover, such cannot be the case particularly where Defendant Linden charged Plaintiff over US$300 in the very transaction that it now complains of.

**B.    THE ALLEGED DAMAGES PLEAD IN THE COUNTERCLAIM DO NOT GIVE RISE TO A CAUSE OF ACTION UNDER THE CFAA.**

The alleged damages contained in the Counterclaim do not give rise to a cause of action under the CFAA. Defendant Linden does not allege that Plaintiff sent a computer virus. Defendant Linden does not allege that Plaintiff sent a worm. Defendant Linden does not allege that Plaintiff utilized any destructive software. Defendant Linden does not allege that any computer, any network, any software, any internet related function or application was functionally altered, damaged or destroyed. Defendant Linden alleges that Plaintiff typed an internet address in his web browser that took him to a page that it put on the internet where he bid on virtual land and, that ultimately, Defendant Linden charged him over US$300. In sum, Defendants have not alleged any violation of 18 U.S.C. § 1030.

18 U.S.C § 1030 originally had no civil remedy, and only after Congress determined that it needed aid in containing the proliferation of viruses and worms and other destructive computer software was the act amended to include a civil remedy. The

act is aimed at containing the proliferation of viruses and worms and also to deter the wrongful and unauthorized obtaining of private information. As such, the case law illustrates that cases sustained under 18 U.S.C. § 1030 involve computer "hacking" and/or often former employees who use their user names and passwords to obtain private and confidential information contemporaneously with leaving employ to the detriment of their former employers. *See e.g.*, *L-3 Communications Westwood Corp. v. Robicharux*, 2007 WL 756528 (E.D.La. 2007) ("Losses under CFAA are compensable when they result from damage to a computer system or the inoperability of the accessed system."); *Civil Center Motors, Ltd. v. Mason Street Import Cars, Ltd.*, 387 F.Supp.2d 378, 381 (S.D.N.Y. 2005); *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F.Supp.2d 468, 475 (S.D.N.Y. 2004), *aff'd* 166 Fed.Appx. 559 (2006)) ("[C]osts not related to computer impairment or computer damages are not compensable under the CFAA").[13]

Rather than plead allegations concerning the interference with the **function** of their networks, servers, or computers that would amount to a cause of action under 18 U.S.C. § 1030, Defendants have plead:

> By way of this conduct, Bragg obtained something of value, namely, access to Linden's computing resources, as digitally represented by the parcel of "virtual land" known as Taesot, with a value of no less than U.S. $1,000.00, and which Bragg intended to subdivide and resell to other Second Life users at a further profit. By virtue of his fraudulent conduct, Bragg obtained such resources at a price he knew was well below market value or what Linden would auction such resources for, indeed, below Linden's cost of providing these services. In so doing, Bragg intentionally interfered with Linden's auction system, thereby causing damage to the integrity of that system.

---

[13] The *Nexans* Court also stated that revenue lost because a defendant used unlawfully gained information to unfairly compete was not a type of "loss" contemplated under the CFAA. *Nexans*, 319 F.Supp.2d at 478.

Counterclaim, ¶ 67.[14]

Noticeably, although relying on facts that are included in e-mail transmissions from Defendant Linden to Plaintiff, Defendant Linden intentionally chose not to attach such e-mail to its Counterclaim. Indeed, Defendant Linden has attempted to avoid informing this Court that the Taesot auction ended at approximately 4:05 p.m. and Plaintiff was informed by Defendant Linden at 6:16 p.m., just over two hours later that "Your recent auction appears to have been the result of an exploit. The land will therefore be taken back and your money refunded." Exhibit "9." The reason for this intentional omission is not an innocent one. Defendant Linden was fully aware when it did not attach the e-mail and refused to specifically plead the times of events that to do so would be fatal to any claim pursuant to 18 U.S.C. § 1030. Defendant Linden is fully aware that any alleged "transient" unavailability of the Taesot sim (the best case scenario for Defendant Linden) does not satisfy the damage requirement of 18 U.S.C. § 1030, which is precisely the reason Defendant Linden attempted to avoid informing this Court.

One court has addressed a similar allegation of alleged transient unavailability of data and concluded that the allegation, like Defendant Linden's, does not provide for the type of "damages" contemplated by the CFAA. *Davies v. Afilias Limited*, 293 F.Supp.2d 1265, 1273 (M.D.Fla. 2003). The *Davies* court analyzed a situation where the alleged offender used incorrectly received authorization codes to register domain names he was not entitled to. *Id.* at 1273. The claim was that the plaintiff's improper "reservation" of such domain names precluded others (who were likely entitled to obtain the domain

---

[14] According to Defendant Linden, all that was being auction was a "license to computing resources." See, Answer, ¶ 48. Under 18 U.S.C. § 1030 (a)(4) if the alleged "object of the fraud" "consists only of the use of the computer," then claims are barred unless the "value of such use" exceeds $5000. As is set forth herein, such "use" as pled by Defendant Linden (if any occurred) cannot, as a matter of law exceed $5000.

names), from obtaining those domain names until the transaction was reversed by the defendant. *Id.* at 1273. The *Davies* court held:

> Plaintiff cannot be held liable under the CFAA simply on the basis that he used the codes to register domain names. Plaintiff's actions may have lead Defendant to lock the domain names and hence cause them to be unavailable, but this is not the sort of "impairment to the . . . availability of data" contemplated by the CFAA. As the legislative history indicates, a civil cause of action was added to redress damage and loss as a result of serious computer abuses, such as transmission of viruses or destructive worms and use of fraud to access non-public information.

*Id.* at 1273. See., *In re DoubleClick Inc.,* 154 F.Supp.2d 497 (S.D.N.Y. 2001) ("To the contrary, the histories of these statutes reveal specific Congressional goals – punishing destructive hacking, preventing wiretapping for criminal or tortious purposes, securing the operations of electronic communication service providers --- that are carefully embodied in these criminal statutes and their corresponding civil rights of action").

Unlike the *Davies* case where the counter claimant alleged that certain computer resources in the form of domain names was even "transiently" unavailable, Defendant Linden has not even made such an allegation in this case. To the contrary, Defendant Linden alleged that the Taesot sim was allegedly not to be auctioned at all. Thus, by Defendants' own allegations, the Taessot sim was not even "transiently" unavailable to anyone else, as it was not being auctioned. Moreover, as detailed in the e-mail, even if Defendant Linden attempted to claim that anyone else was "deprived" of the Taesot sim, as set forth herein, the alleged deprivation was just over two (2) hours, hardly what it required to state a claim under the statute. As such, Defendant Linden has pled less than even the *Davies* counter claimant who did not set forth a claim.

Further, Congress considered:

> Technology is hurling us into the 21st century at speeds that leave lawmakers gasping. This bill catches up with some problems already out of hand, by strengthening laws against computer abuse, deterring malicious computer hacking, and aiding prosecution of computer crimes without criminalizing creative attempts at legitimate experimentation.

*S.Rep. 101-544 (1990).* As set forth in the Legislative history of the CFAA, this is simply not the type of "behavior" the CFAA was designed to address.

Further, the CFAA simply cannot be interpreted as a substitute for website security. A company like Defendant Linden cannot place web pages on the internet, a medium that is by its very nature open to the public, and then simply be permitted to later claim that they did not "intend" for anyone to access them. Such an argument would seemingly permit any website operator to make the same argument. Both the California Highway Patrol and the Attorney General of California reject such an argument, as this Court should as well.

**C.    DEFENDANT LINDEN HAS FAILED TO PROPERLY ALLEGE FACTS TO SUPPORT ITS CONCLUSORY ALLEGATION THAT THERE ARE OVER $5000 IN DAMAGES ATTRIBUTABLE TO PLAINTIFF AND, AS SUCH, HAS FAILED TO SET FORTH A CLAIM UNDER THE STATUTE.**

In order to plead a cause of action pursuant to 18 U.S.C. § 1030, a plaintiff must plead damages meeting the statutory $5000 threshold. 18 U.S.C. § 1030 (e)(8)(A); *see also DoubleClick, Inc.*, 154 F.Supp.2d at 523-524. Defendant Linden has not done so. Instead, it has simply made conclusory allegations that the "damages" allegedly exceed $5000. No specific factual allegations have been made to support Defendant Linden's frankly, absurd, claim.

**D.    DEFENDANT LINDEN HAS NOT PLED ANY DAMAGES ALLEGEDLY ATTRIBUTABLE TO PLAINTIFF.**

Defendant Linden has not pled any damages allegedly attributable to Plaintiff. Plaintiff was not the first person to access any auction page. Counterclaim, ¶¶ 28-45. No password protected security methods were breached in order to access the auction page. Any remedial steps taken by Defendant Linden to prohibit the world from bidding on land auction pages that they put on the internet but not intend bidding on would have been necessary regardless of Plaintiff's alleged conduct. As previously discussed, this Court may disregard allegations made that are belied elsewhere by Defendants. *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir. 1995) ("General, conclusory allegations need not be credited, however, when they are belied by more specific allegations of the complaint."). Defendant Linden has admitted in the Answer and Counterclaim that it placed the auctions on the internet, not Plaintiff or even any of his alleged "confederates."

Further, since Plaintiff was not the first to bid on inexpensive land, there is no allegation that he proximately caused any remedial steps to be taken. As such, Defendants have not alleged any recoverable loss/damage attributable to Plaintiff. *See Doubleclick Inc.*, 154 F.Supp.2d at 525 ("[Plaintiffs] have not pled that DoubleClick caused any damage whatsoever to plaintiffs' computers, systems or data that could require economic remedy. Thus, these remedial economic losses are insignificant if, indeed, they exist at all."). The fact that Defendant Linden has refused and/or failed to sue anyone other than Plaintiff underscores the point.

Moreover, Defendant Linden appears to be advancing an argument that its own employees mismarked numerous items throughout its store. Thus, once it discovered that consumers were purchasing negligently mismarked items, that Defendant Linden then

34

engaged in some process to go through its own store correcting the items that its employees negligently mismarked. It is nonsensical to argue that Plaintiff should be required to pay for Defendant Linden to correct its own mistakes.

E.    **DEFENDANT LINDEN HAS NOT PLED DAMAGES OR LOSS OF AT LEAST $5000 EXCEPT FOR A CONCLUSORY STATEMENT THAT IT HAS INCURRED SUCH DAMAGES.**

Defendant Linden has not pled and damages or loss of at least $5000 except for a conclusory statement that it has incurred such damages. As discussed previously, a legal conclusion couched as a factual assertion need not be accepted by this Court in deciding a motion to dismiss. Defendant Linden alleges, "Bragg's conduct has caused Linden a loss of at least $5,000." Counterclaim, ¶ 71. Defendant Linden further alleges under their California Penal Code § 502 counterclaim that it is entitled to recover "compensatory damages in an amount to be proven at trial . . . ." Counterclaim, ¶ 82. Neither claim is substantiated by any underlying facts.

1.    <u>The true facts disclose that any alleged "harm" from the "unavailability" of the Taesot sim exist for approximately two (2) hours and cannot, as a matter of law, equate to $5000 in damages.</u>

Assuming all of Defendant Linden facts as true and properly considering the documents underlying the allegations in the Counterclaim, the Taesot purchase only amounted, in the best case scenario for Defendant Linden, in a two hour "unavailability" of the virtual land. The reality is that the US$300 plus charge to Plaintiff negates any inference that the virtual land was not, in actuality, sold to Plaintiff. However, even if this Court was to ignore that allegation in the Counterclaim, it is impossible, as a matter of law, that Defendant Linden incurred any damages in excess of $5000 for a two hour

period.   Any such claim is nonsensical which is why Defendant Linden has failed to plead any such damages.

Further, Defendant Linden has attempted to plead a claim pursuant to CFAA § 1030 (a)(4) which required Defendant Linden to plead to as a result of his alleged "fraud," "further[ed] the intended fraud and obtain[ed] anything of value." 18 U.S.C.A. § 1030 (a) (4); *see also Pacific Aerospace & Elecs., Inc. v. Taylor*, 295 F.Supp.2d 1188, 1195 (E.D.Wash. 2003).   Defendant Linden alleges that all that was "truly being acquired" was a "license to computing resources."   Answer, ¶ 48.   Although consumers truly obtained more than a simple "license to computing resources," for the purposes of the Counterclaim, Defendant Linden must be held to its own representations.   Under 18 U.S.C. § 1030(a)(4) if the alleged "value" of the "use of the computer" is less than $5000, then a claim is not properly pled.   Defendant Linden has not (and cannot) allege that any transient computer use for two hours (although there was truly no use), amounts to over $5000.   As set forth herein and above, Defendant Linden has not pled that Plaintiff actually obtained anything of value and certainly not "anything of value" in excess of $5000.

Having failed to plead any damages, much less damages amounting to $5000, Defendant Linden allegations pursuant to 18 U.S.C. § 1030 fail to state a claim upon which relief may be granted.   The claim must be dismissed with prejudice.   Further, Defendant Linden's clearly improper and vexatious purpose behind stating a claim for relief pursuant to this statute requires that this Court assess costs associated with the motion to dismiss this claim.   Absent such court granted relief, Defendant Linden will

have succeeded in heaping unnecessary work upon Plaintiff's counsel while prejudicing Plaintiff's valid claims.

## VII.    DEFENDANT LINDEN HAS NOT ALLEGED (NOR CAN IT), THAT PLAINTIFF VIOLATED CALIFORNIA BUSINESS AND PROFESSIONAL CODE § 17200.

Defendant Linden has attempted to plead a count against Plaintiff for violation of the California Business and Professional Code § 17200 (hereinafter "Section 17200"). Research has not disclosed cases where a merchant was permitted to sue a consumer pursuant to the statute. Section 17200 "establishes three varieties of unfair competition-acts or practices which are unlawful, or unfair, or fraudulent." *See Belton v. Comcast Cable Holdings, LLC*, 151 Cal.App.4[th] 1224, 1233 (2007) (*quoting Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4[th] 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) ("It governs 'anti-competitive business practices' as well as injuries to consumers, and has as a major purpose 'the preservation of fair business competition.' By proscribing 'any unlawful' business practice, 'section 17200' "borrows" violations of other laws and treats them as 'unlawful practices' that the unfair competition law makes independently actionable.")

Accordingly, to bring an action pursuant to Section 17200, a claimant must allege: (1) an unlawful *business* practice grounded in antitrust; (2) an "unfair" *business* practice based on an underlying antitrust law[15]; or (3) an unfair competition claim under the "fraudulent" prong of Section 17200, showing "representations that were false or were likely to have misled "reasonable consumers." *See Belton*, 151 Cal.App.4[th] at 1241

---

[15] As stated in *Cel-Tech*, "unfair" is defined as "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech*, 973 P.2d at 565.

(*quoting South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal.App.4th 861,

878, 85 Cal.Rptr.2d 301 (1999)).

Defendant Linden has not (and cannot) allege that Plaintiff was its competitor.

Further, Defendant Linden has not (and cannot) allege anything remotely close to a

"business" practice conducted by Plaintiff.  Further, no representation to consumers or

the public at large has been alleged, much less a fraudulent representation.  As such, this

Court must dismiss this cause of action.  Defendant Linden's conclusory allegations that,

"On information and belief, Bragg participated in Second Life service with the intent of

making a profit through the purchase, subdivision and resale of 'virtual land,'"

(Counterclaims ¶ 97) and "Bragg's conduct as alleged above constitutes unlawful, unfair,

and fraudulent business practices," (Counterclaims ¶ 98) need not be accepted by this

court.  Such are merely conclusory legal conclusions, not factual allegations.

The fact that Defendant Linden has attempted to implement a consumer cause of

action against Plaintiff, a consumer, should shock the conscience of this Court.  The

motive for bringing such a claim is improper and should not be countenanced.  As such,

the claim should be dismissed and costs associated with this motion should be awarded to

Plaintiff.

**VIII.**  **IN THE ALTERNATIVE, THIS COURT SHOULD GRANT PLAINTIFF'S**
         **RULE 12(e) MOTION FOR A MORE DEFINITIVE STATEMENT.**

In addition to, and in the alternative, Pursuant to Rule 12 (e), Plaintiff requests a

more definite statement with regards to the counterclaims brought by Defendant Linden.

Although Rule 12(e) appears to be rarely used, it appears to be appropriately applied in

this case.  Rule 12(e) provides that if a pleading is so vague or ambiguous that a

responsive pleading cannot be framed, the responding party may request a more

definitive statement. Rule 12(e) seems appropriately applied in an instance like the one presently where Defendant Linden has intentionally: (1) not attached the documents that form the basis of their allegations and (2) intentionally have not attached chat logs allegedly quoted and done so obviously selectively. See, Counterclaim, ¶¶ 31, 38, 42-44.

As set forth earlier, Defendant Linden cannot be permitted to attempt to avoid a Rule 12(b)(6) Motion, in particular, by refusing to attach documents that underlie its claims. See, *Pension Ben. Guar. Corp.*, 998 F.2d 1192, 1196 (3d Cir. 1993*)*, "[w]e now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.")

In particular, Defendant Linden should be ordered to attach the entire chat logs that it cites selectively. Otherwise, Plaintiff is left to try to formulate a response to incomplete and selectively quoted chat logs. Additionally, Defendant Linden can obtain the benefit of only selectively quoting such chat logs to avoid any discussions that would assist Plaintiff in securing dismissal of the case pursuant to Rule 12(b)(6). Accordingly, should this Court not grant Plaintiff's Rule 12(b)(6) Motion, Plaintiff requests that the Court order Defendant Linden to attach the entirety of the alleged chat logs to an Amended Counterclaim.

## IX. DEFENDANT LINDEN HAS FAILED TO JOIN NECESSARY PARTIES PURSUANT TO RULE 19 AND, AS SUCH, THE COUNTERCLAIMS MUST BE DISMISSED PURSUANT TO RULE 12(b)(7).

Rule 19(a) requires joinder of necessary parties if feasible. The court may order joinder of a person in whose absence complete relief cannot be granted to those already parties to the case. Rule 19(a) provides, in relevant part, that "[a] person . . . shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties . . . ." The court has the discretion to dismiss claims where a claimant does not properly join indispensable parties. *See e.g., International Paper Co. v. Denkmann Assoc.*, 116 F.3d 134 (5th Cir. 1997) (partnership deemed indispensable party in action seeking to compel arbitration price of option to purchase timber land.)

When a court determines that joinder is necessary under Rule 19(a) and that joinder is not feasible, the court must then determine whether the non-joined party is indispensable under Rule 19(b). The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.

Presently, this Court is faced with Counterclaims brought against Plaintiff, which include allegations made against at least two other individuals, if not more. Defendant Linden has included at least two users, identified by user names S.S., M.S. and D.S., in

their counterclaims alleging violations of computer and business practice statutes. Defendant Linden makes clear in its counterclaims that at least one of these users are alleged to have participated in the alleged violative conduct **prior to** Plaintiff.  Further, Defendant Linden's failure to identify these individuals makes their joinder not feasible.

Additionally, Defendant Linden admits that its own employees (who remain unidentified) apparently negligently put the wrong prices on the low priced land.  To the extent that Defendant Linden is truly seeking to hold Plaintiff responsible for Defendant Linden having to "go through its own store" and correct all its mismarked items, Defendant Linden would have to sue its own employees.  Defendant Linden having to sue itself, in essence, is nonsensical and renders joinder of the indispensable Linden employees impracticable.  Given the same, Plaintiff's Rule 12(b)(7) Motion should be granted and the Counterclaims dismissed with prejudice.

## X.    **CONCLUSION**

WHEREFORE, for the foregoing reasons, Plaintiff requests that Defendant Linden's Counterclaims found in Counts I, II and V be dismissed with prejudice pursuant to Rules 12(b)(6) and 12(b)(7).    Alternatively, Plaintiff requests that Defendant be ordered to provide a more definite statement pursuant to Rule 12(e).

Respectfully submitted,

Date:  July 18, 2007

WHITE AND WILLIAMS, LLP

By JAA7341
    Jason A. Archinaco, Esq.
    PA ID 76691
    Christopher Ballod, Esq.
    PA ID 89462
    The Frick Building, Suite 1001
    437 Grant Street
    Pittsburgh, PA 15219
    (412) 566-3520
    *Counsel for Plaintiff*

PITDMS 43916v.1